**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (CA Bar No. 330990)
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: 305-975-3320
scott@edelsberglaw.com

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

JEFFREY STEPHENSON, individually, on behalf of himself and all others similarly situated,

Plaintiff,

v.

NAVY FEDERAL CREDIT UNION,

Defendant.

Case No:  **'23 CV 1851 WQH KSC**

**CLASS ACTION COMPLAINT**

[DEMAND FOR JURY TRIAL]

Plaintiff Jeffrey Stephenson ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Navy Federal Credit Union ("NFCU" or "Defendant"), and states:

## I.   NATURE OF THE ACTION

1.     This putative class action concerns NFCU's unlawful practice of failing to conduct genuine, good faith investigations into consumers' accounts when they make fraud claims arising from unauthorized debit card transactions and failing to provide detailed explanations when Defendant denies those claims.

2.     Congress established the Electronic Funds Transfer Act (the "EFTA"), 15 U.S.C. §§ 1693, *et seq.* and Regulation E, 12 C.F.R. §§ 1005.1, *et seq.*, to guarantee strong protections for consumers who engage in electronic fund transfers with debit cards. Among the widespread protections afforded under these statutes, financial institutions like NFCU are required to maintain thorough practices for error resolution, including to promptly investigate fraud claims, to provide consumers with substantive written explanations of its investigations and conclusions, to limit consumer liability for unauthorized transactions, and, if ultimately denying those fraud claims, to bear the burden of proving that a consumers' disputed transactions were in fact authorized.

3.     In the case of Plaintiff, however, NFCU blatantly flouted several of these requirements to Plaintiff's financial detriment. Immediately after Plaintiff learned that his debit card was stolen, he alerted NFCU to the loss and submitted a fraud claim with

supporting factual proof that nearly $1,000 in unauthorized charges had occurred. After only one day of a shoddy investigation, NFCU flatly denied Plaintiff's claim on the grounds that "no error occurred" but failed to offer any detailed explanation of its investigation or how it arrived at its conclusion—not just once, but on three separate occasions.

4.      At bottom, NFCU's single-day, factually unsupported investigation of Plaintiff's fraud claim falls woefully short of satisfying its obligations to accountholders under the EFTA and Regulation E. Indeed, despite Plaintiff submitting detailed information to prove he incurred unauthorized transactions, NFCU flatly refused to find any "error" occurred and did so without providing any substantive explanation or justification. It was Defendant's burden to prove that these disputed transactions were authorized—not Plaintiff's—and its failure to do so is unlawful and unfair to Plaintiff and thousands of other consumers who have to bear the consequences of stolen funds in unlimited sums.

5.      NFCU's flagrant disregard of the EFTA's and Regulation E's requirements subjects its accountholders like Plaintiff who similarly fell victim to debit card theft to shoulder hundreds of dollars in fraudulent purchases that they did not authorize or have any control over.

6.      Moreover, NFCU's conduct also constitutes an express breach of its contract with accountholders based on its promise there will be "zero liability" for accountholders when they timely report fraudulent debit card transactions.

7.      Plaintiff brings this action on behalf of himself and a proposed class of all other similarly situated NFCU accountholders who notified Defendant that one or more

charges on their account were unauthorized and were denied reimbursement on the grounds that Defendant determined that no error occurred without any written explanation of NFCU's investigation and findings.

8.     Plaintiff alleges claims for violation of the EFTA, Regulation E, California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.,* and breach of contract including the covenant of good faith and fair dealing, and prays for actual and statutory damages, injunctive relief on behalf of the general public, among other ancillary remedies as provided for under the law.

## II.   **PARTIES**

9.     Plaintiff Jeffrey Stephenson is a citizen and resident of Bonita, California and is a joint owner of a NFCU checking account with his 17-year-old son.

10.    Defendant Navy Federal Credit Union is a national credit union with its headquarters and principal place of business located in Vienna, Virginia. Among other things, NFCU is engaged in the business of providing retail banking services to consumers, including Plaintiff and the members of the putative class, which includes the issuance of debit cards for use by its customers in conjunction with their checking accounts. NFCU operates banking centers and thus, conducts business throughout the United States, including within this district.

## III.   **JURISDICTION AND VENUE**

11.    This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1693m(g) because Plaintiff's EFTA claim arises under federal law.

