Fred B. Burnside (SBN 211089)
  fredburnside@dwt.com
John D. Freed (SBN 261518)
  jakefreed@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111-6533
Telephone:  (415) 276-6532
Fax:   (415) 276-6599

Nancy R. Thomas (SBN 236185)
  nancythomas@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566
Telephone: (213) 633-6800
Fax:  (213) 633-6899

Attorneys for Defendant
NAVY FEDERAL CREDIT UNION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY STEPHENSON, individually, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NAVY FEDERAL CREDIT UNION,<br><br>Defendant. | Case No. **3:23-cv-01851-WQH-KSC**<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**<br><br>Assigned to The Hon. William Q. Hayes<br><br>Action filed: 10/10/2023 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ............................ 1

II.   STATEMENT OF FACTS ................................................................. 2

    A.   Navy Federal's Business & Operations Background. ......................... 2

    B.   The Parties' Contract. ................................................................... 2

    C.   Plaintiff's Challenged Transactions and Navy Federal's Response. ................................................................................ 3

    D.   Regulatory Context ....................................................................... 6

III.  ARGUMENT ............................................................................... 7

    A.   Plaintiff Fails to State a Claim Under the EFTA. ............................ 8

        1.   Navy Federal Complied With Its EFTA Obligations. .............. 8

        2.   Plaintiff Cannot Show EFTA Causation For Actual Damages ............................................................................ 10

    B.   Plaintiff Fails to State a Claim Under the UCL. ............................ 11

        1.   The Parties' Choice-of-Law Provision Bars Plaintiff's UCL Claim. ...................................................................... 11

        2.   Plaintiff Lacks UCL Standing. .......................................... 13

        3.   Plaintiff Fails to State a UCL Unlawfulness Claim. ............... 14

        4.   Plaintiff Fails to State a UCL Unfairness Claim. ..................... 15

    C.   Plaintiff's Contract Claims Fail. ................................................. 16

        1.   Plaintiff Fails to State a Claim for Express Breach of Contract. ....................................................................... 16

        2.   Plaintiff Fails to State a Claim for Breach of Implied Covenant. ...................................................................... 19

IV.   CONCLUSION ........................................................................... 20

MEM. P&A ISO MOT. TO DIS.
4884-5956-9810v.9 0082300-000088

3:23-CV-01851-WQH-KSC
DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aleksick v. 7-Eleven, Inc.*,
  205 Cal. App. 4th 1176 (2012) ............................................................ 14

*Appalachian Ins. Co. v. McDonnell Douglas Corp.*,
  214 Cal. App. 3d 1 (1989) .................................................................. 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................ 8

*Avidity Partners, LLC v. State of Cal.*,
  221 Cal. App. 4th 1180 (2013) ............................................................ 19

*Bank of Am. Cal. Unemployment Benefits Litig., In re*,
  2023 WL 3668535 (S.D. Cal. 2023) ...................................................... 18

*Bates v. UPS, Inc.*,
  511 F.3d 974 (9th Cir. 2007) ............................................................... 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................ 7

*Bruton v. Gerber Prods. Co.*,
  2018 WL 1009257 (N.D. Cal. 2018) ..................................................... 14

*Cel-Tech Commc'ns, Inc. v. L. A. Cellular Tel. Co.*,
  20 Cal.4th 163 (1999) ................................................................... 13, 14

*Century 21 Real Estate LLC v. All Pro. Realty, Inc.*,
  600 F. Appx. 502 (9th Cir. 2015) .................................................... 12, 19

*Cont'l Airlines, Inc. v. Mundo Travel Corp.*,
  412 F. Supp. 2d 1059 (E.D. Cal. 2006) ................................................ 12

*Cowan v. GE Cap. Retail Bank*,
  2015 WL 1324848 (N.D. Cal. 2015) ......................................... 5, 10, 16

*Datatel Sols., Inc. v. Keane Telecom Consulting, LLC*,
  2015 WL 411238 (E.D. Cal. 2015) ....................................................... 11

3:23-CV-01851-WQH-KSC
DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Day v. AT&T Corp.*,
    63 Cal. App. 4th 325 (1998) ................................................................. 13

*Docena v. Navy Federal Credit Union*,
    2016 WL 53826 (D. Nev. 2016) ........................................................... 19

*Durell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350 (2010) ............................................................ 15

*Erie Ins. Exch. V. EPC MD 15*,
    822 S.E.2d 351 (Va. 2019)................................................................... 18

*Guadagno v. E*Trade Bank*,
    592 F. Supp. 2d 1263 (C.D. Cal. 2008) ............................................... 12

*Hall v. Time, Inc.*,
    158 Cal. App. 4th 847 (2008) .............................................................. 13

*Kanji v. Bank of Am., N.A.*,
    2020 WL 8175548 (C.D. Cal. 2020)..................................................... 13

*Lambert v. Navy Fed. Credit Union*,
    2019 WL 3843064 (E.D. Va. 2019)...................................................... 12

*Lusinyan v. Bank of Am., N.A.*,
    2015 WL 12777225 (C.D. Cal. 2015) ................................................... 13

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1998) .................................................................8

*Paulsen v. CNF, Inc.*,
    559 F.3d 1061 (9th Cir. 2009) ...............................................................8

*Pulte Home Corp. v. Am. Safety Indem. Co.*,
    268 F. Supp. 3d 1091 (S.D. Cal. 2017)........................................... 11, 12

*Romoff v. General Motors LLC*,
    574 F. Supp. 3d 782 (2021) (Hayes, J.) ............................................... 15

*Sanchez v. Navy Fed. Credit Union*,
    2023 WL 6370235 (C.D. Cal. 2023)................................. 6, 17, 18, 19

*SmileCare Dental Grp. v. Delta Dental Plan of Cal.*,
    88 F.3d 780 (9th Cir. 1996) ...................................................................7

iii

3:23-CV-01851-WQH-KSC
DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Sprewell v. Golden State Warriors,*
   266 F.3d 979 (9th Cir. 2001) ...................................................................8

