**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (CA Bar No. 330990)
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: 305-975-3320
scott@edelsberglaw.com

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY STEPHENSON, individually, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> NAVY FEDERAL CREDIT UNION, <br><br> Defendant. | Case No: 3:23-cv-01851-WQH-KSC <br><br> **AMENDED CLASS ACTION COMPLAINT** <br><br> [DEMAND FOR JURY TRIAL] |

Plaintiff Jeffrey Stephenson ("Plaintiff") brings this action on behalf of himself and all others similarly situated against Defendant Navy Federal Credit Union ("NFCU" or "Defendant"), and states:

I.    **NATURE OF THE ACTION**

1.    Every year, more than 2 million consumers fall victim to financial fraud.[1]

2.    Plaintiff Stephenson is one such victim. Immediately after Plaintiff learned that his son's debit card was stolen out of his school backpack, he alerted NFCU to the loss and submitted a fraud claim with substantial factual proof identifying nearly $1,000 in unauthorized charges.

3.    One day later, NFCU summarily denied Plaintiff's claim on the grounds that it "found the claim to be unsupported."

4.    Upset, Plaintiff pleaded with the bank three more times to either explain it's reasoning for denying the fraud claim or re-review his submitted evidence — after all, how could NFCU determine that Plaintiff's fraud claim was "unsupported" when he submitted supporting evidence?  And how could Plaintiff convince NFCU to change its mind if he had no understanding as to why NFCU denied the claim in the first instance?

---

[1] Federal Trade Commission, "New FTC Data Show Consumers Reported Losing Nearly $8.8 Billion to Scams in 2022." (February 2023).

AMENDED CLASS ACTION COMPLAINT

5.      Despite Plaintiff's repeated requests for an explanation, NFCU mechanically rejected each of Plaintiff's claims with form denial letters devoid of any factual findings or documentation from its alleged investigation.

6.      NFCU's superficial rejection of Plaintiff's bona fide fraud claim and the use of form denial letters without any written explanation or supporting documentation violates federal law.

7.      Long ago, Congress decided financial institutions—and not consumers—must bear the risk of loss in cases of financial fraud. Financial institutions like NFCU are therefore required to refund all timely reported fraud losses to consumers unless the financial institution can affirmatively demonstrate that the disputed transactions were in fact authorized.

8.      If a financial institution like NFCU denies a fraud claim, it must provide a substantive written explanation of its findings and must make the supporting documentation available to any consumer who requests it. Thus, by statute, once fraud is reported, NFCU—not consumers—bears the burden of proving fraud did not occur. NFCU must meet this burden with evidence and must explain its factual findings in writing.

9.      This requirement is more than a formality:  financial institutions must explain their findings and provide the requested documentation so that consumers like Plaintiff can refute the financial institution's conclusions. Without such information, consumers like Plaintiff are hamstrung by NFCU's black-box decision-making.

10.    In sum, NFCU has adopted a fraud investigation process that systematically flips the statutory burden on its head. NFCU denies fraud claims it unilaterally deems to be "unsupported" without providing any substantive explanation as to how or why it has satisfied its burden of demonstrating that the disputed charges were authorized.

11.    Moreover, NFCU's conduct also constitutes an express breach of its contract with accountholders. NFCU promises that consumers will only be liable for $50 if their card is lost or stolen if the consumer timely reports the lost or stolen card. But NFCU routinely fails to honor its promise.

12.    NFCU's disregard of its statutory and contractual obligations subjects its accountholders like Plaintiff who similarly fell victim to debit card theft to shoulder hundreds of dollars in fraudulent purchases that they did not authorize.

13.    Plaintiff brings this action on behalf of himself and a proposed class of all other similarly situated NFCU accountholders who notified Defendant that one or more charges on their account were unauthorized and were summarily denied reimbursement without explanation because NFCU found the claim to be "unsupported"—a standard which unlawfully reverses the evidentiary burden and results in the denial of reimbursement for fraud losses which, by statute, should have been covered by NFCU.

