UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY STEPHENSON, individually, on behalf of himself and all others similarly situated, | Case No.:  23-cv-1851-WQH-KSC |
| Plaintiff, | **ORDER** |
| v. | |
| NAVY FEDERAL CREDIT UNION, | |
| Defendant. | |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss First Amended Complaint ("Motion to Dismiss") filed by Defendant Navy Federal Credit Union ("Defendant" or "NFCU"). (ECF No. 19.)

## I.     BACKGROUND

On October 10, 2023, Plaintiff Jeffrey Stephenson ("Plaintiff") initiated this action by filing a Class Action Complaint against Defendant, asserting claims on behalf of himself and class members similarly situated relating to unauthorized charges on their accounts and denial of reimbursement. (ECF No. 1.)

On January 22, 2024, Plaintiff filed the First Amended Complaint ("FAC"), the operative pleading, again asserting claims on behalf of himself and class members similarly situated relating to unauthorized charges on their accounts and denial of reimbursement. (ECF No. 17, FAC.)

On February 21, 2024, Defendant filed the Motion to Dismiss First Amended Complaint. (ECF No. 19.) On March 22, 2024, Plaintiff filed a Response in opposition to the Motion to Dismiss First Amended Complaint. (ECF No. 22.) On April 5, 2024, Defendant filed a Reply in support of the Motion to Dismiss First Amended Complaint. (ECF No. 24.)

## II.   ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

Since roughly April 2020, Plaintiff and his seventeen-year-old son have maintained a joint checking account with Defendant, which is "a national credit card union" that is "engaged in the business of providing retail banking services to consumers," including by issuing debit cards "for use by its customers in conjunction with their checking accounts." (FAC ¶ 15.)

On or about February 22, 2023, Plaintiff learned that his NFCU debit card had been stolen out of his son's backpack. Plaintiff and his son discovered the card had gone missing after they "notic[ed] several unauthorized transactions occurred on their account." *Id.* ¶ 23. On February 23, 2023, Plaintiff alerted NFCU that the debit card had been stolen and submitted a fraud claim that included "substantial factual proof identifying" "$991.98 in fraudulent purchases." *Id.* ¶¶ 2, 24. "For example, Plaintiff disclosed that the purchase history since the debit card was acquired over 400+ purchases ago demonstrates that there were no purchases made at Walmart, yet 11 of the unauthorized transactions occurred at Walmart all within the short period of 14 days." *Id.* ¶ 25.

On February 24, 2023, one day after Plaintiff had submitted the fraud claim, "NFCU sent a letter informing Plaintiff of its 'final determination' of the fraud claim in which it concluded that 'no error has occurred'" (the "First Letter"). *Id.* ¶ 26. The First Letter stated that "Our investigation was based on a review of your account activity, including, but not limited to: transaction details, account history, and/or discrepancies between the fraud claim and your account." *Id.* (citing ECF No. 17-1, Exh. A, February 24, 2023, Letter). Plaintiff submitted additional information using NFCU's website and included "written responses to seven questions posed by NFCU." *Id.* ¶ 27. Plaintiff appealed NFCU's

2

1   decision in the First Letter. Plaintiff's appeal identified charges with many merchants that
2   Plaintiff had never purchased from and pointed out Plaintiff's account history to show
3   "Plaintiff had only previously made low-dollar purchases with his debit card, unlike many
4   of the fraudulent charges that were over a $100." *Id.* ¶ 28. In the appeal, Plaintiff also filed
5   a police report, "reporting the stolen card and fraudulent charges," and provided NFCU
6   with the report number. *Id.* ¶ 29.

7        On March 10, 2023, NFCU sent another letter to Plaintiff "reporting the findings of
8   its second review of his fraud claim" (the "Second Letter"). *Id.* ¶ 30. NFCU denied
9   Plaintiff's claim, stating, "After carefully reviewing the information you provided, we have
10  concluded that no error occurred. Therefore, the original decision to deny the claim stands.
11  You are responsible for the full amount of the claim, $991.98." *Id.* (citing ECF No. 17-2,
12  Exh. B, March 10, 2023, Letter).

13       On March 26, 2023, Plaintiff requested more information concerning NFCU's denial
14  using NFCU's website. On March 30, 2023, NFCU responded to Plaintiff and stated that
15  "In order to receive the documents requested, you will need to file a report with your local
16  police department. Your local police can then subpoena our records." *Id.* (citing ECF No.
17  17–3, Exh. C, March 30, 2023, Online Response).

18       On March 31, 2023, Plaintiff met with an NFCU branch manager to acquire more
19  information about the denials, "but no one could offer him any further information about
20  why his fraud claim was denied." *Id.* ¶ 32.

21       On April 3, 2023, Plaintiff submitted a claim to the Consumer Financial Protection
22  Bureau ("CFPB"). On June 2, 2023, NFCU responded to the CFPB claim, "affirming its
23  conclusion that Plaintiff's fraud claim was denied," "again failing to offer any justification
24  in support of its determination," and reiterating that it "found the claim to be unsupported."
25  *Id.* ¶ 34. NFCU stated: "Based on the facts of our investigation, we determined that the
26  claim remains denied. All account owners remain responsible for the activity that was
27  conducted on the account." *Id.* (citing ECF No. 17-4, Exh. D, CFPB Complaint Status
28  Report). CFPB closed Plaintiff's complaint based on NFCU's response.

Plaintiff submitted a complaint to the Better Business Bureau ("BBB"), to which NFCU directly responded by confirming its first and second review decisions and making the same response that it "found the claim to be unsupported" (the "Third Letter"). *Id.* ¶ 36. NFCU stated: "Based on the facts of our investigation, we determined that the claim remains denied. All account owners remain responsible for the activity that was conducted on the account." *Id.* (citing ECF No. 17-5, Exh. E, June 2, 2023, Letter).