12.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 to resolve Plaintiff's statutory claim arising under California law.

13.     This Court also has original jurisdiction over the action under the Class Action Fairness Act ("CAFA") of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interests and costs, and at least one member of the proposed class is a citizen of a different state than NFCU.

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because NFCU is subject to personal jurisdiction here and regularly conducts business in this district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## IV.     FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### A.     NFCU Flouts EFTA and Regulation E Requirements Regarding Investigation and Error Resolution Procedures Arising from Fraudulent and Unauthorized Debit Card Transactions

15.     Plaintiff Jeffrey Stephenson and his 17-year-old son are joint owners of an NFCU checking account since approximately April 2020.

16.     On or around February 22, 2023, Plaintiff and his son discovered that their NFCU debit card was missing after noticing several unauthorized transactions had occurred on their account.

17.     On February 23, 2023, Plaintiff promptly reported the card as stolen to NFCU and submitted a claim of unauthorized debit card activity for a total of $991.98 in fraudulent purchases.

18.     Plaintiff submitted to NFCU a detailed account as to why these unauthorized transactions were fraudulent purchases. For example, Plaintiff disclosed that the purchase history since the debit card was acquired over 400+ purchases ago demonstrates that there were no purchases made at Walmart, yet 11 of the unauthorized transactions occurred at Walmart all within the short period of 14 days.

19.     On February 24, 2023—just *one day* after Plaintiff submitted his fraud claim—NFCU sent a letter informing Plaintiff of its "final determination" of the fraud claim in which it concluded that "no error has occurred." *See* Ex. A, February 24, 2023 Letter (the "First Letter"). The First Letter further stated:

> Our investigation was based on a review of your account activity, including, but not limited to: transaction details, account history, and/or discrepancies between the fraud claim and your account.

*Id.*

20.     Having received no detailed explanation why his fraud claim was denied, Plaintiff submitted additional information via NFCU's website, including detailed written responses to seven questions posed by NFCU. Plaintiff appealed Defendant's decision made in the First Letter.

21.     On March 10, 2023, NFCU sent Plaintiff another letter reporting the findings of its second review of his fraud claim. Defendant again denied Plaintiff's claim without any real explanation:

> After carefully reviewing the information you provided, we have concluded that no error occurred. Therefore, the original decision to deny the claim stands. You are responsible for the full amount of the claim, $991.98.

*See* Ex. B, March 10, 2023 Letter (the "Second Letter").

22.     On or around March 31, 2023, Plaintiff met with a branch manager at NFCU to gather more information about NFCU's denials, but no one could offer him any further information about why his fraud claim was denied.

23.     On April 3, 2023, Plaintiff was forced to submit a claim to the Consumer Financial Protection Bureau (the "CFPB") as an additional avenue of relief to uncover how NFCU reached its conclusion that no fraud occurred. NFCU responded to the CFPB on June 2, 2023, affirming its conclusion that Plaintiff's fraud claim was denied and again failing to offer any justification in support of its determination:

> Based on the facts of our investigation, we determined that the claim remains denied. All account owners remain responsible for the activity that was conducted on the account.

*See* Ex. C, CFPB Complaint Status Report.

24.     Based on NFCU's response, CFPB then closed Plaintiff's complaint.

25.     Plaintiff similarly submitted a complaint to the Better Business Bureau (the "BBB") and NFCU responded directly to Plaintiff on June 2, 2023, again standing behind

the decisions reached on its first and second reviews and regurgitating the same response

devoid of any rationale or factual support:

> Based on the facts of our investigation, we determined that the claim remains denied. All account owners remain responsible for the activity that was conducted on the account.

*See* Ex. D, June 2, 2023 Letter (the "Third Letter").

26.     Plaintiff additionally filed a police report.

27.     By denying Plaintiff's claim on the unsupported ground that "no error occurred" after just one day of conducting a purported "investigation" and by failing to provide a detailed explanation of its findings and justification for its denial, NFCU flouts the EFTA and Regulation E's investigation and error resolution requirements and ultimately fails to satisfy its burden of proving that the unauthorized transactions as reported by Plaintiff were in fact authorized.

### B.     NFCU Breaches Contract Promises that Fraudulent and Unauthorized Debit Card Transactions Come with Zero Fraud Liability, or at a Minimum, Limit Liability

28.     The Debit Card Disclosure in effect at the time of Plaintiff's reported transactions, attached as Exhibit E, explicitly promises that NFCU will investigate "unauthorized transactions" in accordance with its "Billing Error Resolution" process. Debit Card Disclosure at ¶ 16.