*Stearns v. Ticketmaster Corp.,*
   655 F.3d 1013 (9th Cir. 2011), *abrogated on other grounds by Comcast
   Corp. v. Behrend*, 569 U.S. 27 (2013) ............................................... 10

*Summers v. Earth Island Inst.,*
   555 U.S. 488 (2009) ........................................................................ 14

*Tonnemacher v. Sasak,*
   155 F.R.D. 193 (D. Ariz. 1994) ...................................................... 16

*Tristan v. Bank of Am., N.A.,*
   2023 WL 8168848 (C.D. Cal. 2023)............................................ 9, 14

*Trust One Mortg. Corp. v. Inv. Am. Mortg. Corp.,*
   134 Cal. App. 4th 1302 (2005) ...................................................... 11

*U.S. v. Ritchie,*
   342 F.3d 903 (9th Cir. 2003) ......................................................... 2, 8

*Wilson v. Hewlett-Packard Co.,*
   668 F.3d 1136 (9th Cir. 2012) ....................................................... 14

**Statutes**

15 U.S.C.
   § 1693f(d) .......................................................................................1
   § 1693m(a) ................................................................................... 10

Cal. Bus. & Prof. Code
   § 17200........................................................................................ *passim*
   § 17204...................................................................................... 13

Cal. Civ. Code § 1641 ....................................................................... 18

**Rules**

Fed. R. Civ. P. 12(b)(6)......................................................................7

MEM. P&A ISO MOT. TO DIS.
4884-5956-9810v.9 0082300-000088

3:23-CV-01851-WQH-KSC
DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## Regulations

12 C.F.R.
  § 1005.7(b)(4) ...................................................................................7
  § 1005.11(b)(1) .................................................................................6
  § 1005.11(c)(1) ............................................................................ 6, 15
  § 1005.11(c)(4) .............................................................................. 6, 9
  § 1005.11(d)(1) ...................................................................... 7, 8, 9, 16
  § 1005.11(e) ................................................................................ 7, 10
  § 1005, Supp. I, § 1005.11(c)(4)(5) .............................................. 7, 9

## Other Authorities

NCUA Op. Letter 04-0147, 2004 WL 5245382 (N.M. 2004) ...................................2

**3:23-CV-01851-WQH-KSC**
**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Jeffrey Stephenson's son Wyatt lost his Navy Federal debit card in February 2023.  After reviewing his account statement, Plaintiff disputed several debit-card charges as unauthorized.  Defendant Navy Federal investigated and gave Plaintiff a written explanation as to why it denied his claim for reimbursement of the disputed charges.  Navy Federal found no errors after reviewing the underlying transaction details, historical account data, and noting discrepancies between the fraud claim and account activity.  Navy Federal offered to produce any documents used in deciding his claim, Compl. Ex. A, but Plaintiff did not accept the offer.  Instead, he brought this putative class action, alleging Navy Federal's written explanation was not detailed *enough*, which he claims violates the Electronic Funds Transfer Act (EFTA) 15 U.S.C. § 1693f(d), and by extension, California's Unfair Competition Law (UCL).  Compl. ¶¶ 45-65.  He also alleges Navy Federal's fraud investigation breached the parties' contract, which promised "zero liability" for "*confirmed* fraudulent transactions."  *Id.* ¶¶ 28-34 (emphasis added).  The Court should dismiss the Complaint with prejudice because:

*First*, Plaintiff's EFTA claims fails because Navy Federal *did* explain its findings in denying his claims as the EFTA requires.  That he would have preferred information beyond what the EFTA requires does not state an EFTA claim.  And Plaintiff's request for actual damages under the EFTA also fails because he cannot show that his alleged damages (unreimbursed charges) were sustained "as a result of" the alleged EFTA violation (the allegedly insufficiently detailed denial letter).

*Second*, the parties' selection of Virginia law bars Plaintiff's UCL claim.  Even if that were not the case, Plaintiff lacks UCL standing because he did not lose any money or property as a result of the allegedly defective denial letter, the claim is based on his meritless EFTA claim, and Plaintiff seeks damages, not restitution.

*Third*, Plaintiff's contract claims fail because Navy Federal breached no contract term and complied with all contract terms in good faith.

1

3:23-CV-01851-WQH-KSC
DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## II.    STATEMENT OF FACTS

### A.    Navy Federal's Business & Operations Background.

Navy Federal is a federally chartered not-for-profit credit union with headquarters in Vienna, Virginia, whose members consist of active duty, retired, and veteran United States military personnel, their families, and Department of Defense civilians.[1]  Compl. 10.  Unlike banks, "[c]redit unions are nonprofit cooperatives, owned by their members and democratically controlled, that may only lend and pay dividends to their members and, as such, are disinclined by their nature and structure to engage in the kinds of practices regarded as predatory or abusive."  NCUA Op. Letter 04-0147, 2004 WL 5245382, *2 (N.M. 2004).

### B.    The Parties' Contract.

Plaintiff has a Navy Federal account ("Account") with his son Wyatt Stephenson.  Compl. ¶ 15.  The Account is governed by Navy Federal's Debit Card Disclosure ("DCD") and Important Disclosures (with the DCD, the "Agreement").  *Id.* ¶¶ 28, 67 & Ex. 1; Lashbaugh Decl. Ex. A (Important Disclosures).[2]

**Dispute Resolution Provisions.**  Under the Agreement, Virginia law governs Plaintiff's claims.  Compl., Ex. 1 at 1.  The Agreement specifies the parties' respective liability for unauthorized transactions.  Compl. Ex. 1, §§ 14-16.  Plaintiff's contract claims focus on Sections 15 and 16:

> **15. Navy Federal's Zero Liability Policy for Fraud:** … [I]f you notify us of suspected fraud within 60 days of the statement date on which the fraudulent transactions first appear, we will not hold you responsible for *confirmed* fraudulent transactions.  This Zero Liability policy *only* covers transactions that have been *confirmed by Navy Federal as fraudulent.*

---

[1] https://www.navyfederal.org/about.html.