**II.    PARTIES**

14.    Plaintiff Jeffrey Stephenson is a citizen and resident of Bonita, California and is a joint owner of a NFCU checking account with his 17-year-old son.

15.     Defendant Navy Federal Credit Union is a national credit union with its headquarters and principal place of business located in Vienna, Virginia. Among other things, NFCU is engaged in the business of providing retail banking services to consumers, including Plaintiff and the members of the putative class, which includes the issuance of debit cards for use by its customers in conjunction with their checking accounts. NFCU operates banking centers and thus, conducts business throughout the United States, including within this district.

## III.   JURISDICTION AND VENUE

16.     This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1693m(g) because Plaintiff's EFTA claim arises under federal law.

17.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 to resolve Plaintiff's statutory claim arising under California law.

18.     This Court also has original jurisdiction over the action under the Class Action Fairness Act ("CAFA") of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interests and costs, and at least one member of the proposed class is a citizen of a different state than NFCU.

19.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because NFCU is subject to personal jurisdiction here and regularly conducts business in this district, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

AMENDED CLASS ACTION COMPLAINT

## IV.   FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### A. Plaintiff Stephenson Was The Victim of Debit Card Fraud

20.   More than 2 million consumers are the victims of financial fraud every year.[2]

21.   Consumers' fraud losses are expected to reach $165 billion in the next decade as scammers deploy more sophisticated tools and techniques.[3]

22.   Plaintiff Jeffrey Stephenson and his 17-year-old son are joint owners of an NFCU checking account since approximately April 2020. They are also victims of debit card fraud.

23.   On or around February 22, 2023, Plaintiff and his son discovered that their NFCU debit card was missing after noticing several unauthorized transactions had occurred on their account.

24.   On February 23, 2023, the card was promptly reported as stolen to NFCU and Plaintiff submitted a claim of unauthorized debit card activity for a total of $991.98 in fraudulent purchases.

25.   Plaintiff submitted to NFCU a detailed account as to why these unauthorized transactions were fraudulent purchases. For example, Plaintiff disclosed that the purchase history since the debit card was acquired over 400+ purchases ago demonstrates that there

---

[2] Federal Trade Commission, "New FTC Data Show Consumers Reported Losing Nearly $8.8 Billion to Scams in 2022." (February 2023).

[3] The Nilson Report, "Payment Card Fraud Losses Reach $32.34 Billion." (December 2022).

were *no* purchases made at Walmart, yet 11 of the unauthorized transactions occurred at Walmart all within the short period of 14 days.

26.     On February 24, 2023—just one day after Plaintiff submitted his fraud claim—NFCU sent a letter informing Plaintiff of its "final determination" of the fraud claim in which it concluded that "no error has occurred." *See* Ex. A, February 24, 2023 Letter (the "First Letter"). The First Letter included no additional detail as to the reason the claim was denied, stating only:

> Our investigation was based on a review of your account activity, including, but not limited to: transaction details, account history, and/or discrepancies between the fraud claim and your account.

*Id.*

27.     Having received no meaningful explanation why his fraud claim was denied, Plaintiff submitted additional information via NFCU's website, including detailed written responses to seven questions posed by NFCU. Plaintiff appealed Defendant's decision made in the First Letter.

28.     Plaintiff urged NFCU to review Plaintiff's prior transaction history compared to the fraudulent charges. Plaintiff's appeal identified specific charges at multiple merchants that Plaintiff had never purchased from before. Plaintiff also pointed out that the account history demonstrates Plaintiff had only previously made low-dollar purchases with his debit card, unlike many of the fraudulent charges that were over a $100.

29.     Plaintiff additionally filed a police report reporting the stolen card and fraudulent charges and provided NFCU with the report number in his appeal.

AMENDED CLASS ACTION COMPLAINT

30.     On March 10, 2023, NFCU sent Plaintiff another letter reporting the findings of its second review of his fraud claim. Defendant again denied Plaintiff's claim without any explanation as to why:

> After carefully reviewing the information you provided, we have concluded that no error occurred. Therefore, the original decision to deny the claim stands. You are responsible for the full amount of the claim, $991.98.