"To date, Plaintiff has not been refunded any of the $991.98 in fraudulent purchases." *Id.* ¶ 37.

The Navy Federal Credit Union Debit Card Disclosure (the "Agreement") states:

> **Cardholder Liability for Unauthorized Transactions: NOTIFY US AT ONCE if you believe that your D[ebit] C[ard] or personal identification number (PIN) has been lost, stolen, or used (or may be used) without your authority.** The best way to minimize your possible losses is to contact us as soon as possible by calling us at the number above or, if you have Navy Federal Online Banking, by using the Report Fraud feature. You may also notify us in person at any branch or in writing using the address above.
>
> **Timely Notice of Missing D[ebit] C[ard]:** If you notify us within 2 business days after you learn of the loss or theft of your D[ebit] C[ard] or PIN, your losses will be no more than $50 if someone used your D[ebit] C[ard] or PIN without your permission.

*Id.* ¶ 54 (quoting ECF No. 17–6, Exh. F, Agreement ¶ 14). In the Agreement, "NFCU also promises that NFCU will investigate 'unauthorized transactions' in accordance with its 'Billing Error Resolution' process." *Id.* ¶ 57. NFCU promises "zero liability" for transactions that it "confirms" are fraudulent, stating the following in the Agreement:

> **Navy Federal's Zero Liability Policy for Fraud:** In addition to the liability limits above, if you notify us of suspected fraud within 60 days of the statement date on which the fraudulent transactions first appear, we will not hold you responsible for confirmed fraudulent transactions. This Zero Liability policy only covers transactions that have been confirmed by Navy Federal as fraudulent.

*Id.* ¶ 58 (quoting Agreement ¶ 15).

Plaintiff brings the following individual and class claims against Defendant: (1) violation of the Electronic Funds Transfers Act ("EFTA"), on behalf of Plaintiff and the Regulation E Class; (2) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), on behalf of Plaintiff and the California Subclass; and (3) breach of contract, including breach of covenant of good faith and fair dealing, on behalf of Plaintiff and the Breach of Contract Class and California Subclass.

Plaintiff seeks certification of the proposed Class, declaratory relief, injunctive relief, damages, pre-judgment interest, fees and costs, attorneys' fees, and all other relief as the Court deems just and proper.

## III.   MOTION TO DISMISS

Defendant moves to dismiss the claims against it on the following grounds: Plaintiff's EFTA claim fails because NFCU explained its findings, EFTA does not require NFCU to prove anything in its written explanation, and NFCU's contract does not waive any EFTA rights, and Plaintiff cannot recover damages under the EFTA; Virginia law bars Plaintiff's UCL claim, Plaintiff lacks UCL standing, the UCL claim is meritless based on the EFTA claim, and Plaintiff seeks damages rather than restitution; and Plaintiff's contract claim fails because NFCU did not breach any contract term and complied with all contract terms in good faith.

### A.   Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to state a claim for relief, a pleading "must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* 8(a)(2). Dismissal under Rule 12(b)(6) "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citation omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)). A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citation omitted).

"When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003) (citing Fed. R. Civ. P. 12(b)). However, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* (citing *Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994)).

Where documents are not physically attached to the complaint, they may be considered if the documents' "authenticity ... is not contested" and "the plaintiff's complaint necessarily relies" on them. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998) (quotation omitted); *see also Ritchie*, 342 F.3d at 908 ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the

plaintiff's claim. The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)."); *see also Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint.").

## B.   Discussion

### 1.   EFTA Claim

Defendant moves to dismiss Plaintiff's EFTA claim on the following grounds: Defendant complied with its EFTA obligations, including with its investigation, communications with Plaintiff, investigation methods, and any alleged statutory burden of proof; the Agreement does not waive any EFTA rights; and Plaintiff cannot show EFTA causation for actual damages.

The EFTA is a federal consumer protection law that "provide[s] a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." 15 U.S.C. § 1693(b). "The EFTA authorizes a private right of action against a bank that 'fails to comply' with any provision of the Act, including the provision limiting a consumer's liability for unauthorized transfers." *Widjaja v. JPMorgan Chase Bank, N.A.*, 21 F.4th 579, 584 (9th Cir. 2021). "When … a bank concludes that the EFTA authorizes liability in excess of the default cap, the consumer must allege facts plausibly suggesting that the bank's conclusion is wrong in order to state a claim that the bank has violated § 1693g." *Id.* The EFTA provides:

**(a) Unauthorized electronic fund transfers; limit**

A consumer shall be liable for any unauthorized electronic fund transfer involving the account of such consumer only if the card or other means of access utilized for such transfer was an accepted card or other means of access

7

and if the issuer of such card, code, or other means of access has provided a means whereby the user of such card, code, or other means of access can be identified as the person authorized to use it, such as by signature, photograph, or fingerprint or by electronic or mechanical confirmation. In no event, however, shall a consumer's liability for an unauthorized transfer exceed the lesser of--

(1) $50; or

(2) the amount of money or value of property or services obtained in such unauthorized electronic fund transfer prior to the time the financial institution is notified of, or otherwise becomes aware of, circumstances which lead to the reasonable belief that an unauthorized electronic fund transfer involving the consumer's account has been or may be effected. Notice under this paragraph is sufficient when such steps have been taken as may be reasonably required in the ordinary course of business to provide the financial institution with the pertinent information, whether or not any particular officer, employee, or agent of the financial institution does in fact receive such information.