29.     Critically, the Debit Card Disclosure makes a simple, straightforward "Zero Liability" promise for debit card transactions: "…if you notify us of suspected fraud within 60 days of the statement date on which the fraudulent transactions first appear, ***we will not***

***hold you responsible for confirmed fraudulent transactions***." Debit Card Disclosure at ¶ 15 (emphasis added).

30.    NFCU, however, never provided "Zero Liability" for Plaintiff's reported unauthorized transactions, despite the fact that Plaintiff promptly notified NFCU that he had suspected fraud and reported the debit card as stolen.

31.    The Debit Card Disclosure further promises that "[i]f you notify us within 2 business days after you learn of the loss or theft of you [debit card] or PIN, your losses will be no more than $50 if someone used your [debit card] or PIN without your permission." Debit Card Disclosure at ¶ 14.

32.    NFCU, however, never limited Plaintiff's liability to $50 despite the fact that he promptly notified NFCU that he suspected fraud upon learning of the missing debit card and unauthorized transactions.

33.    These provisions, collectively, are and were reasonably understood by Plaintiff to mean that NFCU would provide him with each of these fraud and dispute protections for his reported unauthorized transactions.

34.    By failing to provide Plaintiff zero liability for his reported unauthorized transactions, or at a minimum to limit his liability to be no more than $50, NFCU breaches the express promises made in its Debit Card Disclosure and breaches the implied covenant of good faith and fair dealing.

V.    **CLASS ACTION ALLEGATIONS**

35.     Plaintiff brings this action on his own behalf and on behalf of all others similarly situated. The proposed Class includes:

> All holders of a Navy Federal checking account who, within the applicable statute of limitations preceding the filing of this lawsuit up until the date of class certification, notified Navy Federal that one or more charges on their account were unauthorized and were denied reimbursement without any written explanation of Navy Federal's investigation and findings ("Reg E Class").

> All holders of a Navy Federal checking account who, within the applicable statute of limitations preceding the filing of this lawsuit up until the date of class certification, had an unauthorized charge on their account and were denied reimbursement by Navy Federal ("Breach of Contract Class").

36.     Additionally, Plaintiff proposes California subclasses for each of the foregoing classes ("California Subclasses").

37.     Excluded from the Class is Defendant, its subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

38.     Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

39.     The proposed Class is numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be

ascertained only by resort to NFCU's records. The proposed Class is also sufficiently ascertainable because NFCU has the administrative capability through its computer systems and other business records to identify all members of the proposed Class, and such specific information is not otherwise available to Plaintiff.

40.    The questions here are ones of common or general interests such that there is a well-defined community of interest among the proposed Class members. These questions predominate over questions that may affect only individual Class members because NFCU has acted on grounds generally applicable to the proposed Class. Such common legal or factual questions include, but are not limited to:

a. Whether NFCU failed to comply with the EFTA's and Regulation E's unauthorized electronic fund transfers limitations on consumer liability under 15 U.S.C. § 1693g(a) and 12 C.F.R. § 205.6(b)(1);

b. Whether NFCU failed to satisfy the EFTA's assigned burden upon financial institutions to prove that the disputed electronic transactions were in fact authorized under 15 U.S.C. § 1693g(b);

c. Whether NFCU failed to comply with the EFTA's and Regulation E's written explanation requirements under 15 U.S.C. § 1693f(d) and 12 C.F.R. § 1005.11(d)(4)(ii) upon denying an accountholder's fraud claim;

d. Whether NFCU's denial of fraud claims on the grounds that it determined no error occurred without any further written explanation is unlawful under the EFTA;

e. Whether NFCU's investigations of fraud claims are inadequate, unreasonable, or unfair;

f. Whether NFCU's practice of denying fraud claims constitutes an unfair or unlawful business practice under California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*;

g. Whether NFCU breached its contract with accountholders by failing to abide by its "Zero Liability Policy for Fraud;"

h. <u>Whether Plaintiff and other members of the proposed Class are entitled to injunctive relief to enjoin NFCU's from its unlawful business practices described herein; and</u>

i. Whether Plaintiff and other members of the proposed Class have sustained damages as a result of NFCU's wrongful business practices described herein and the measure of damages.