[2] Plaintiff does not attach the Important Disclosures to the Complaint, but because they are incorporated by reference, *see* Compl. ¶¶ 15 & 67, Navy Federal submits them with the Declaration of Athena Lashbaugh.  *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Plaintiff's Complaint also relies on his claim submission, Compl. ¶ 17, appeal submission, *id.* ¶¶ 18-20, and account statements, *id.* ¶ 18, which are also incorporated by referenced and attached to the Lashbaugh Declaration.

3:23-CV-01851-WQH-KSC
DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**16. Billing Error Resolution:** The Billing Error Resolution process covers … unauthorized transactions …. If you think your statement or receipt has errors, or if you need more information about a transaction listed on your statement or receipt, contact us as soon as possible using the contact information listed above.… You will need to identify yourself and the account, describe the error or the transaction you are questioning, clearly explain why you believe an error exists or why you need more information, and tell us the dollar amount of the suspected error.… We will report the results of our investigation to you within 3 business days after completing our investigation. … If we determine there was no error, we will send you a written explanation of our findings. You may ask for copies of the documents that we used in making our determination.

*Id.* at 2 (emphasis added).

**C.     Plaintiff's Challenged Transactions and Navy Federal's Response.**

**Plaintiff's Initial Claim**. Plaintiff alleges that on February 23, 2023, he and his son discovered that a debit card linked to the Account had been missing for three weeks, "after noticing several unauthorized transactions had occurred" on the account statement. Compl. ¶ 16. The next day, he reported the card as stolen to Navy Federal and "submitted a claim of unauthorized debit card activity for a total of $991.98 in fraudulent purchases." *Id.* ¶ 17; *see also* Lashbaugh Decl. Ex. C (claim submission). Plaintiff advised Navy Federal that the card was lost on February 1, 2023, and he challenged transactions between February 1 and February 17, 2023. *See* Lashbaugh Decl. Ex. C.

**Navy Federal's Prompt Investigation.** Navy Federal reviewed its internal records to evaluate Plaintiff's claim that the transactions were unauthorized. As reflected in Plaintiff's account statement, Navy Federal found that the first two transactions Plaintiff identified as unauthorized (with Aramark) occurred on January 31, 2023, *before* the date when Plaintiff advised Navy Federal that his son lost the debit card. *See* Lashbaugh Decl. Ex. B at 3 (Account statements show transaction authorization and posting dates. *Id.* (highlighting on statement added)). And all four challenged Aramark purchases were consistent in amount and location with *eleven* similar Aramark transactions that occurred before the alleged theft. *See id.* at 2-3 (highlighting on statement added).

3:23-CV-01851-WQH-KSC
DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**Navy Federal's Response.** As a result, on February 24, 2023, Navy Federal rejected the claim of unauthorized transactions, explaining that its "investigation was based on a review of [the] account activity, including, but not limited to: transaction details, account history, and/or discrepancies between the fraud claim and your account." Compl. ¶ 19 & Ex. A. Navy Federal informed Plaintiff that he "ha[d] the right to request any documentation that was used in the decision of this claim." *Id.*, Ex. A. Plaintiff does not allege (and cannot allege consistent with Rule 11) that he accepted Navy Federal's offer to provide the documents used in its investigation into his claims.

**Plaintiff Provides New (and Contradictory) Facts.** Instead of requesting the documentation Navy Federal used in its claim denial, Plaintiff "submitted additional information" via Navy Federal's website as part of a courtesy second review, "including detailed written responses to seven questions" and a list of the transactions he disputed. Compl. ¶¶ 18, 20-21; Lashbaugh Decl. Ex. D. Plaintiff provided new (and in some instances contradictory) information, now stating that his debit-card was stolen on February 2, 2022—rather than February 1, 2022. Lashbaugh Decl. Ex. D. This change is material. Plaintiff for the first time claimed any Walmart transactions were evidence of fraud because his account history showed he had never shopped at Walmart. Compl. ¶ 18. But his account statement shows he authorized the first challenged Walmart transaction on February 1, 2023, *before* the new, later date of the alleged theft of his debit card. Lashbaugh Decl. B at  3 (highlighting on statement added). Navy Federal reviewed the new information Plaintiff provided, but none contradicted (and many supported) the existing bases for denying the claim. As a result, Navy Federal confirmed its denial on March 10, 2023. Compl. ¶ 21 & Ex. B.

Plaintiff  thereafter made complaints first to the Consumer Financial Protection Bureau ("CFPB") on April 3, 2023, and later to the Better Business Bureau ("BBB"). *Id.* ¶¶ 23-25 & Exs. C-D. In his CFPB complaint, he instructed

MEM. P&A ISO MOT. TO DIS.
4884-5956-9810v.9 0082300-000088

4

**3:23-CV-01851-WQH-KSC**
**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

that Navy Federal's investigation should examine his "purchase history"—which is exactly what Navy Federal did.  *See* Compl., Ex. C. at 1.  In his CFPB submission, Plaintiff admits that his complaint is *not* that Navy Federal failed to give any explanation of its findings, but that he believed "[b]anking laws should be *changed*" to require Navy Federal to explain not just their findings but also "*how* they [sic] reached their [sic] conclusion" that the transactions were authorized.  *Id.*, Ex. C at 2 (emphasis added).  Plaintiff thus sought not just an explanation of Navy Federal's findings, but also its confidential fraud-detection methods.[3]  He did *not* (a) identify any information Navy Federal failed to review; (b) clarify the timing discrepancies between his claims and the transaction history on his account; (c) explain why he did not request the documents supporting Navy Federal's conclusion; or (d) provide information that would have led Navy Federal to a different conclusion.

Plaintiff purports to bring this putative class action on behalf of Navy Federal accountholders who "notified [Navy Federal] that one or more charges on their account were unauthorized and were denied reimbursement on the grounds that [Navy Federal] determined that no error occurred *without any written explanation of [Navy Federal's] investigation and findings*."  Compl. ¶ 7 (emphasis added).