*See* Ex. B, March 10, 2023 Letter (the "Second Letter").

31.     On March 26, 2023, Plaintiff requested more information regarding the denial via NFCU's website and noted that he has received no explanation despite the second review and several calls to NFCU's fraud prevention team.

32.     In response, on March 30, 2023, NFCU told Plaintiff that, "In order to receive the documents requested, you will need to file a report with your local police department. Your local police can then subpoena our records." *See* Ex. C, March 30, 2023 Online Response.

33.     On or around March 31, 2023, Plaintiff met with a branch manager at NFCU to gather more information about NFCU's denials, but no one could offer him any further information about why his fraud claim was denied.

34.     On April 3, 2023, Plaintiff was forced to submit a claim to the Consumer Financial Protection Bureau (the "CFPB") as an additional avenue of relief to uncover how NFCU reached its conclusion that no fraud occurred. NFCU responded to the CFPB on June 2, 2023, affirming its conclusion that Plaintiff's fraud claim was denied and again

failing to offer any justification in support of its determination. Instead, NFCU reiterated that it "found the claim to be unsupported." NFCU further stated:

> Based on the facts of our investigation, we determined that the claim remains denied. All account owners remain responsible for the activity that was conducted on the account.

*See* Ex. D, CFPB Complaint Status Report.

35. Based on NFCU's response, CFPB then closed Plaintiff's complaint.

36. Plaintiff similarly submitted a complaint to the Better Business Bureau (the "BBB") and NFCU responded directly to Plaintiff on June 2, 2023, again standing behind the decisions reached on its first and second reviews and regurgitating the same response devoid of any rationale or factual support. NFCU reiterated that it "found the claim to be unsupported." NFCU further stated:

> Based on the facts of our investigation, we determined that the claim remains denied. All account owners remain responsible for the activity that was conducted on the account.

*See* Ex. E, June 2, 2023 Letter (the "Third Letter").

37. To date, Plaintiff has not been refunded any of the $991.98 in fraudulent purchases.

38. Indeed, despite Plaintiff submitting detailed information to prove he incurred unauthorized transactions, NFCU flatly refused to find any "error" occurred and did so without providing any substantive explanation or justification. It was NFCU's burden to prove that these disputed transactions were authorized—not Plaintiff's—and its failure to

do so is unlawful and unfair to Plaintiff and thousands of other consumers who have to bear the consequences of stolen funds in unlimited sums.

**B. NFCU Flouts the Requirements of the Electronic Funds Transfer Act Regarding Its Investigation of Fraudulent and Unauthorized Debit Card Transactions**

39.     Congress established the Electronic Funds Transfer Act (the "EFTA"), 15 U.S.C. §§ 1693, *et seq.* to guarantee strong protections for consumers who engage in electronic fund transfers with debit cards. Among the widespread protections afforded under these statutes, financial institutions like NFCU are required to maintain thorough practices for error resolution, including to promptly investigate fraud claims, to provide consumers with substantive written explanations of its investigations and conclusions, to limit consumer liability for unauthorized transactions, and, if ultimately denying those fraud claims, to bear the burden of proving that a consumers' disputed transactions were in fact authorized.

40.     The EFTA requires that financial institutions limit consumer liability for unauthorized electronic funds transfers to $50 if the consumer notifies the bank within two business days after learning of the loss or theft of an access device such as a debit card. 12 C.F.R. § 205.6(b)(1).

41.     The EFTA places the burden of proof on the financial institution to demonstrate that challenged transfers were authorized or, if they were unauthorized, that the consumer can be held liable for them. 15 U.S.C. § 1693g(b).

42.     Specifically, under Section 1693g(b), the financial institution must show that the disputed transfer was authorized:

> BURDEN OF PROOF.--In any action which involves a consumer's liability for an unauthorized electronic fund transfer, the burden of proof is upon the financial institution to show that the electronic fund transfer was authorized or, if the electronic fund transfer was unauthorized, then the burden of proof is upon the financial institution to establish that the conditions of liability set forth in subsection (a) have been met, and, if the transfer was initiated after the effective date of section 905, that the disclosures required to be made to the consumer under section 905(a)(1) and (2) were in fact made in accordance with such section.