**(b) Burden of proof**

In any action which involves a consumer's liability for an unauthorized electronic fund transfer, the burden of proof is upon the financial institution to show that the electronic fund transfer was authorized or, if the electronic fund transfer was unauthorized, then the burden of proof is upon the financial institution to establish that the conditions of liability set forth in subsection (a) have been met, and, if the transfer was initiated after the effective date of section 1693c of this title, that the disclosures required to be made to the consumer under section 1693c(a)(1) and (2) of this title were in fact made in accordance with such section.

15 U.S.C. § 1693g(a)–(b).

Section 1693f(d) states

If the financial institution determines after its investigation pursuant to subsection (a) or (c) that an error did not occur, it shall deliver or mail to the consumer an explanation of its findings within 3 business days after the conclusion of its investigation, and upon request of the consumer promptly deliver or mail to the consumer reproductions of all documents which the financial institution relied on to conclude that such error did not occur. The

8

financial institution shall include notice of the right to request reproductions with the explanation of its findings.

*Id.* § 1693f(d). Section 1693(e) authorizes treble damages for certain violations of the EFTA and states:

If in any action under section 1693m of this title, the court finds that—

(1) the financial institution did not provisionally recredit a consumer's account within the ten-day period specified in subsection (c), and the financial institution (A) did not make a good faith investigation of the alleged error, or (B) did not have a reasonable basis for believing that the consumer's account was not in error; or

(2) the financial institution knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation, then the consumer shall be entitled to treble damages determined under section 1693m(a)(1) of this title.

*Id.* § 1693f(e).

Regulation E provides guidance on what constitutes a reasonable investigation of a properly reported error, stating that "a financial institution's review of its own records regarding an alleged error" satisfies § 1693f's investigation requirement if: "(i) The alleged error concerns a transfer to or from a third party; and (ii) There is no agreement between the institution and the third party for the type of electronic fund transfer involved." 12 C.F.R. § 1005.11(c)(4). Regulation E also states as follows:

Procedures if financial institution determines no error or different error occurred. In addition to following the procedures specified in paragraph (c) of this section, the financial institution shall follow the procedures set forth in this paragraph (d) if it determines that no error occurred or that an error occurred in a manner or amount different from that described by the consumer:

(1) Written explanation. The institution's report of the results of its investigation shall include a written explanation of the institution's findings and shall note the consumer's right to request the documents

9

that the institution relied on in making its determination. Upon request, the institution shall promptly provide copies of the documents.

*Id.* § 1005.11(d)(1).

Here, Plaintiff's cause of action for violation of the EFTA alleges many reasons why NFCU violated the EFTA. (*See* FAC ¶¶ 46–50, 77–84.) Plaintiff alleges that Defendant violated the EFTA by "fail[ing] to provide a written explanation of the results of its investigation and instead rel[ying] on form letters which state in conclusory fashion, 'no error occurred.'" *Id.* ¶ 80. Plaintiff alleges that "[s]uch letters do not comply with the EFTA's requirements because they fail to explain to consumers why their claim was denied, thus making it impossible to challenge the financial institution's findings." *Id.* Plaintiff alleges that Defendant violates the EFTA when it "require[es] consumers to file police reports to receive copies of the documents it relied upon in concluding that the disputed transaction was authorized." *Id.* ¶ 81. Plaintiff alleges that Defendant violates the EFTA in the Agreement by "requir[ing] consumers to waive these rights conferred by the EFTA." *Id.* ¶ 84. Plaintiff alleges that "NFCU's boilerplate denial letters flip the burden of proof onto consumers to disprove the supposed reasonableness of the Bank's investigation," and the EFTA puts the burden of proof on financial institutions to show the charges were authorized. *Id.* ¶ 48.

Defendant moves to dismiss the first cause of action for failure to state a claim under the EFTA. (*See* ECF No. 19-1 at 14.) The Court finds that Plaintiff adequately alleges that he "requested more information regarding the denial" and NFCU did not provide him with documents, but instead responded to Plaintiff that "In order to receive the documents requested, you will need to file a report with your local police department. Your local police can then subpoena our records." (FAC ¶¶ 31–32.) The EFTA provides that a financial institution shall "upon request of the consumer promptly deliver or mail to the consumer reproductions of all documents which the financial institution relied on to conclude that such error did not occur." 15 U.S.C. § 1693f(d); *see also* 12 C.F.R. § 1005.11(d)(1) ("The institution's report of the results of its investigation shall include a written explanation of

the institution's findings and shall note the consumer's right to request the documents that the institution relied on in making its determination. Upon request, the institution shall promptly provide copies of the documents."). At this stage in the proceedings, the Court finds that Plaintiff has adequately stated a claim for relief under the EFTA.[1]

Defendant also moves to dismiss Plaintiff's EFTA claim on the grounds that Plaintiff cannot show causation for actual damages because "Plaintiff has not alleged (and cannot allege) that if he had received a more detailed explanation of Navy Federal's denial of his claim, he would have obtained reimbursement of the amount of unauthorized transactions." (ECF No. 19-1 at 18.)

Plaintiff contends that he adequately alleges NFCU caused Plaintiff harm because he alleges that had NFCU "applied the proper burden of proof," "provided a written explanation of its findings from which Plaintiff could dispute those findings in an appeal," and "not attempted to use its contract to flip the burden of proof on its head, Plaintiff would have received reimbursement of his fraudulent transactions." (ECF No. 22 at 19.)

Plaintiff alleges that as a result of NFCU's alleged violation of the EFTA, "Plaintiff and members of the putative class have suffered financial harm in the form of being on the hook for hundreds of dollars in fraudulent purchases that they did not authorize." (FAC ¶ 89.) Based upon the allegations in the FAC, the Court finds that Plaintiff adequately alleges causation at this stage in the proceedings.