41. Plaintiff's claims are typical of the claims of the other proposed Class members in that they arise out of the same wrongful business practice by NFCU, as described herein.

42. Plaintiff is more than an adequate representative of the proposed Class in that he has suffered damages as a result of NFCU's improper business practices. Additionally:

a. Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

b. There is no conflict of interest between Plaintiff and the unnamed Class members;

c. Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d. Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

43. Plaintiff's proposed class action is the superior method for resolving this dispute because it is impracticable to bring proposed Class members' individual claims before the Court. Class treatment permits a large number of similarly situated persons or

CLASS ACTION COMPLAINT

entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class action mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION
**Violation of the Electronic Funds Transfers Act ("EFTA")**
**15 U.S.C. §§ 1693, *et seq.*; 12 C.F.R. §§ 1005.1, *et seq.* ("Regulation E" of the EFTA)**
**(On Behalf of Plaintiff and the Reg. E Class)**

44.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

45.     Plaintiff brings this cause of action pursuant to the Electronic Fund Transfers Act ("EFTA"), 15 U.S.C. §§ 1693, *et seq.,* and Regulation E of the EFTA, 12 C.F.R. §§ 1005.1, *et seq.*

46.     The EFTA provides strong protection for consumers arising from unauthorized transactions, including by requiring that financial institutions limit consumer liability for unauthorized funds transfers to $50 if the consumer notifies the financial institution within two business days after learning of the loss or theft of a debit card, or

within sixty days of transmittal of the account statement reflecting the unauthorized transactions. *See* 15 U.S.C. § 1693g(a).

47.    Regulation E similarly provides that "[a] consumer's liability for an unauthorized electronic transfer or a series of related unauthorized transfers shall be determined as follows: . . . If the consumer notifies the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $50 or the amount of unauthorized transfers that occur before notice to the financial institution." 12 C.F.R. § 205.6(b)(1).

48.    The EFTA further places the burden on the financial institution to demonstrate that challenged transfers were in fact authorized. *See* 15 U.S.C. § 1693g(b) ("In any action which involves a consumer's liability for an unauthorized electronic fund transfer, the burden of proof is upon the financial institution to show that the electronic fund transfer was authorized . . .").

49.    Additionally, the EFTA requires that in the event the financial institution determines that an error did *not* occur, it is required to provide the consumer with "an explanation of its findings" and "upon the request of the consumer promptly deliver or mail to the consumer reproductions of all documents which the financial institution relief on to conclude such error did not occur." 15 U.S.C. § 1693f(d).

50.    Similarly, Regulation E provides that if the financial institution determines "no error" occurred, then it is required to provide a written explanation to justify its denial:

**Written explanation.** The institution's report of the results of its investigation shall include a written explanation of the institution's findings and shall note the consumer's right to request the documents that the institution relied on in making its determination. Upon request, the institution shall promptly provide copies of the documents.

12 C.F.R. § 205.11(d)(1).

51.    A financial institution will be held liable to the consumer for treble damages where "the financial institution knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation." 15 U.S.C. § 1693f(e)(2).

52.    Plaintiff provided notice to NFCU within two business days of discovering that his debit card had been stolen and that there were unauthorized charges.

53.    By denying Plaintiff's claim on the unsupported ground that "no error occurred" after just one day of conducting a purported "investigation" and by failing to provide a detailed explanation of its findings and justification for its denial, NFCU flouts the EFTA and Regulation E's investigation and error resolution requirements and ultimately fails to satisfy its burden of proving that the unauthorized transactions as reported by Plaintiff were in fact authorized.

54.    NFCU's affirmative actions and omissions violate the EFTA and Regulation E whose "primary objective[s]" are "the protection of consumers" and "the protection of individual consumer rights." *See* 12 C.F.R. § 1005.1(b); 15 U.S.C. § 1693(b).

55.     As a direct and proximate result of Defendant's improper conduct outlined herein, Plaintiff and members of the putative class have suffered financial harm in the form of being on the hook for hundreds of dollars in fraudulent purchases that they did not authorize.

56.     Accordingly, Plaintiff and members of the putative class are entitled to an award of statutory and actual damages, including attorneys' fees and costs, as set forth under 15 U.S.C. § 1693m(a).