Plaintiff alleges two putative classes:

All holders of a Navy Federal checking account who, within the applicable statute of limitations preceding the filing of this lawsuit up until the date of class certification, notified Navy Federal that one or more charges on their account were unauthorized and were denied reimbursement *without any written explanation* of Navy Federal's *investigation* and *findings* ("Reg E Class").

All holders of a Navy Federal checking account who, within the applicable statute of limitations preceding the filing of this lawsuit up until the date of class certification, had an *unauthorized* charge on their account and were denied reimbursement by Navy Federal ("Breach of Contract Class").

Compl. ¶ 35 (emphasis added).

---

[3] *Cf. Cowan v. GE Cap. Retail Bank*, 2015 WL 1324848, *2–3 (N.D. Cal. 2015) ("internal procedures for addressing cardholder fraud notifications, as well as risk management and legal compliance in investigating fraud" are confidential).

3:23-CV-01851-WQH-KSC
DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

These definitions confirm what the case is (and is not) about. The putative "Reg E Class" claim is *not* that Navy Federal got it wrong as to whether each transaction was authorized.  Instead, the Reg E claim is limited to the failure-to-explain theory.  Under that theory, regardless of whether any transaction was authorized, Navy Federal is liable under the EFTA because Plaintiff and a putative class were "denied reimbursement without any written explanation of Navy Federal's investigation and findings."  *Id.*; *see also id.* ¶¶ 7, 53.  By contrast, his "Breach of Contract Class" claims focus on whether Navy Federal failed to "fairly" investigate his claims and denied reimbursement for transactions he (and the putative class) believes were "unauthorized."  *Id.* ¶¶ 35, 68, 73.

Plaintiff alleges claims for:  (1) violation of the EFTA and its implementing regulation, Regulation E, 12 C.F.R. §§ 1005.1, *et seq.*; (2) violation of the UCL (Cal. Bus. & Prof. Code § 17200); and (3) breach of the Agreement and breach of the Agreement's implied covenant of good faith and fair dealing.  Compl. ¶¶ 44-76.

**D.    Regulatory Context.**

"The EFTA and 'Regulation E' impose[] a general duty on financial institutions to take certain actions when a consumer reports an 'error.'  The statute applies to electronic fund transfers that authorize a financial institution to debit or credit a consumer's account.…  'Unauthorized' transactions are [] included within the definition of 'error.'"  *Sanchez v. Navy Fed. Credit Union*, 2023 WL 6370235, *21 (C.D. Cal. 2023).

When a consumer provides a compliant "oral or written notice of error," the "financial institution shall investigate promptly and [subject to certain exceptions] shall determine whether an error occurred within 10 business days of receiving a notice of error."  12 C.F.R. §§ 1005.11(b)(1), (c)(1).  Navy Federal's "review of its own records regarding an alleged error satisfies the [investigation] requirements" of the EFTA and Regulation E.  *Id.* §1005.11(c)(4).  That review may include, as here, the account's "transaction history … for a reasonable period of time immediately

3:23-CV-01851-WQH-KSC
DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

preceding the allegation of error," and the "location" of transactions and payees. 12 C.F.R. § 1005, Supp. I, § 1005.11(c)(4)(5) (official interpretation). If the financial institution determines there is no error, its "report of the results of its investigation shall include a written explanation of the institution's findings and shall note the consumer's right to request the documents that the institution relied on in making its determination. Upon request, the institution shall promptly provide copies of the documents." 12 C.F.R. § 1005.11(d)(1). The EFTA does not mandate particular content in the "written explanation." *Cf.* 12 C.F.R. § 1005.7(b)(4) (allowing disclosure limits to maintain confidentiality and security). "A financial institution that has fully complied with the[se] error resolution requirements *has no further responsibilities* under [Regulation E] should the consumer later reassert the same error, *except* in the case of an error asserted by the consumer *following receipt of information*" provided by the financial institution in response to the consumer's request for supporting documentation. *Id.* § 1005.11(e) (emphasis added).

Under these provisions, Navy Federal's obligations were complete once it provided Plaintiff a "written explanation" on February 24, 2023. Because Plaintiff never requested documentation supporting Navy Federal's no-error determination, Navy Federal had "no further responsibilities" to review Plaintiff's claims or provide additional responses (but it did so anyway). *Id.*

## III.    ARGUMENT

A court should weed out undeserving complaints before parties engage in expensive discovery. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 559 (2007). A court may dismiss a claim under Rule 12(b)(6) for failure to state a claim for "(1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.,* 88 F.3d 780, 783 (9th Cir. 1996). A court should grant a motion to dismiss if a plaintiff fails to plead enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" because facts "merely consistent

MEM. P&A ISO MOT. TO DIS.
4884-5956-9810v.9 0082300-000088

3:23-CV-01851-WQH-KSC
DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

with" liability are insufficient. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). In evaluating a motion to dismiss, the Court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Paulsen v. CNF, Inc.,* 559 F.3d 1061, 1071 (9th Cir. 2009). The Court may consider materials necessarily relied upon in the complaint. *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003). "[E]ven if the plaintiff's complaint does not explicitly refer to" documents, if the claims depend on those documents, defendants may rely on them in a motion to dismiss. *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir. 1998).

**A.      Plaintiff Fails to State a Claim Under the EFTA.**

**1.      Navy Federal Complied With Its EFTA Obligations.**

Plaintiff's allegations establish that Navy Federal met all of the requirements under the EFTA. Plaintiff "reported [his debit] card as stolen [three weeks earlier] … and submitted a claim of unauthorized debit card activity" on February 23, 2023. Compl. ¶ 17. Based on the February 23 submission of information and its internal records, Navy Federal rejected his claim the following day, explaining it had investigated his "transaction details, account history, and/or discrepancies between the fraud claim and [his] account." *Id.* ¶ 19 & Ex. A. Plaintiff nowhere suggests Navy Federal failed to review relevant records. Instead, he blames Navy Federal's investigation as *too* prompt. Compl. ¶ 19. He also suggests he was entitled to a more detailed explanation of its findings, including *how* it investigates fraud to reach its findings. *Id.* ¶¶ 3, 35, 53 & Ex. C at 2.