43.     As a Federal Reserve Board Examiner has explained, "if the institution cannot establish the disputed EFT transaction was authorized, the institution must credit the consumer's account."[4]

44.     NFCU explicitly reverses that burden, regularly denying claims on grounds that they "found the claim to be unsupported" or found "no error" based on "discrepancies between the fraud claim and your account."

45.     Further, by statute, NFCU is required to support any denial with a written explanation of its findings and is required to provide copies of the documents it relied upon in concluding that the disputed transaction was authorized. Specifically, pursuant to 15 U.S.C. § 1693f(d) and 12 C.F.R. § 1005.11(d), NFCU must provide a written explanation detailing the results of its investigation:

---

[4] Scott Sonbuchner, *Error Resolution and Liability Limitations Under Regulations E and Z: Regulatory Requirements, Common Violations, and Sound Practices*, Consumer Compliance Outlook (2021), available at https://www.consumercomplianceoutlook.org/2021/secondissue/error-resolution-and-liability-limitations-under-regulations-e-and-z/.

AMENDED CLASS ACTION COMPLAINT

**Written explanation.** The institution's report of the results of its investigation shall include a written explanation of the institution's findings and shall note the consumer's right to request the documents that the institution relied on in making its determination. Upon request, the institution shall promptly provide copies of the documents.

46.   NFCU fails to comply with its statutory obligations by failing to provide written explanations of its denials. Instead, NFCU routinely denies claims without any explanation whatsoever, stating only its conclusion in a form letter that "no error occurred."

47.   Moreover, NFCU violates the EFTA by requiring consumers to file police reports to receive copies of the documents underlying its investigation, which again, violates the statute.

48.   NFCU's boilerplate denial letters flip the burden of proof onto consumers to *disprove* the supposed reasonableness of the Bank's investigation. But EFTA puts the burden of proof on financial institutions to show that disputed charges were authorized. 15 U.S.C. § 1693g(b).

49.   Further, the EFTA prohibits financial institutions from using accountholder agreements that waive any rights conferred by the statute. 15 U.S.C. § 1693*l*.

50.   NFCU's Debit Card Agreement purports to allow NFCU to deny claims for unauthorized transactions when NFCU does not "confirm" those transactions to be fraudulent. *See* Ex. F, Debit Card Agreement ¶ 15. NFCU asserts that the Agreement provides it with "flexibility" to unilaterally "conclude a transaction was not unauthorized" (Dkt. No. 11-1 at 18) without any substantive explanation of its findings. *See id.*

AMENDED CLASS ACTION COMPLAINT

51.     In these ways, NFCU attempts to use its Debit Card Agreement to waive the requirements of the EFTA, in further violation of the statute.

52.     In sum, by denying Plaintiff's claim because it "found the claim to be unsupported" and by failing to provide a written explanation of its findings to support its denial, NFCU flouts the EFTA's investigation and error resolution requirements and ultimately fails to satisfy its burden of demonstrating that the unauthorized transactions as reported by Plaintiff were in fact authorized. Further, by doing the foregoing in reliance on its Debit Card Agreement, NFCU violates 15 U.S.C. § 1693*l*.

**C.**     **NFCU Breaches Contract Promises that Fraudulent and Unauthorized Debit Card Transactions Come with Zero Fraud Liability, or at a Minimum, Limit Liability**

53.     NFCU's Debit Card Agreement makes a simple, straightforward promise for debit card transactions:

> **Cardholder Liability for Unauthorized Transactions:** ***NOTIFY US AT ONCE if you believe that your DC or personal identification number (PIN) has been lost, stolen, or used (or may be used) without your authority.*** The best way to minimize your possible losses is to contact us as soon as possible by calling us at the number above or, if you have Navy Federal Online Banking, by using the Report Fraud feature. You may also notify us in person at any branch or in writing using the address above.