NFCU's Motion to Dismiss the EFTA claim is denied.

## 2. UCL Claim

Defendant moves to dismiss Plaintiff's UCL claim on the following grounds: the parties' choice of law provision bars Plaintiff's UCL claim as Virginia law applies; Plaintiff

---

[1] The Court declines to consider the adequacy of Defendant's arguments concerning the other methods of violating the EFTA listed in the FAC given the Court's finding that the claim cannot be dismissed at this time.

lacks standing to bring a UCL claim; and Plaintiff fails to state a UCL claim under the "unlawful," "unfair," or "fraudulent" prongs.

### a.   Choice of Law

The Agreement contains a choice-of-law provision that states as follows: "This Agreement, including any claim or dispute arising under it, shall be governed by federal law and the laws of the Commonwealth of Virginia." (ECF No. 17-6 at 2.) Defendant contends that the choice-of-law provision should be enforced, while Plaintiff contends that the Court should not enforce the Virginia choice-of-law provision as it would be contrary to fundamental policy of California. (ECF No. 19-1 at 20; ECF No. 22 at 27.)

The parties agree that the Court looks to California law to determine enforceability of the choice-of-law provision. (*See, e.g.*, ECF No. 19-1 at 19 ("California law thus governs enforceability of the choice-of-law provision here."); ECF No. 22 at 26–27 ("Federal courts must apply the forum state's choice of law rules to determine the controlling substantive law…. California will enforce a contractual choice of law provision unless…." (quotation and citations omitted)); *see also Paulsen v. CNF Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009) ("In a federal question action that involves supplemental jurisdiction over state law claims, we apply the choice of law rules of the forum state—here, California.").)

Under California law, a court must "evaluate the [choice-of-law] clause's enforceability pursuant to the analytical approach reflected in section 187, subdivision (2) of the Restatement Second of Conflict of Laws." *Wash. Mut. Bank, F.A. v. Superior Court*, 24 Cal.4th 906, 916 (2001). The section "reflects a strong policy favoring enforcement of such provisions." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 464–65 (1992). First, the party seeking application of the choice-of-law provision—here, Defendant—has the burden of establishing either that (1) "the chosen state has a substantial relationship to the parties or their transaction" or (2) "there is any other reasonable basis for the parties' choice of law." *Id.* at 466. If Defendant makes this showing, then the burden shifts to the party opposing enforcement of the choice-of-law provision—here, Plaintiff—to demonstrate that "that the chosen law is contrary to a fundamental policy of California and

that California has a materially greater interest in the determination of the particular issue." *Wash. Mut. Bank*, 24 Cal.4th at 917. "[A] separate conflict of laws inquiry must be made with respect to each issue in the case." *Id.* at 920.

Defendant contends that Virginia has a substantial relationship to the parties' dispute because NFCU's "principal place of business and headquarters [are] in Virginia" and "[u]nder the Agreement, Plaintiff's funds and checking, savings, and all other accounts are located in Virginia." (ECF No. 19-1 at 19 (quotation and citation omitted).) Defendant contends that applying Virginia law does not violate any California public policy where "Plaintiff's UCL claim is entirely based on federal law." *Id.* at 20. Plaintiff contends that the Court should not enforce the Virginia choice-of-law provision as to Plaintiff's UCL claim because "doing so would be contrary to the fundamental policy of California which allows consumers to seek relief from unfair and deceptive business practices by financial institutions on a classwide basis." (ECF No. 22 at 27.) Plaintiff contends that "[w]hile a violation of federal law is the basis for the Plaintiff's allegation that NFCU violated the UCL's 'unlawful' prong, Plaintiff also pleads a violation of the UCL's 'fraudulent' and 'unfair' prongs, which are not tethered to whether NFCU violated federal law." *Id.* at 28. Plaintiff contends that "Plaintiff could plead no similar claim under Virginia law given that Virginia's consumer protection act does not apply to financial institutions." *Id.* (citing Virginia law).

As to the first prong, Defendant is domiciled in Virginia. (FAC ¶ 15.) Accordingly, Virginia "has a substantial relationship to the parties or their transaction," and "there is [a] ... reasonable basis for the parties' choice of law." *Nedlloyd*, 3 Cal.4th at 466; *see id.* at 467 (stating that a "substantial relationship [is] present when one of the parties is domiciled in the chosen state" and "[i]f one of the parties resides in the chosen state, the parties have a reasonable basis for their choice") (quotations omitted). As such, the burden shifts to Plaintiff.

Under California law, a court must apply the parties' chosen law unless "application of the law of the chosen state would be contrary to a fundamental policy of a state which