57.     Additionally, Plaintiff and members of the putative class are entitled to treble damages pursuant to 15 U.S.C. § 1693f(e) given NFCU's knowing and willful inadequate investigations of Plaintiff's and absent class members' fraud claims.

### SECOND CAUSE OF ACTION
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof Code § 17200, *et seq.***
**(On Behalf of Plaintiff and the California Subclasses)**

58.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

59.     Plaintiff and members of the putative class have standing to pursue a cause of action against Defendant for unfair and unlawful business acts or practices because they have suffered an injury-in-fact and lost money due to Defendant's actions and/or omissions as set forth herein.

60.     Defendant's conduct is unlawful under Bus. & Prof. Code § 17200 *et seq.* because it is in violation of the EFTA and Regulation E, as discussed above.

61.     Defendant's conduct described herein is "unfair" under Bus. & Prof. Code § 17200 because it violates public policy and is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, and any utility of such practices is outweighed by the harm caused to consumers, including to Plaintiff, the Class, and the public. Specifically, NFCU wrongfully denies consumers' fraud claims and disputes regarding unauthorized transactions after failing to properly investigate those claims, failing to provide adequate written explanation for the denial of those claims, and by ultimately failing to satisfy its burden to prove that the disputed transactions were in fact authorized. The financial harm to consumers as a result of NFCU's wrongful business practices is substantial in that consumers are forced to pay hundreds of dollars for unauthorized purchases arising from fraud or theft that was out of their own control.

62.     Plaintiff and the putative Class are entitled to restitution of all funds wrongfully obtained by NFCU through their unlawful and unfair business practices as described herein.

63.     Defendant's wrongful conduct is ongoing and is part of a pattern or generalized course of conduct repeated on thousands of occasions yearly.

64.     Pursuant to Bus. & Prof. Code § 17203, Plaintiff seeks an injunction on behalf of the general public enjoining Defendant from continuing to engage in the unfair and unlawful business practices described above, or any other act prohibited by law.

65.     Additionally, Plaintiff and the putative Class members seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

### THIRD CAUSE OF ACTION
**Breach of Contract Including Breach of the Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the Breach of Contract Class and California Subclass)**

66.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

67.     Plaintiff and members of the Class contracted with NFCU for checking account services, as embodied in the Deposit Agreement & Disclosures, including the Debit Card Disclosure.

68.     NFCU breached the terms of its contract with consumers when, as described herein, NFCU failed to fairly investigate reported erroneous and fraudulent transactions and failed to reimburse accountholders for fraud losses incurred on debit card transactions.

69.     Further, under the law of each of the states where NFCU does business, an implied covenant of good faith and fair dealing governs every contract. The covenant of good faith and fair dealing constrains NFCU's discretion to abuse self-granted contractual powers.

70.     This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

71.     Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

72.     Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

73.     NFCU breached the covenant of good faith and fair dealing when it failed to fairly investigate reported erroneous and fraudulent transactions and failed to reimburse accountholders for fraudulent losses incurred on debit card transactions.

74.     Each of NFCU's actions were done in bad faith and were arbitrary and capricious.

75.     Plaintiff and members of the Class have performed all of the obligations imposed on them under the contract.

76.     Plaintiff and members of the Class have sustained monetary damages as a result of NFCU's breaches of the contract and covenant of good faith and fair dealing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against NFCU for himself and the proposed Class members as follows:

a. Certifying the proposed Class, appointing Plaintiff as representative of the Class, and appointing Plaintiff's counsel as class counsel for the proposed Class;

b. Declaring that NFCU's policies and practices described herein constitute a violation of the EFTA, Regulation E, California's Unfair Competition Law, and breach of contract and breach of the covenant of good faith and fair dealing;

c. Enjoining NFCU from the wrongful conduct as described herein on behalf of the general public;

d. Awarding actual damages and statutory damages in an amount according to proof;

e. Awarding treble damages, if permitted by law;

f. Awarding pre-judgment interest at the maximum rate permitted by applicable law;

g. Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

h. Awarding such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demands a jury trial on all issues in this complaint that are so triable as a matter of right.

Dated: October 10, 2023                    Respectfully submitted,

*/s/ Scott Edelsberg*
**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (CA Bar No. 330990)
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: 305-975-3320
scott@edelsberglaw.com

*Counsel  for Plaintiff and the Proposed Class*