Nothing in the EFTA requires a detailed explanation of the *methods* Navy Federal uses to investigate fraud claims (and for good reason). *Compare* Compl. ¶ 35 (demanding a "written explanation of Navy Federal's investigation"), *with* 12

8

3:23-CV-01851-WQH-KSC
DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

C.F.R. §1005.11(d)(1) (requiring only "written explanation of the institution's findings"). Plaintiff's Complaint seeks to create new obligations under the EFTA.

Navy Federal did all that the EFTA requires. As to its investigation, Navy Federal was only required to "review … its own records regarding an alleged error." 12 C.F.R. § 1005.11(c)(4); *Tristan v. Bank of Am., N.A.*, 2023 WL 8168848, *4 (C.D. Cal. 2023). Plaintiff does not allege Navy Federal failed to do so. *See Tristan*, 2023 WL 8168848, at *4 (dismissing EFTA claim where "allegations do not demonstrate that the Bank failed to review its records"). To the contrary, Navy Federal reviewed the exact records the Official Commentary to Regulation E recommends, including the "transaction records" for the challenged transactions, the "transaction history" of the account before and after the alleged loss, the "location" and "habitual" spending habits, and "other information" showing discrepancies in the representations as to timing and merchants, all of which confirmed the disputed transactions were authorized. 12 C.F.R. § 1005, Supp. I, § 1005.11(c)(4)(5) (Official Commentary). "That [Navy Federal] reached a different conclusion [than Plaintiff] upon reviewing the records" does not "state a claim under the EFTA." *Tristan*, 2023 WL 8168848, at *4

And as to its communication with Plaintiff, Navy Federal was only required to provide a "written explanation of [its] findings" and inform Plaintiff of his "right to request the documents that [it] relied on in making its determination." 12 C.F.R. § 1005.11(d)(1). Plaintiff admits Navy Federal provided a "written explanation of [its] findings" and notified Plaintiff of his right to request documentary support for those findings. Compl. ¶ 19 & Ex. A. Nothing in the EFTA or Regulation E requires a more detailed explanation than the one Navy Federal gave. In *Tristan*, as here, the Plaintiffs complained about "allegedly boilerplate letters they received … arguing that the written explanation provided by the bank must include more than generic language informing the consumer their claim is denied." 2023 WL 8168848, at *4. The court rejected the EFTA claim, citing the lack of "detailed

3:23-CV-01851-WQH-KSC
DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

allegations about what the financial institution failed to consider." *Id*. Indeed, there are sound policy reasons that Navy Federal does not want to reveal to the public "how" it conducts fraud investigations—preventing members from circumventing those fraud measures. That is why courts agree that "how" financial institutions investigate is confidential. *Cowan*, 2015 WL 1324848, at *2–3.

Plaintiff's superfluous allegations about his post-denial communications do not change this result. Compl. ¶¶ 18, 20-26. "A financial institution that has fully complied with the error resolution requirements *has no further responsibilities under this section* should the consumer later reassert the same error." 12 C.F.R. § 1005.11(e) (emphasis added). The only exception to this rule is if the consumer reasserts an error after requesting documentary support for the financial institution's determination. *Id*. But Plaintiff never requested Navy Federal's documentary support. Because he merely "reassert[ed] the same error," the EFTA did not require any further response. Plaintiff provided no new information that changed Navy Federal's original determination—he asked Navy Federal to re-examine the same information Navy Federal cited in denying his claim (transaction history, spending patterns, and timing). And even if the EFTA required Navy Federal to consider the additional information—which it did not—the additional information Plaintiff provided merely added inconsistencies, creating additional bases to reject his claim rather than a basis to sue under the EFTA.

### 2.    Plaintiff Cannot Show EFTA Causation For Actual Damages

Although Plaintiff purports to require Navy Federal to reimburse him for transactions it found were authorized, he is not entitled to any such recovery under the EFTA even if he were to prove his claim. Plaintiff seeks to recover actual damages under 15 U.S.C. §1693m(a). Compl. ¶ 56. But section 1693m, requires a plaintiff to prove damages sustained by the consumer "as a result of" the alleged EFTA violation. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1026 (9th Cir. 2011) (affirming class-certification denial because alleged EFTA violation may not

MEM. P&A ISO MOT. TO DIS.
4884-5956-9810v.9 0082300-000088

3:23-CV-01851-WQH-KSC
DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

have caused alleged damage), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27, 34-38 (2013).  Here, Plaintiff's alleged damages—"hundreds of dollars" in transactions Plaintiff claims were unauthorized, Compl. ¶ 55, have nothing to do with the alleged EFTA violation (the purportedly inadequate denial letter).  Plaintiff has not alleged and cannot allege that if he had received the more detailed explanation of Navy Federal's denial of his claim, he would have obtained reimbursement of the amount of unauthorized transactions.  As a result, Plaintiff's EFTA claim for actual damages fails for lack of causation, and the court should at a minimum strike any EFTA claim for actual damages.

**B.    Plaintiff Fails to State a Claim Under the UCL.**

Plaintiff claims Navy Federal violated the UCL's unlawful and unfair prongs based on the same inadequate explanation theory that is the basis for Plaintiff's EFTA claim.  Compl. ¶¶ 59-61.  His UCL claim fails for several reasons.

**1.    The Parties' Choice-of-Law Provision Bars Plaintiff's UCL Claim.**

Plaintiff may not bring a UCL claim because Virginia, rather than California law, applies to his claims.  Compl., Ex. 1 at 1.