> **Timely Notice of Missing DC:** If you notify us within 2 business days after you learn of the loss or theft of your DC or PIN, your losses will be no more than $50 if someone used your DC or PIN without your permission.

Debit Card Agreement ¶ 14.

54.     Plaintiff Stephenson "believe[d] that [his] [debit card] ha[d] been lost" and duly notified NFCU of the loss of his debit card within 2 business days of learning of the loss.

55.     Despite this notification, Plaintiff Stephenson's losses total close to $1,000.

56.     By failing to limit Plaintiff's liability to $50, NFCU breached its contract.

### D. NFCU Breaches the Covenant of Good Faith and Fair Dealing

57.     In addition to the foregoing, NFCU also promises that NFCU will investigate "unauthorized transactions" in accordance with its "Billing Error Resolution" process. Debit Card Agreement at ¶ 16.

58.     For transactions that NFCU "confirms" are fraudulent, NFCU promises "zero liability:"

> **Navy Federal's Zero Liability Policy for Fraud:** In addition to the liability limits above, if you notify us of suspected fraud within 60 days of the statement date on which the fraudulent transactions first appear, we will not hold you responsible for confirmed fraudulent transactions. This Zero Liability policy only covers transactions that have been confirmed by Navy Federal as fraudulent.

*Id.* at ¶ 15.

59.     NFCU thus vests itself with unilateral discretion to "confirm" or deny whether a fraudulent transaction occurred.

60.     NFCU has significant discretion in conducting these investigations and has an obligation to conduct these investigations in good faith.

61.     NFCU fails to conduct these investigations in good faith, and instead summarily denies bona fide fraud claims based on shoddy investigations, completed behind closed doors and without any explanation.

62.     NFCU's conduct breaches the covenant of good faith and fair dealing.

## V.    **CLASS ACTION ALLEGATIONS**

63.     Plaintiff brings this action on his own behalf and on behalf of all others similarly situated. The proposed Class includes:

> All holders of a Navy Federal checking account who, within the applicable statute of limitations preceding the filing of this lawsuit up until the date of class certification, notified Navy Federal that one or more charges on their account totaling more than $50 were unauthorized and were denied reimbursement with a form letter and without a written explanation of Navy Federal's findings demonstrating that the disputed charge(s) were authorized ("Reg E Class").

> All holders of a Navy Federal checking account who, within the applicable statute of limitations preceding the filing of this lawsuit up until the date of class certification, timely notified Navy Federal that one or more charges on their account were unauthorized and were denied reimbursement by Navy Federal ("Breach of Contract Class").

64.     Additionally, Plaintiff proposes California subclasses for each of the foregoing classes ("California Subclasses").

65.     Excluded from the Class is Defendant, its subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

AMENDED CLASS ACTION COMPLAINT

66.     Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

67.     The proposed Class is numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to NFCU's records. The proposed Class is also sufficiently ascertainable because NFCU has the administrative capability through its computer systems and other business records to identify all members of the proposed Class, and such specific information is not otherwise available to Plaintiff.

68.     The questions here are ones of common or general interests such that there is a well-defined community of interest among the proposed Class members. These questions predominate over questions that may affect only individual Class members because NFCU has acted on grounds generally applicable to the proposed Class. Such common legal or factual questions include, but are not limited to:

> a.  Whether NFCU failed to comply with the EFTA's and Regulation E's unauthorized electronic fund transfers limitations on consumer liability under 15 U.S.C. § 1693g(a) and 12 C.F.R. § 205.6(b)(1);
>
> b.  Whether NFCU failed to satisfy the EFTA's assigned burden upon financial institutions to prove that the disputed electronic transactions were in fact authorized under 15 U.S.C. § 1693g(b);
>
> c.  Whether NFCU's Debit Card Agreement violates 15 U.S.C. § 1693*l*;