has a materially greater interest than the chosen state in the determination of the particular issue and which ... would be the state of the applicable law in the absence of an effective choice of law by the parties." *Nedlloyd*, 3 Cal.4th at 466. "[A] statutory comparison of California and Virginia consumer protection laws,… reveals Virginia's law provides significantly less consumer protection to its citizens than California law provides for [its] own." *Am. Online, Inc. v. Superior Court*, 90 Cal. App. 4th 1, 15 (Ct. App. 2001). Importantly, Virginia excludes financial institutions, including "[b]anks, savings institutions, [and] credit unions" from the Virginia Consumer Protection Act. Va. Code Ann. § 59.1-199(4); *see Aral v. Earthlink, Inc.*, 134 Cal. App. 4th 544, 564 (Ct. App. 2005) (comparing Virginia, where "the absence of any provision in the [Virginia consumer law] that allows suits under the act to proceed as class actions," with California, where "class actions are considered an important tool in California"), *abrogated on other grounds by AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011); *Van Slyke v. Cap. One Bank*, 503 F. Supp. 2d 1353, 1361 (N.D. Cal. 2007) ("Virginia consumer protection laws generally do not allow for class actions…. Class-action remedies, however, are readily available under California's unfair competition law. Thus, there is a substantial risk that a California fundamental public policy in favor of class actions would be harmed by applying Virginia law." (citations omitted)). As to Defendant's contention that Plaintiff's UCL claim solely rests on federal law, at this stage in the proceedings, the Court does not find that Plaintiff's UCL claim solely rests on his EFTA claim because Plaintiff also brings his UCL claim under the "fraudulent" and "unfair" prongs. The Court finds that Plaintiff has shown that the UCL reflects fundamental policies of the state of California that aim at protecting California consumers that conflict with Virginia law. *See Lloyd v. Navy Fed. Credit Union*, No. 17-cv-1280-BAS-RBB, 2018 WL 1757609, at *5 (S.D. Cal. Apr. 12, 2018) (holding that the "UCL reflect[s] multiple fundamental policies of the state of California aimed at protecting California consumers with which Virginia law conflicts"); *Vue v. Pentagon Fed. Credit Union*, No. 1:21-cv-01063-JLT-SAB, 2023 WL 6387174, at *4 (E.D. Cal. Sept. 29,

2023) ("Indeed, in *America Online*, the California court found there is a conflict between California consumer protection policies and Virginia law.").

The Court must now consider whether California has a materially greater interest in determination of the issues than Virginia. *Nedloyd*, 3 Cal.4th at 466. Several courts have determined that California has a "stronger interest" in protecting its consumers through its own statutory scheme.[2] *See, e.g.*, *Walter v. Hughes Commc'ns, Inc.*, 682 F. Supp. 1031, 1042 (N.D. Cal. 2010) ("California has a stronger interest in protecting its consumers through its chosen mechanisms—a statutory scheme that permits its injured consumers not only to bring class actions to recover their losses, but also to seek punitive damages and injunctive relief in order to deter and prevent future harm to other consumers located in the state."); *Lloyd*, 2018 WL 1757609, at *6 ("This Court similarly concludes that California has a stronger interest in the adjudication of Plaintiffs' consumer protection claims under … the UCL."); *Vue*, 2023 WL 6387174, at *5 (same). The Court similarly finds here that California has a greater interest in adjudicating Plaintiff's consumer protection claims under the UCL. Accordingly, the Court concludes that the Agreement's choice of Virginia law is unenforceable as to Plaintiff's UCL claim.[3]

/ / /

/ / /

/ / /

---

[2] Defendant contends that the Court should follow the courts in *Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263 (C.D. Cal. 2008), and *Cont'l Airlines, Inc. v. Mundo Travel Corp.*, 412 F. Supp. 2d 1059 (E.D. Cal. 2006). Defendant contends that the courts in those cases enforced a Virginia choice-of-law provision and dismissed UCL claims, and this Court should reach the same conclusion. However, *Guadagno* and *Cont'l Airlines* are dissimilar to the present case. The court in *Guadagno* applied Virginia law in considering an arbitration agreement on the grounds that "Virginia law does not contradict California's public fundamental policy against enforcing unconscionable consumer class action waivers." *Guadagno*, 592 F. Supp. 2d at 1270. The court in *Cont'l Airlines* did not consider whether the Virginia choice-of-law provision conflicted with any fundamental policy of California. *Cont'l Airlines*, 412 F. Supp. 2d at 1070.

[3] The Court makes this choice-of-law determination as to only Plaintiff's individual UCL claim. *See Vue*, 2023 WL 6387174, at *4 ("[B]ecause the Court is obligated to protect the interests of the class, the Court declines now to decide the choice of law related to the prospective class.").

### b.    Standing

Defendant contends that Plaintiff lacks UCL standing because he does not allege any loss of money or property as a result of NFCU's denial letter and cannot obtain restitution or injunctive relief.

California's UCL prohibits "any unlawful, unfair or fraudulent business practice." Cal. Bus. & Prof. Code §§ 17200, 17203. The UCL "borrows violations of other laws and treats them as unlawful practices" that are "independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999). An action under the UCL is equitable in nature; damages cannot be recovered. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1143 (2003). Recovery under the UCL is limited to injunctive relief and restitution. *Id.* Generally, a plaintiff may seek equitable relief for past harm only if he has no adequate remedy at law. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020).

### i.    Injury

Defendant contends that Plaintiff lacks UCL standing because Plaintiff does not allege facts to show any injury that resulted from NFCU's conduct because Plaintiff fails to allege loss of any money or property as a result of NFCU's denial letter. Plaintiff contends that he has standing to bring a UCL claim because the conduct that caused him harm is alleged to be NFCU's failure to comply with statutory requirements and NFCU was obligated to refund Plaintiff.

"California's UCL prohibits unfair competition by means of any unlawful, unfair or fraudulent business practice." *Birdsong v. Apple*, 590 F.3d 955, 960 (9th Cir. 2009) (citing Cal. Bus. & Prof. Code §§ 17200–10). To establish standing to bring a claim under the

UCL, consumers must allege that they "(1) suffered an injury in fact and (2) lost money or property as a result of the unfair competition."[4] *Id.*

Here, Plaintiff alleges that NFCU was required to investigate fraudulent and unauthorized debit card transactions, provide a written explanation pursuant to the EFTA when ultimately denying those fraud claims, and limit consumer liability for unauthorized transfers. (*See* FAC ¶¶ 39–52.) Plaintiff alleges that he timely reported fraudulent transactions, but "[d]espite this notification, Plaintiff Stephenson's losses total close to $1,000" and NFCU did not limit his liability to $50. *Id.* ¶¶ 54–56. At this stage in the proceedings, the Court can plausibly infer based upon the allegations in the FAC that Plaintiff lost money as a result of NFCU's alleged conduct.