"A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." *Pulte Home Corp. v. Am. Safety Indem. Co.*, 268 F. Supp. 3d 1091, 1095 (S.D. Cal. 2017).  California law thus governs enforceability of the choice-of-law provision here.  *Id.*  In California, a choice-of-law provision "is enforceable if the chosen state has a substantial relationship to the parties," *i.e.*, if "one of the parties lives in the chosen state." *Trust One Mortg. Corp. v. Inv. Am. Mortg. Corp.*, 134 Cal. App. 4th 1302, 1309 (2005).  If the chosen state has a substantial relationship to one of the parties, the choice-of-law provision "generally will be enforced unless the other side can establish both that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue." *Datatel Sols., Inc. v. Keane Telecom Consulting, LLC*, 2015 WL 411238, *6 (E.D. Cal.

MEM. P&A ISO MOT. TO DIS.
4884-5956-9810v.9 0082300-000088

3:23-CV-01851-WQH-KSC
DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

2015).  When another state's law applies, a plaintiff may not bring California statutory claims, including those under the UCL.  *Century 21 Real Estate LLC v. All Pro. Realty, Inc*., 600 F. Appx. 502, 504 (9th Cir. 2015).

Here, Virginia has a substantial relationship to the parties' dispute.  Where "one of the contracting parties … had its principal place of business in the chosen state," there is a "substantial relationship" between the chosen state and the contracting parties.  *Pulte*, 268 F. Supp. 3d at 1095.  Navy Federal's principal place of business and headquarters is in Virginia.  *See* Compl. ¶ 10.  Under the Agreement, Plaintiff's "funds and checking, savings, and all other accounts are located" in Virginia.  Lashbaugh Decl. Ex. A at 9.  Thus, Navy Federal, Plaintiff's account, and Plaintiff's funds are all in Virginia; Plaintiff called Navy Federal in Virginia to dispute the charges; the investigation, determination, and findings were made in Virginia; and the denial letter, second review, second denial letter, CFPB response, and BBB response all came from Virginia.  *See* Compl. ¶¶ 10, 17-21, 23-25 & Exs. A-D.  Virginia has a substantial relationship to the parties' dispute.

Nor does application of Virginia law violate any fundamental California public policy where, as here, Plaintiff's UCL claim is entirely based on federal law, which already provides him an adequate remedy at law.  On these facts, California does not have a materially greater interest in the determination of the particular issue, so this court should enforce the Virginia choice-of-law provision to bar the UCL claim.  *See, e.g., Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263, 1269-70 (C.D. Cal. 2008) (applying Virginia law to action with UCL claim based on alleged EFTA violations); *Cont'l Airlines, Inc. v. Mundo Travel Corp.*, 412 F. Supp. 2d 1059, 1070 (E.D. Cal. 2006) (enforcing choice of Virginia law and dismissing UCL claim).  The Court should follow *Guagdano* and *Cont'l Airlines*.  *See also Lambert v. Navy Fed. Credit Union*, 2019 WL 3843064, *6 (E.D. Va. 2019) (enforcing Virginia choice of law provision to bar claims under North Carolina's Unfair and Deceptive Trade Practices Act).

3:23-CV-01851-WQH-KSC
DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

### 2.    Plaintiff Lacks UCL Standing.

Even if the UCL did apply, UCL standing is limited to a person "who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. "The phrase 'as a result of' …means 'caused by' and requires a showing of a causal connection" between the alleged act of unfair competition and the loss of money or property. *Hall v. Time, Inc.*, 158 Cal. App. 4th 847, 855 (2008). "Prevailing [UCL] plaintiffs are generally limited to injunctive relief and restitution." *Cel-Tech Commc'ns, Inc. v. L. A. Cellular Tel. Co.*, 20 Cal.4th 163, 179 (1999).

***First***, Plaintiff fails to allege he lost any money or property as a result of Navy Federal's failure to provide a more detailed written denial letter. Even if a more "detailed" written explanation of Navy Federal's findings were required—and it is not—the denial explanation and determination are distinct events. Plaintiff does not allege any loss of money or property as a result of the denial letter and does not cite any records Navy Federal failed to examine in reaching its conclusion.

***Second***, Plaintiff cannot obtain restitution or injunctive relief. The "notion of restoring something to a victim of unfair competition includes two separate components. The offending party must have obtained something to which it was not entitled and the victim must have given up something which he or she was entitled to keep." *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 340 (1998). Plaintiff does not allege Navy Federal retained money or property he was "entitled to keep." To the contrary, he alleges a third party transferred his money to other third parties. Compl. ¶¶ 16-18. His request for "restitution of all funds wrongfully obtained by NFCU" thus makes no sense, *id.* ¶ 62, because he confirms Navy Federal did not receive any of the missing funds from the Account. He thus cannot obtain restitution in this case. *See, e.g., Kanji v. Bank of Am., N.A.*, 2020 WL 8175548, *7 (C.D. Cal. 2020) (dismissing UCL claims; funds stolen by third-party); *Lusinyan v.*

MEM. P&A ISO MOT. TO DIS.
4884-5956-9810v.9 0082300-000088

3:23-CV-01851-WQH-KSC
DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Bank of Am., N.A.*, 2015 WL 12777225, *5 (C.D. Cal. 2015) (dismissing UCL claim where bank "did not acquire and currently does not possess" Plaintiffs' funds).

As to injunctive relief, Plaintiff "bears the burden of showing that []he has standing for each type of relief sought." *Bruton v. Gerber Prods. Co.*, 2018 WL 1009257, *5 (N.D. Cal. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). He must show he "has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged again in a similar way." *Tristan*, 2023 WL 8168848, *6 (quoting *Bates v. UPS, Inc.*, 511 F.3d 974, 985 (9th Cir. 2007)). Plaintiff must establish a "real and immediate threat of repeated injury." *Bruton*, 2018 WL 1009257, *5 (quoting *Bates*, 511 F.3d at 985). There is no "freestanding right to seek injunctive relief based on conduct that has ended." *Id.* at *7. Where, as here, the conduct "has ended," a UCL plaintiff "lacks standing to seek injunctive relief." *Id.*

Plaintiff fails to allege any future risk of suffering the same purported injury. He does not claim he expects his debit card to be stolen again, that the thief would use his debit card for unauthorized purchases, that Navy Federal would deny a future error claim, or that Navy Federal would give an inadequate explanation for any future denial. He cannot obtain injunctive relief. *See Tristan*, 2023 WL 8168848, *6 ("Plaintiffs lacked standing to seek injunctive relief under the UCL … when they did not plausibly allege that they intended to use Zelle to transfer funds in the future or [that they] will be deceived again if they do").