AMENDED CLASS ACTION COMPLAINT

      d.   Whether NFCU failed to comply with the EFTA's and Regulation E's written explanation requirements under 15 U.S.C. § 1693f(d) and 12 C.F.R. § 1005.11(d)(4)(ii) upon denying an accountholder's fraud claim;

      e.   Whether NFCU's denial of fraud claims on the grounds that it determined no error occurred without any further written explanation is unlawful under the EFTA;

      f.   Whether NFCU's investigations of fraud claims are inadequate, unreasonable, or unfair;

      g.   Whether NFCU's practice of denying fraud claims constitutes an unfair, misleading, or unlawful business practice under California's Unfair Competition Law (the "UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*;

      h.   Whether NFCU breached its contract with accountholders or breached the covenant of good faith and fair dealing;

      i.   Whether Plaintiff and other members of the proposed Class are entitled to injunctive relief to enjoin NFCU's from its unlawful business practices described herein; and

      j.   Whether Plaintiff and other members of the proposed Class have sustained damages as a result of NFCU's wrongful business practices described herein and the measure of damages.

69.    Plaintiff's claims are typical of the claims of the other proposed Class members in that they arise out of the same wrongful business practice by NFCU, as described herein.

70.    Plaintiff is more than an adequate representative of the proposed Class in that he has suffered damages as a result of NFCU's improper business practices. Additionally:

      k.   Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

AMENDED CLASS ACTION COMPLAINT

l.   There is no conflict of interest between Plaintiff and the unnamed Class members;

m.  Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

n.   Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

71.   Plaintiff's proposed class action is the superior method for resolving this dispute because it is impracticable to bring proposed Class members' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class action mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

**FIRST CAUSE OF ACTION**
**Violation of the Electronic Funds Transfers Act ("EFTA")**
**15 U.S.C. §§ 1693, *et seq.*; 12 C.F.R. §§ 1005.1, *et seq.* ("Regulation E" of the EFTA)**
**(On Behalf of Plaintiff and the Reg. E Class)**

72.   Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

73.     Plaintiff brings this cause of action pursuant to the Electronic Fund Transfers Act ("EFTA"), 15 U.S.C. §§ 1693, *et seq.,* and Regulation E of the EFTA, 12 C.F.R. §§ 1005.1, *et seq.*

74.     The EFTA provides strong protection for consumers arising from unauthorized transactions, including by requiring that financial institutions limit consumer liability for unauthorized funds transfers to $50 if the consumer notifies the financial institution within two business days after learning of the loss or theft of a debit card, or within sixty days of transmittal of the account statement reflecting the unauthorized transactions. *See* 15 U.S.C. § 1693g(a).

75.     Regulation E similarly provides that "[a] consumer's liability for an unauthorized electronic transfer or a series of related unauthorized transfers shall be determined as follows: . . . If the consumer notifies the financial institution within two business days after learning of the loss or theft of the access device, the consumer's liability shall not exceed the lesser of $50 or the amount of unauthorized transfers that occur before notice to the financial institution." 12 C.F.R. § 205.6(b)(1).

76.     The EFTA further places the burden on the financial institution to demonstrate that challenged transfers were in fact authorized. *See* 15 U.S.C. § 1693g(b) ("In any action which involves a consumer's liability for an unauthorized electronic fund transfer, the burden of proof is upon the financial institution to show that the electronic fund transfer was authorized . . .").

77.     NFCU explicitly reverses that burden, regularly denying claims on grounds that they "found the claim to be unsupported."

78.     Additionally, the EFTA requires that in the event the financial institution determines that an error did *not* occur, it is required to provide the consumer with "an explanation of its findings" and "upon the request of the consumer promptly deliver or mail to the consumer reproductions of all documents which the financial institution relief on to conclude such error did not occur." 15 U.S.C. § 1693f(d).

79.     Similarly, Regulation E provides that if the financial institution determines "no error" occurred, then it is required to provide a written explanation to justify its denial:

> **Written explanation.** The institution's report of the results of its investigation shall include a written explanation of the institution's findings and shall note the consumer's right to request the documents that the institution relied on in making its determination. Upon request, the institution shall promptly provide copies of the documents.