Defendant's motion to dismiss the UCL claim for lack of UCL standing on injury grounds is denied.

### ii.  Restitution

Defendant contends that Plaintiff cannot obtain restitution because NFCU did not receive any of the missing funds from Plaintiff's account. Plaintiff contends that he may seek restitution because NFCU retained funds in which Plaintiff had an ownership interest.

In order to recover restitution under the UCL, "[t]he offending party must have obtained something to which it was not entitled *and* the victim must have given up something which he or she was entitled to keep." *Day v. AT & T Corp.*, 63 Cal. App. 4th 325, 340 (1998). Restitution compels a UCL defendant to "return money obtained through an unfair business practice to those persons in interest from whom the property was taken, that is, to persons who had an ownership interest in the property." *Korea Supply*, 29 Cal.4th at 1149 (citation omitted). Restitution is not always limited to returning money or property that was once in the possession of Plaintiff; it may also include awarding money or property

---

[4] Because Defendant only moves to dismiss the UCL claim for failure to allege the second standing requirement, the Court only considers whether Plaintiff adequately alleges "lost money or property as a result of the unfair competition." *Birdsong*, 590 F.3d at 960.

to Plaintiff in which Plaintiff has a vested interest. *Id.* (citation omitted). However, restitution under the UCL does not allow disgorging profits from the defendant. *See In re First Alliance Mortg. Co.*, 471 F.3d 977, 997 (9th Cir. 2006); *see also Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 453 (2005). Plaintiff may not recover for mere expectancy or lost business opportunity. *See United States v. Rodrigues*, 229 F.3d 842 (9th Cir. 2000); *Nat'l Rural Telecomm. Co-op. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1082 (C.D. Cal. 2003).

Here, Plaintiff alleges that his NFCU debit card was stolen, $991.98 of unauthorized transactions were made on Plaintiff's debit card, NFCU denied Plaintiff's fraud claim, and NFCU did not limit Plaintiff's liability on the unauthorized transactions to $50. (FAC ¶¶ 22–24, 27, 34, 36, 56.) Plaintiff alleges that he "has not been refunded any of the $991.98 in fraudulent purchases." *Id.* ¶ 37. Plaintiff alleges that Defendant's wrongful conduct includes violating the EFTA, wrongfully denying fraud claims, failing to properly investigate or provide adequate written explanation for denials, failing to satisfy its burden, and misleading Plaintiff and class members. *See id.* ¶¶ 94–96. Plaintiff alleges "Plaintiff and the putative Class are entitled to restitution of all funds wrongfully obtained by NFCU through their unlawful and unfair business practices as described herein." *Id.* ¶ 99. However, Plaintiff does not adequately allege facts to show that NFCU "obtained [money] to which it was not entitled" and Plaintiff "[gave] up [the money] which he or she was entitled to keep." *Day*, 63 Cal. App. 4th at 340. Plaintiff contends that by failing to reimburse his loss, NFCU has "wrongfully obtained" funds. (*See* FAC ¶ 99.) However, "[Plaintiff] does not offer any authority that Defendant['s] retention of money [it] would have used to cover [Plaintiff's] loss is equivalent to Defendant['s] acquisition of money that belonged to [Plaintiff]." *Sparkman v. Comerica Bank*, No. 23-CV-02028-DMR, 2023 WL 8852487, at *9 (N.D. Cal. Dec. 21, 2023); *see also Kanji v. Bank of America, N.A.*, No. CV 20-3820-RSWL-SK, 2020 WL 8175548, at *7 (C.D. Cal. Aug. 25, 2020) ("Plaintiff fails to allege that Defendant 'acquired' the money that she 'lost.'"); *Lusinyan v. Bank of America, N.A.*, No. CV-14-9586-DMG, 2015 WL 12777225, at *5 (C.D. Cal.

May 26, 2015) ("Based on the facts alleged in the Complaint, Bank of America did not acquire and currently does not possess the money Plaintiffs lost—USMR has the money."). Based upon the facts alleged in the FAC, Plaintiff does not adequately allege that NFCU acquired and currently possesses the money that Plaintiff lost. Accordingly, Plaintiff does not adequately state a UCL claim for restitutionary relief.[5]

### iii.    Injunctive Relief

Defendant contends that Plaintiff cannot obtain injunctive relief because he does not "plead facts plausibly showing any future risk of suffering the same purported injury (an alleged stolen debit card from his son's backpack and denied claims)." (ECF No. 19-1 at 22.) Plaintiff contends that he can seek injunctive relief because NFCU has not changed its policies and "there is every reason to believe that Plaintiff's experience may repeat itself unless NFCU is enjoined." (ECF No. 22 at 30.)

A plaintiff "must demonstrate standing separately for each form of relief sought." *Ctr. for Biological Diversity v. Mattis*, 868 F.3d 803, 815 (9th Cir. 2017) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)). "For injunctive relief, which is a prospective remedy, the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). A plaintiff must demonstrate "real and

---

[5] While the parties do not discuss it in their briefing, the Court notes that Plaintiff also fails to allege that legal remedies are inadequate. *See Sonner*, 971 F.3d at 844 ("Under these principles, *Sonner* must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL."); *Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 875 (N.D. Cal. 2021) ("[M]any other district judges applying *Sonner* have understood it to require that a plaintiff must, at minimum, plead that she lacks adequate remedies at law if she seeks equitable relief."); *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1009 (N.D. Cal. 2020) ("Under *Sonner*, the plaintiffs are required, at minimum, to plead that they lack an adequate remedy at law[.]").

immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (internal quotation marks omitted).