### 3. Plaintiff Fails to State a UCL Unlawfulness Claim.

Plaintiff's claim under the "unlawful" prong fails for the same reason his EFTA claim fails. For the unlawful prong, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (citing *Cel-Tech*, 20 Cal. 4th at 180). But "[w]hen a statutory claim fails, a derivative UCL claim also fails." *Aleksick v. 7-Eleven, Inc.*, 205 Cal. App.

MEM. P&A ISO MOT. TO DIS.
4884-5956-9810v.9 0082300-000088

3:23-CV-01851-WQH-KSC
DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

4th 1176, 1185 (2012). Because Plaintiff's EFTA claim fails, for the reasons explained above, his UCL "unlawful" claim fails as well.

### 4. Plaintiff Fails to State a UCL Unfairness Claim.

An "unfair" practice is one that "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1365 (2010). Plaintiff's UCL claim is tethered solely to Navy Federal's practices in responding to allegedly unauthorized transactions under the EFTA. Compl. ¶ 61. Plaintiff pleads no new facts suggesting an unfair practice by Navy Federal. Indeed, his UCL unfairness claim relies entirely on the EFTA error-resolution process—alleging the written denial was insufficiently detailed—and by extension, the UCL unlawfulness claim. *See id.* Because the "factual basis" for the unfairness claim "is the same as for Plaintiff ['s] other claims" the "unfair-prong claim must also be rejected." *Romoff v. General Motors LLC*, 574 F. Supp. 3d 782, 790 (2021) (Hayes, J.) ("join[ing] numerous other district courts" in dismissing UCL unfairness claims based on the same facts as underlying substantive claims) (citations omitted).

Regardless, Navy Federal did not act unfairly by conducting a "prompt[]" review and providing a written explanation of its findings (as Regulation E requires), without also revealing its investigation methods or other details. 12 C.F.R. § 1005.11(c)(1). Plaintiff demands that Navy Federal explain not just its findings (as the EFTA requires) but also *how* it conducts its fraud investigation. *See* Compl. ¶ 3 (Navy Federal "failed to offer any detailed explanation of … *how* it arrived at its conclusion"); *id.* ¶ 35 (class defined as those failing to receive a "written explanation of Navy Federal's *investigation* and findings") (emphasis added); *id.* Ex. C at 2 (demanding that Navy Federal "should be made to explain *how* they [sic] reached their conclusion") (emphasis added). Public policy counsels against providing the information Plaintiff demands. Navy Federal must walk a fine line between explaining its findings and revealing its confidential fraud-

MEM. P&A ISO MOT. TO DIS.
4884-5956-9810v.9 0082300-000088

3:23-CV-01851-WQH-KSC
DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

investigation procedures, disclosure of which would allow fraudsters to circumvent those procedures. *See Cowan*, 2015 WL 1324848, at *2–3; *see also Tonnemacher v. Sasak*, 155 F.R.D. 193, 194 (D. Ariz. 1994) (explaining internal investigation procedures "are highly confidential and constitute proprietary trade secrets").

Federal regulators created a process for Plaintiff to obtain additional details underlying Navy Federal's decision: requesting the documents Navy Federal relied on to make its determination and requesting additional review if any questions remained. 12 C.F.R. § 1005.11(d)(1). Navy Federal offered those records and Plaintiff chose not to take it up on that offer. He therefore has not alleged any actions by Navy Federal that could support a claim under the "unfair" prong.

## C.    Plaintiff's Contract Claims Fail.

The plain language of the Agreement defeats Plaintiff's third claim for breach of contract. Plaintiff alleges Navy Federal breached the Agreement when it "failed to fairly investigate reported erroneous and fraudulent transactions and failed to reimburse accountholders for fraud losses incurred on debit card transactions." Compl. ¶ 68. He alleges the exact same conduct constitutes a breach of the Agreement's implied covenant. *Id.* ¶ 73. His contract claim fails, whether cast as breach of an express or implied term of the Agreement.

### 1.    Plaintiff Fails to State a Claim for Express Breach of Contract.

Plaintiff has not alleged Navy Federal breached any provision of the Agreement or caused his purported damages.

**Defective Investigation Claim.** The Agreement states Navy Federal will investigate claims as part of an error resolution process, but it does not specify any steps Navy Federal must undertake in every instance. Compl., Ex. 1 § 16. Despite Plaintiff's assertion otherwise, nothing in the Agreement requires Navy Federal to undertake a specific type of investigation in response to account-holders' unauthorized-transaction claims. Compl. ¶¶ 28-34, 66-76.

3:23-CV-01851-WQH-KSC
DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Even if the Agreement did contain any specific investigation requirements, Plaintiff has not alleged that Navy Federal failed to comply with any such requirements. Instead, he asserts that the investigation must have been defective because Navy Federal denied his claim "just *one day* after [he] submitted his fraud claim." Compl. ¶¶ 17, 19. Plaintiff does not dispute that Navy Federal investigated his claim, or that it reviewed his account activity, transaction details, account history, and discrepancies between his claims and account records. Compl., Ex. A. That he disagrees with the investigation result does not mean that it did not occur.

**Reimbursement Claim.** Plaintiff appears to believe the Agreement insulates him from any potential liability for unauthorized debit-card transactions, so long as he makes a claim to Navy Federal. He alleges Navy Federal was obligated to provide "Zero Liability" just because he "notified [Navy Federal] that he had suspected fraud and reported the debit card as stolen." Compl. ¶ 30. If this were the requirement, it would obviate any need for investigation—which Plaintiff contends is required—and would read critical language out of the Agreement.