80.     NFCU fails to provide a written explanation of the results of its investigation and instead relies on form letters which state in conclusory fashion, "no error occurred." Such letters do not comply with the EFTA's requirements because they fail to explain to consumers why their claim was denied, thus making it impossible to challenge the financial institution's findings.

81.     NFCU also violates the EFTA by requiring consumers to file police reports to receive copies of the documents it relied upon in concluding that the disputed transaction was authorized.

82.     Further, the EFTA prohibits financial institutions from using accountholder agreements that waive any rights conferred by the statute. 15 U.S.C. § 1693*l*.

83.     NFCU's Debit Card Agreement purports to allow NFCU to deny claims for unauthorized transactions when NFCU does not "confirm" those transactions to be fraudulent. Debit Card Agreement ¶ 15. NFCU asserts that the Agreement provides it with "flexibility" to unilaterally "conclude a transaction was not unauthorized" (Dkt. No. 11-1 at 18) without any substantive explanation of its findings.

84.     NFCU's Debit Card Agreement, as interpreted by NFCU, requires consumers to waive these rights conferred by the EFTA and therefore violates the EFTA.

85.     A financial institution will be held liable to the consumer for treble damages where "the financial institution knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation." 15 U.S.C. § 1693f(e)(2).

86.     Plaintiff provided notice to NFCU within two business days of discovering that his debit card had been stolen and that there were unauthorized charges.

87.     By denying Plaintiff's claim because it "found the claim to be unsupported" and by failing to provide a written explanation detailing its investigation and findings, NFCU flouts the EFTA and Regulation E's investigation and error resolution requirements and ultimately fails to satisfy its burden of proving that the unauthorized transactions as reported by Plaintiff were in fact authorized.

88.     NFCU's affirmative actions and omissions violate the EFTA and Regulation E whose "primary objective[s]" are "the protection of consumers" and "the protection of individual consumer rights." *See* 12 C.F.R. § 1005.1(b); 15 U.S.C. § 1693(b).

89.     As a direct and proximate result of Defendant's improper conduct outlined herein, Plaintiff and members of the putative class have suffered financial harm in the form of being on the hook for hundreds of dollars in fraudulent purchases that they did not authorize.

90.     Accordingly, Plaintiff and members of the putative class are entitled to an award of statutory and actual damages, including attorneys' fees and costs, as set forth under 15 U.S.C. § 1693m(a).

91.     Additionally, Plaintiff and members of the putative class are entitled to treble damages pursuant to 15 U.S.C. § 1693f(e) given NFCU's knowing and willful inadequate investigations of Plaintiff's and absent class members' fraud claims.

**<u>SECOND CAUSE OF ACTION</u>**
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof Code § 17200, *et seq.***
**(On Behalf of Plaintiff and the California Subclasses)**

92.     Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

93.     Plaintiff and members of the putative class have standing to pursue a cause of action against Defendant for unfair, unlawful, and fraudulent business acts or practices

AMENDED CLASS ACTION COMPLAINT

because they have suffered an injury-in-fact and lost money due to Defendant's actions and/or omissions as set forth herein.

94.     Defendant's conduct is unlawful under Bus. & Prof. Code § 17200 *et seq.* because it is in violation of the EFTA and Regulation E, as discussed above.

95.     Defendant's conduct described herein is "unfair" under Bus. & Prof. Code § 17200 because it violates public policy and is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, and any utility of such practices is outweighed by the harm caused to consumers, including to Plaintiff, the Class, and the public. Specifically, NFCU wrongfully denies consumers' fraud claims and disputes regarding unauthorized transactions after failing to properly investigate those claims, failing to provide adequate written explanation for the denial of those claims, and by ultimately failing to satisfy its burden to prove that the disputed transactions were in fact authorized. The financial harm to consumers as a result of NFCU's wrongful business practices is substantial in that consumers are forced to pay hundreds of dollars for unauthorized purchases arising from fraud or theft that was out of their own control.