Here, Plaintiff alleges that he "remains an NFCU accountholder and as such may be subject to the same wrongful conduct in the future." (FAC ¶ 101.) Although Plaintiff pleads that he maintains an account with NFCU, he does not plead that he intends to continue use of his account or debit card in the future. Nor has he pled "actual and imminent" threat of repeated injury—that NFCU is likely to investigate any future alleged unauthorized transactions or fail to limit Plaintiff's liability in a similar manner as here. *See Lair v. Bank of Am., N.A.*, No. 5:23-cv-1345-WLH-SHK, 2024 WL 943945, at *7 (C.D. Cal. Jan. 26, 2024) ("Though Lair pleads that he maintains an account with BANA,… and that he and putative class members therefore suffer an 'actual and imminent' threat of future harm,… he does not plead that he intends to receive wire transfers through his BANA account in the future. He therefore has not shown that he is likely to incur another fee for incoming wire transfers such that he has standing to pursue injunctive relief." (citations omitted)); *see also McGill v. Citibank, N.A.*, 2 Cal.5th 945, 955 (2017) ("Relief that has the primary purpose or effect of redressing or preventing injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff—does not constitute public injunctive relief."). Accordingly, Plaintiff does not state a UCL claim for injunctive relief.

Because Plaintiff does not adequately allege a claim for equitable relief under the UCL, Defendant's Motion to Dismiss the UCL claim is granted. *See Duttweiler v. Triumph Motorcycles (Am.) Ltd.*, No. 14-cv-04809-HSG, 2015 WL 4941780, at *9 (N.D. Cal. Aug. 19, 2015) ("Courts routinely dismiss UCL claims at the pleading stage on account of the plaintiff's failure to plead facts demonstrating an entitlement to equitable relief."); *Huu Nguyen v. Nissan N. Am., Inc.*, No. 16-cv-05591-LHK, 2017 WL 1330602, at *5 (N.D. Cal. Apr. 11, 2017) ("In sum, Plaintiff's FAC fails to allege an entitlement to a restitutionary redesign program or injunctive relief. Because the UCL 'provide[s] for only equitable relief' in the form of restitution or an injunction, the Court GRANTS Defendant's motion to dismiss Plaintiff's UCL claim." (citation omitted)).

### 3.    Contract Claim

Defendant moves to dismiss Plaintiff's contract claim on the grounds that Plaintiff fails to state a claim for breach of an express contract or breach of an implied covenant.

As to a theory for breach of express contract, Defendant contends that "Plaintiff's express breach theory fails because the Agreement does not limit liability every time a member reports their debit card stolen." (ECF No. 19-1 at 24.) Defendant contends that NFCU "investigated Plaintiff's claims, determined the transactions were authorized, and provided an explanation of its findings in writing, exactly as the Agreement permits," so Plaintiff does not state a breach of contract claim. *Id.* at 25. Plaintiff contends that he adequately alleged NFCU breached its promise to limit losses to $50 as provided in the Agreement. Plaintiff contends that he "duly notified NFCU of the loss of his debit card and the unauthorized transactions within 2 business days," but "[d]espite this notification, Plaintiff Stephenson's losses of close to $1,000 have not been reimbursed." (ECF No. 22 at 20 (citing FAC ¶¶ 54–55).) Plaintiff contends that his "express allegation in the Complaint … is that the transactions were *unauthorized*," which is sufficient to allege a breach of contract claim. *Id.* Plaintiff contends that "NFCU promises to follow a specified procedure, which mirrors federal law, in investigating fraud claims," including to provide a "written explanation of [its] findings." *Id.* at 21. Plaintiff contends that "NFCU's form denial letter stated only its conclusion that 'we have determined no error has occurred,'" which does not constitute a "written explanation." *Id.* (quoting FAC, Exh. A.)

Under California law,[6] "the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty,*

---

[6] The parties do not engage in any discussion as to whether California or Virginia law applies to Plaintiff's breach of contract claims. Defendant asserts that the outcome would be the same under California and Virginia law, *see* ECF No. 19-1 at 24, and Plaintiff only discusses California law, *see* ECF No. 22 at 20–22. For the purposes of this Order, the Court assumes without deciding that California law applies to the breach of contract claims based on the parties' positions.

23-cv-1851-WQH-KSC

*LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011). The pleading standard applicable to the breach of contract claim is a procedural matter that "is governed by Federal Rules of Civil Procedure, not state pleading requirements." *Miller v. Sawant*, 18 F.4th 328, 337 (9th Cir. 2021). "The interpretation of a contract presents a mixed question of law and fact." *State Farm Mut. Auto. Ins. Co. v. Fernandez*, 767 F.2d 1299, 1300–01 (9th Cir. 1985). "The existence of an ambiguity must be determined as a matter of law," but "[i]f an ambiguity exists, a question of fact is presented." *Id.* (citation omitted). Pursuant to the Federal Rules of Civil Procedure, "only allegations ('averments') of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). "Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Id.*

Here, as alleged in the FAC, the Agreement states that

> **Cardholder Liability for Unauthorized Transactions: *NOTIFY US AT ONCE* if you believe that your D[ebit] C[ard] or personal identification number (PIN) has been lost, stolen, or used (or may be used) without your authority.** The best way to minimize your possible losses is to contact us as soon as possible by calling us at the number above or, if you have Navy Federal Online Banking, by using the Report Fraud feature. You may also notify us in person at any branch or in writing using the address above.

> **Timely Notice of Missing D[ebit] C[ard]**: If you notify us within 2 business days after you learn of the loss or theft of your D[ebit] C[ard] or PIN, your losses will be no more than $50 if someone used your D[ebit] C[ard] or PIN without your permission.