The Agreement requires Navy Federal to reimburse unauthorized transactions only where two conditions have been met: (1) an accountholder must give Navy Federal timely notice of the disputed transactions, and (2) the transactions must "*have been confirmed by Navy Federal as fraudulent*." Compl., Ex. 1 §§ 14-15 (emphasis added). It follows that where, as here, Navy Federal does not confirm a transaction is fraudulent, the accountholder remains liable for that transaction. And because Navy Federal never confirmed Plaintiff's transactions were fraudulent, it had no obligation to reimburse him.

Courts dismiss contract claims based on similar "zero liability"-type provisions. In *Sanchez*, a case interpreting Navy Federal's Agreement, the court reasoned that "[w]hether read together or in isolation [the Agreement's] provisions unambiguously provide that Navy Federal is not liable for 'authorized transactions.'" 2023 WL 6370235, at *15. The court dismissed a contract claim

MEM. P&A ISO MOT. TO DIS.
4884-5956-9810v.9 0082300-000088

17

**3:23-CV-01851-WQH-KSC**
**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1    based on a failure to reimburse a purportedly unauthorized transaction. *Id.* at *11,

2    *18. Another court reached a similar result, finding a "Zero Liability" policy for

3    "unauthorized" transactions did not require automatic reimbursement. *In re Bank of*

4    *Am. Cal. Unemployment Benefits Litig.*, 2023 WL 3668535, *27 (S.D. Cal. 2023).

5    The court held the bank had "great flexibility in investigating allegations of error"

6    and may make its own determination whether a transaction is unauthorized. *Id.*

7    The plaintiff could not "allege [the bank] breached its obligations under the

8    Account Agreement simply by disagreeing with the outcome." *Id.*

9        Just so here. The Agreement gives Navy Federal flexibility to conduct its

10   investigation—and reach its conclusion—as to accountholder unauthorized-

11   transaction claims. Compl., Ex. 1 §§ 14-16. The Agreement states that

12   unauthorized-transaction claims—like those here—are subject to the "Billing Error

13   Resolution process", under which Navy Federal is free to conclude a transaction

14   was not unauthorized. *Id.* § 16 ("If we determine there was an error, we will

15   promptly correct it. If we determine there was no error, we will send you a written

16   explanation of our findings."); *Id*. (we will "determine whether an error occurred

17   …."). Accountholders remain liable unless a transaction "ha[s] been confirmed by

18   Navy Federal as fraudulent." Compl., Ex. 1 § 15.

19       The mere reporting of a debit card as "stolen" does not automatically entitle

20   an accountholder to reimbursement. Such an outcome would improperly read

21   Sections 15 and 16 out of the Agreement, because there would be no ability for

22   Navy Federal to investigate an accountholder's claims or reach its own

23   determination. *Erie Ins. Exch. V. EPC MD 15*, 822 S.E.2d 351, 356 (Va. 2019)

24   (must read contract as a whole); *see also* Cal. Civ. Code § 1641 ("The whole of a

25   contract is to be taken together, so as to give effect to every part, if reasonably

26   practicable, each clause helping to interpret the other."); *Appalachian Ins. Co. v.*

27   *McDonnell Douglas Corp.*, 214 Cal. App. 3d 1, 12 (1989) ("If possible, the court

28   should give effect to every provision. An interpretation which renders part of the

3:23-CV-01851-WQH-KSC
DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

instrument to be surplusage should be avoided."). Requiring automatic reimbursement would also place Navy Federal at the mercy of unscrupulous accountholders, incentivizing false claims of debit-card theft. The Agreement requires Navy Federal to investigate *all* claims of unauthorized activity, whether resulting from a "stolen" debit card or otherwise, and allows Navy Federal to evaluate whether to provide reimbursement based on the unique facts of a given claim. Plaintiff's allegations confirm that Navy Federal did exactly that with respect to Plaintiff's submission. The Agreement does not require anything further.

### 2. Plaintiff Fails to State a Claim for Breach of Implied Covenant.

Plaintiff's implied covenant claim is identical to his express contract claim. He alleges Navy Federal violated *both* express *and* implied covenants by "fail[ing] to fairly investigate reported erroneous and fraudulent transactions and fail[ing] to reimburse accountholders for fraudulent losses incurred on debit card transactions." Compl. ¶¶ 68, 73. But courts routinely reject implied covenant claims that simply repeat express breach of contract claims. This is because "no implied duty arises with respect to activity governed by express contractual terms." *Docena v. Navy Federal Credit Union*, 2016 WL 53826, *3 (D. Nev. 2016) (interpreting Virginia law); *see also Avidity Partners, LLC v. State of Cal.*, 221 Cal. App. 4th 1180, 1203 (2013) ("[W]e may disregard the [implied covenant] claim as superfluous since it relies on the same alleged acts and seeks the same relief claimed in [the] breach of contract cause of action."). Because Navy Federal's conduct complied with the Agreement there is no implied covenant claim based on that conduct. *See Sanchez*, 2023 WL 6370235, at *18 ("Since [Navy Federal] 'followed the express and unambiguous terms' of the parties' agreement, the implied covenant of good faith and fair dealing provides Plaintiff with no recourse.") (dismissing EFTA-based implied covenant claim); *Docena*, 2016 WL 53926, at *3.

3:23-CV-01851-WQH-KSC
DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## IV.    CONCLUSION

Navy Federal respectfully asks the Court to dismiss the Complaint with prejudice.

DATED: December 18, 2023

DAVIS WRIGHT TREMAINE LLP

By: *s/ Fred B. Burnside*

Fred B. Burnside
John Freed
505 Montgomery Street, Suite 800
San Francisco, CA 94111-6533

Nancy Thomas
865 South Figueroa Street, 24th Floor
Los Angeles, California  90017-2566

Attorneys for Defendant
Navy Federal Credit Union

20

MEM. P&A ISO MOT. TO DIS.
4884-5956-9810v.9 0082300-000088

3:23-CV-01851-WQH-KSC
DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899