96.     Defendant's conduct described herein is "fraudulent" under Bus. & Prof. Code § 17200 because NFCU's business practices have misled Plaintiff and the Class and will continue to mislead them in the future.

97.     Plaintiff relied on NFCU's misrepresentations about its fraud policies insofar as Plaintiff believed he would be refunded for unauthorized transactions if his debit card

was lost or stolen. By misrepresenting material facts as to its policies, NFCU deceived Plaintiff and the class into making banking decisions they otherwise would not make.

98.   As a direct and proximate result of NFCU's misconduct, Plaintiff and the Class have suffered and will continue to suffer harm.

99.   Plaintiff and the putative Class are entitled to restitution of all funds wrongfully obtained by NFCU through their unlawful and unfair business practices as described herein.

100.   Defendant's wrongful conduct is ongoing and is part of a pattern or generalized course of conduct repeated on thousands of occasions yearly.

101.   Plaintiff remains an NFCU accountholder and as such may be subject to the same wrongful conduct in the future unless NFCU is enjoined. Pursuant to Bus. & Prof. Code § 17203, Plaintiff seeks an injunction on behalf of the general public enjoining Defendant from continuing to engage in the unfair and unlawful business practices described above, or any other act prohibited by law.

102.   Additionally, Plaintiff and the putative Class members seek an order requiring Defendant to pay attorneys' fees pursuant to Cal. Civ. Code § 1021.5.

### THIRD CAUSE OF ACTION
**Breach of Contract Including Breach of the Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the Breach of Contract Class and California Subclass)**

103.   Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

104.   Plaintiff and members of the Class contracted with NFCU for checking account services, as embodied in the Deposit Agreement & Disclosures, including the Debit Card Disclosure.

105.   NFCU breached the terms of its contract with consumers when, as described herein, NFCU failed to fairly investigate reported erroneous and fraudulent transactions and failed to reimburse accountholders for fraud losses incurred on debit card transactions.

106.   Further, under the law of each of the states where NFCU does business, an implied covenant of good faith and fair dealing governs every contract. The covenant of good faith and fair dealing constrains NFCU's discretion to abuse self-granted contractual powers.

107.   This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

108.   Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

109.   Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes his conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Other examples

of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

110.   NFCU breached the covenant of good faith and fair dealing when it failed to fairly investigate reported erroneous and fraudulent transactions and failed to reimburse accountholders for fraudulent losses incurred on debit card transactions.

111.   Each of NFCU's actions were done in bad faith and were arbitrary and capricious.

112.   Plaintiff and members of the Class have performed all of the obligations imposed on them under the contract.

113.   Plaintiff and members of the Class have sustained monetary damages as a result of NFCU's breaches of the contract and covenant of good faith and fair dealing.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against NFCU for himself and the proposed Class members as follows:

a. Certifying the proposed Class, appointing Plaintiff as representative of the Class, and appointing Plaintiff's counsel as class counsel for the proposed Class;

b. Declaring that NFCU's policies and practices described herein constitute a violation of the EFTA, Regulation E, California's Unfair Competition Law, and breach of contract and breach of the covenant of good faith and fair dealing;

c. Enjoining NFCU from the wrongful conduct as described herein on behalf of the general public;

d.  Awarding actual damages and statutory damages in an amount according to proof;

e.  Awarding treble damages, if permitted by law;

f.  Awarding pre-judgment interest at the maximum rate permitted by applicable law;

g.  Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses, pursuant to applicable law and any other basis; and

h.  Awarding such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demands a jury trial on all issues in this complaint that are so triable as a matter of right.

Dated: January 22, 2024                    Respectfully submitted,

*/s/ Scott Edelsberg*
**EDELSBERG LAW, P.A.**
Scott Edelsberg, Esq. (CA Bar No. 330990)
Christopher C. Gold (admitted *pro hac vice*)
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: 305-975-3320
scott@edelsberglaw.com
chris@edelsberglaw.com

*Counsel  for Plaintiff and the Proposed Class*

AMENDED CLASS ACTION COMPLAINT