Agreement ¶ 14. The Billing Error Resolution provision states, in part: "If we determine there was no error, we will send you a written explanation of our findings. You may ask for copies of the documents that we used in making our determination." *Id.* ¶ 16.

Plaintiff alleges that he believed his debit card had been stolen resulting in unauthorized transactions, notified NFCU within two business days of learning of the loss, suffered losses of over $900, and was not limited in his liability by NFCU to no more than $50. *Id.* ¶¶ 38, 54–56. Under the applicable pleading standard, Plaintiff has sufficiently

pleaded an express breach of contract claim in the FAC.[7] While Defendant contends that it investigated Plaintiff's claims and determined the transactions were authorized, Plaintiff's allegations are sufficient at this stage in the proceedings to state a claim for express breach of contract.

As to a theory of breach of the implied covenant of good faith and fair dealing, Defendant contends Plaintiff fails to state a claim for breach of the implied covenant because Plaintiff's implied covenant claim repeats his express breach of contract claim and because NFCU complied with the Agreement, "there is no implied covenant claim based on that conduct." (ECF No. 19-1 at 25.) Defendant contends that Plaintiff's allegations of Defendant's bad faith investigation fail to state a claim because "he never identifies any investigation that Navy Federal should have conducted but did not and he concedes he *did* get a written explanation." *Id.* at 26 (emphasis in original). Plaintiff contends that he states an implied covenant claim because "NFCU uses its discretion in bad faith when it defines the term 'unauthorized'" in the Agreement and the meaning of the word "unauthorized" in the Agreement is ambiguous. (ECF No. 22 at 22.) Plaintiff contends that Defendant acted in bad faith by failing to "confirm" whether Plaintiff's transactions were fraudulent "on the basis of not knowing the exact date and time the theft occurred." *Id.* at 24.

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 937 (9th Cir. 1999) (quoting *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal.4th 342, 371 (1992)). That duty is known as the covenant of good faith and fair dealing and requires "that neither party ... do anything which will injure the right of the other to receive the benefits of the agreement." *Andrews v. Mobile Aire Estates*, 125 Cal. App. 4th 578, 589 (Ct. App. 2005) (quotation omitted). "The implied covenant of good faith and fair dealing

---

[7] The Court would reach this same outcome in applying Virginia law. *See Filak v. George*, 267 Va. 612, 619 (2004) ("The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation.").

23-cv-1851-WQH-KSC

is limited to assuring compliance with the express terms of the contract and cannot be extended to create obligations not contemplated by the contract." *Pasadena Live v. City of Pasadena*, 114 Cal. App. 4th 1089, 1094 (Ct. App. 2004) (quotation omitted). Under California law, "[a] cause of action for breach of the implied covenant of good faith and fair dealing is premised on the breach of a specific contractual obligation." *Innovative Bus. P'ships, Inc. v. Inland Cntys. Reg'l Ctr., Inc.*, 194 Cal. App. 4th 623, 631 (Ct. App. 2011).

"The covenant of good faith finds particular application in situations where one party is invested with a discretionary power affecting the rights of another." *3500 Sepulveda, LLC v. Macy's W. Stores, Inc.*, 980 F.3d 1317, 1324 (9th Cir. 2020) (quoting *Carma*, 2 Cal. 4th at 372). "The party with discretionary power must exercise such power in good faith and through 'objectively reasonable conduct.'" *Id.* (quoting *Badie v. Bank of Am.*, 67 Cal. App. 4th 779, 796 (1998)). "The issue of whether the implied covenant of good faith and fair dealing has been breached is ordinarily 'a question of fact unless only one inference [can] be drawn from the evidence.'" *Hicks v. E.T. Legg & Assocs.*, 89 Cal. App. 4th 496, 508 (2001) (quoting *Paulfrey v. Blue Chip Stamps*, 150 Cal. App. 3d 187, 194 (1983)).

Here, Plaintiff alleges that NFCU breached the implied covenant "when it failed to fairly investigate reported erroneous and fraudulent transactions and failed to reimburse accountholders for fraudulent losses incurred on debit card transactions." (FAC ¶ 110.) The Court found above that Plaintiff plausibly alleges a claim for violation of the EFTA, specifically for NFCU's failure to provide Plaintiff the documents he requested. The Agreement contains a similar request. (*See* Agreement ¶ 16 ("If we determine there was no error, we will send you a written explanation of our findings. You may ask for copies of the documents that we used in making our determination.").) The same allegations are sufficient to support an inference that NFCU failed to exercise its discretionary power under the Agreement "in good faith and through objectively reasonable conduct." *3500 Sepulveda*, 980 F.3d at 1234 (quotation omitted). The Court thus concludes that it cannot dismiss the breach of contract claim on the ground that Plaintiff fails to allege an implied covenant claim.

1     NFCU's Motion to Dismiss the breach of contract claim is denied.

**IV.   CONCLUSION**

    IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 19) is granted in part and denied in part. The Motion to Dismiss the UCL claim is granted. The UCL claim is dismissed without prejudice and with leave to amend. The remainder of the Motion to Dismiss is denied.[8] Plaintiff may file an amended complaint, entitled "Second Amended Complaint," within fourteen (14) days of the entry of this Order. If no amended complaint is filed within fourteen (14) days, Defendant must file an answer within twenty-one (21) days of the entry of this Order.

Dated:  September 20, 2024

Hon. William Q. Hayes
United States District Court

---

[8] The Court declines to incorporate by reference any documents attached to the Motion to Dismiss because the Court need not consider those documents in ruling on the Motion to Dismiss.

23-cv-1851-WQH-KSC