Scott Edelsberg (SBN 330090)
Adam Schwartzbaum (*pro hac vice*)
EDELSBERG LAW, P.A.
1925 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: (305) 975-3320
scott@edelsberglaw.com

Edwin E. Elliott (*pro hac vice*)
SHAMIS & GENTILE, P.A.
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
Telephone: (305) 479-2299
edwine@shamisgentile.com

Sophia G. Gold (SBN 307971)
KALIELGOLD PLLC
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783
sgold@kalielgold.com

Jeffrey D. Kaliel (SBN 238293)
KALIELGOLD PLLC
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
jkaliel@kalielpllc.com

*Counsel for Plaintiffs and the Settlement Classes*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY STEPHENSON and BILLY SMITH II, individually, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NAVY FEDERAL CREDIT UNION,<br><br>Defendant. | Case No. 3:23-CV-01851-WQH-KSC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hon. William Q. Hayes<br>Hon. Karen S. Crawford |

3:23-CV-01851-WQH-KSC

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................... 1

II. BACKGROUND OF THE LITIGATION ................................................. 2

III. THE KEY TERMS OF THE PRELIMINARILY-APPROVED SETTLEMENT ............................................................................................ 4

IV. ADEQUATE CLASS NOTICE WAS PROVIDED AS ORDERED BY THE COURT ..................................................................................... 5

V. LEGAL STANDARD FOR FINAL APPROVAL ...................................... 6

VI. FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED ........................................................................................... 7

   A. The Proposed Settlement is Fair, Adequate, and Reasonable .............................................................................. 7

      1. The Rule 23(e)(2) Requirements .................................................. 7

      2. The Churchill Factors ..................................................................... 9

         i. The Strength of Plaintiffs' Case and the Risk of Further Litigation ......................................................... 9

         ii. The Risk of Maintaining Class Action Status Throughout Trial ............................................................ 10

         iii. The Amount Offered in the Settlement ........................ 11

         iv. The Extent of Discovery Completed and Stage of the Proceedings ...................................................... 12

         v. The Experience and Views of Counsel ........................ 12

         vi. The Presence of a Governmental Participant ................. 13

         vii. The Reaction of the Class Members to the Proposed Settlement ...................................................... 13

VII. FINAL CLASS CERTIFICATION OF THE SETTLEMENT CLASS IS PROPER ............................................................................................ 14

VIII. CONCLUSION .......................................................................................... 14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF AUTHORITIES

Cases                                                                                              Page(s)

*Acosta v. Patenaude & Felix,*
    2020 WL 5423875 (S.D. Cal. Sept. 10, 202 ........................................................ 9

*Churchill Vill. v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004) ............................................................ 7, 12, 14

*Garcia v. Navy Federal Credit Union,*
    2025 WL 1100898 (S.D. Cal. Apr. 14, 2025) ...................................................... 9

*Granados v. OnPoint Community Credit Union,*
    2025 WL 1640204 (D. Or. June 10, 2025) ........................................................ 10

*Grant v. Capital Mgmt. Servs., L.P.,*
    2014 WL 888665 (S.D. Cal. Mar. 5, 2014) ........................................................ 11

*Greenley v. Mayflower Transit, LLC,*
    2022 WL 3161908 (S.D. Cal. Aug. 8, 2022).................................................... 8, 14

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ...................................................................... 6

*Hunter v. Nature's Way Prods., LCC,*
    2020 WL 71160 (S.D. Cal. Jan. 6, 2020) ................................................... 12, 14

*In re Bluetooth Headset Prods. Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011). ................................................................. 6, 7

*In re Hyundai & Kia Fuel Econ. Litig.,*
    926 F.3d 539 (9th Cir. 2019). ..................................................................... 6

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) .................................................................... 12

*Kendall v. Odonate Therapeutics, Inc.,*
    2022 WL 188364 (S.D. Cal. Jan. 18, 2022)... .................................................... 9

*Lloyd v. Navy Federal Credit Union,*
    2019 WL 2269958 (S.D. Cal. May 28, 2019) .................................................... 11

3:23-CV-01851-WQH-KSC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Martinez v. University of San Diego*,
2024 WL 4713891 (S.D. Cal. Nov. 7, 2024)........................................................7

*Milan v. Protective Life Ins. Co.*,
2025 WL 1167403 (S.D. Cal. Apr. 22, 2025) ...................................................13

*Moriarty v. Am. Gen. Life Ins. Co.*,
2022 WL 6584150 (S.D. Cal. Sept. 27, 2022)................................................... 10

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004)....................................................................13

*Nguyen v. v. Wescom Central Credit Union*,
2023 WL 9019022 (C.D. Cal. Nov. 15, 2023) ...................................................9

*Rodriguez v. West Pub. Corp.*,
2007 WL 2827379 (C.D. Cal. Sept. 10, 2007) .................................................11

*Shelby v. Two Jinns, Inc.*,
2017 WL 6347090 (C.D. Cal. Aug. 2, 2017) ...................................................11

*Sparkman v. Comerica Bank*,
2023 WL 5020269 (N.D. Cal. Aug. 4, 2023) .....................................................9

Statutes

15 U.S.C. § 1693m(a)(2)(A) ...............................................................................11

15 U.S.C. § 1693m(a)(2)(B). ................................................................................1

15 U.S.C. § 1693m(a)(2)(B)(ii) ......................................................................... 10

Cal. Bus. & Prof. Code § 17200. .........................................................................3

Fed. R. Civ. P. 23(e). ...........................................................................................6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs Jeffrey Stephenson and Billy Smith II ("Plaintiffs") respectfully submit this Memorandum of Points and Authorities in Support of their unopposed Motion for Final Approval of Class Action Settlement. On September 12, 2025, this Court preliminarily approved the Class Action Settlement Agreement[1] (the "Agreement") entered into between Plaintiffs and Defendant Navy Federal Credit Union ("Navy Federal"), finding it to be sufficiently fair, adequate, and reasonable, and conditionally certified the Settlement Classes for settlement purposes only.

After diligently engaging in arm's-length negotiations made in good faith with the assistance of a respected third-party neutral mediator, Navy Federal agreed to establish a Settlement Fund of $1,700,000 in monetary relief, that will be used to fund up to two *pro rata* Account credits or payments to Settlement Class Members who file a valid and timely Claim Form, and any award of attorneys' fees, costs, and expenses. The Settlement does not release Settlement Class Members' actual damages claims based on Navy Federal's purported improper denial of a claim of unauthorized transfers. Instead, Settlement Class Members will release claims of statutory damages only, which are capped under the EFTA. 15 U.S.C. § 1693m(a)(2)(B).

Separate from the Settlement Fund, Navy Federal has also agreed to pay Settlement Administration Costs estimated at $174,423.00, representing an additional benefit to the Settlement Class, to be reimbursed from any Residual Funds. *See* Decl. of Robert Cormio of Kroll Settlement Admin. in Connection with Final Approval of Settlement ("Admin Decl.") ¶ 17; Settlement Agreement § 2.1(j)(i). Navy Federal has

---

[1] The capitalized terms used herein are defined and have the same meaning as those used in the Agreement unless otherwise stated. A copy of the Agreement is attached as **Exhibit 1** to the Declaration of Class Counsel submitted with Plaintiffs' Motion for Preliminary Approval.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

also agreed to make additional payments of $5,000 to each Plaintiff to settle their individual claims for actual damages and an additional $5,000 Service Award to compensate each Plaintiff for their role in serving as Class Representatives. On the whole, these significant monetary benefits constitute an exceptional result for the Settlement Classes and a fair, adequate, and reasonable resolution of the Action.

As an additional benefit to Settlement Class Members, Defendant had also agreed to implement changes to its policies and procedures for handling accountholders' claims for unauthorized transfers in compliance with the EFTA. These changes will benefit both current and future Navy Federal accountholders.

To date, the Settlement has been well received by the Settlement Classes. After culmination of the Notice Plan, the Settlement Administrator has received 8,319 claims. Admin Decl. ¶ 13. And the deadline to submit claims is not until December 18, 2025. *Id.* ¶ 12. To date, zero Settlement Class Members have objected to the Settlement and three Settlement Class Members have opted out. *Id.* ¶ 16. The deadline for Settlement Class Members to exclude themselves or object is not until December 3, 2025. *Id.* ¶ 15. In sum, the reaction of the Settlement Classes so far represents an overwhelmingly positive reaction to the Settlement and only further justifies a grant of final approval.

In light of the excellent result achieved for the Settlement Classes, Plaintiffs now respectfully request that the Court grant final approval of the Settlement, finding it to be fair, adequate, and reasonable and enter the Final Approval Order and Judgment approving the Settlement.

## II.   **BACKGROUND OF THE LITIGATION**

On October 10, 2023, Stephenson filed his putative class action complaint in this Court against Navy Federal arising out of its handling of electronic fund transfers disputed by members as unauthorized and/or fraudulent. See Joint Declaration of Class Counsel in Support of Motion for Final Approval and Attorneys' Fees and Costs ("Class Counsel Decl.") ¶ 3. The Complaint alleged claims on behalf of a

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

nationwide class for breach of contract, breach of the implied covenant of good faith and fair dealing, violations of the EFTA, and violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 (the "UCL"). *Id*. Stephenson filed his First Amended Complaint on January 22, 2024, in lieu of responding to Defendant's motion to dismiss. *Id*.

On February 21, 2024, Defendant filed a motion to dismiss the First Amended Complaint under Rule 12(b)(6). *Id*. ¶ 4. After briefing, the Court entered its order denying in part and granting in part Defendant's motion to dismiss, allowing Plaintiffs' EFTA and breach of contract claims to proceed. *Id*. Plaintiffs filed their Second Amended Complaint ("SAC"), which added Smith II to the Action; Defendant filed its answer to the SAC, asserting seven affirmative defenses. *Id*.

The Parties began written discovery, which included the exchange of Rule 26(a)(1) initial disclosures, requests for production and interrogatories, engaging in meet-and-confer conferences regarding the same, issuing third-party subpoenas, and production of documents. *Id*. ¶ 6.

On December 11, 2024, the Parties participated in an Early Neutral Evaluation with Magistrate Judge Karen S. Crawford, which did not result in settlement. *Id*. ¶ 5. Then, on February 26, 2025, the Parties requested, and the Court granted a stay of the case to allow the Parties to participate in a mediation to see if they could resolve the case without further litigation. *Id*. ¶ 9.

On June 4, 2025, the Parties attended a full-day in-person mediation before Judge Diane M. Welsh (Ret.), which resulted in an agreement to the material terms of this Settlement. *Id*. ¶ 11. Judge Welsh presided over an arm's-length mediation between capable and experienced class action counsel on both sides. *Id*. ¶ 12. Prior to mediation, the Parties engaged in a significant amount of informal and formal discovery in order to assist Class Counsel in vetting and assessing the claims of Settlement Class Members and Navy Federal's defenses before reaching this Agreement. *Id*. ¶ 10. The Parties did not discuss attorneys' fees and costs, nor any

3

3:23-CV-01851-WQH-KSC

potential service awards, until they first agreed on the material Settlement terms, including the Settlement Class definitions, the Notice and Notice Program, the claims process and Claim Form, benefits for the Settlement Class Members, and the scope of the Releases. *Id.* ¶ 13.

On June 6, 2025, the Parties notified the Court that they had reached an agreement to settle in principle on a class-wide basis and stipulated to stay the case. *Id.* ¶ 14. The Parties then negotiated the Agreement now pending final approval. *Id.*

On September 12, 2025, after the Court thoroughly examined the Settlement in its entirety to ensure the Settlement was provisionally fair, adequate, and reasonable, this Court entered its Amended Order, conditionally approving the Settlement and provisionally certifying the Settlement Classes for purposes of notice and settlement only.

## III. THE KEY TERMS OF THE PRELIMINARILY-APPROVED SETTLEMENT

The key terms of the preliminarily-approved Settlement are briefly reiterated and summarized below:

- Agreed certification of the Settlement Classes defined as: **Written Explanation Settlement Class:** All Accountholders whose claims of unauthorized electronic fund transfers were denied by Navy Federal Credit Union between October 10, 2022, and the date the Court grants preliminary approval of the Settlement; and **Document Request Settlement Subclass:** All Accountholders in the Written Explanation Settlement Class who requested documents Navy Federal relied on in making its determination and who did not receive them. Agreement, § 1.42(a), (b);

- Notice of the Settlement to be sent directly to the Settlement Class Members by the Settlement Administrator via Postcard or Email, advising them of the terms of the Settlement, how to submit a Claim Form, and their right to object to or exclude themselves from the Settlement, and the establishment of the Settlement Website, which includes copies of the Long Form Notice and the Claim Form. *Id.* at § 4.1; Ex. D;

3:23-CV-01851-WQH-KSC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

- Payment by Defendant of monetary consideration in the amount of $1,700,000. *Id.* § 2.1;

- Payment of Settlement Class Member Payments to Settlement Class Members who file a valid and timely Claim Form calculated as a *pro rata* portion from the Net Settlement Fund (with the opportunity for a second *pro rata* portion for Settlement Class Members who are also members of the Document Request Settlement Subclass) in the form of either an Account credit or check. *Id.* § 2.1(d);

- Prospective relief to Current Accountholders by implementing changes to its policies and procedures relating to the handling of claims concerning unauthorized electronic fund transfers. *Id.* § 2.2(a);

- Payment of the Settlement Administration Notice, Costs and Expenses, to be reimbursed from any Residual Funds. *Id.*;

- Payment of any remaining Residual Funds to a *cy pres* recipient proposed by the Parties and subject to Court approval. *Id.* § 2.1(j).

- Separate payment of $5,000 to each Plaintiff to settle their individual claims for actual damages. *Id.* § 2.1;

- Separate payment of $5,000 Service Awards to each Plaintiff to compensate them for their roles in serving as Class Representatives. *Id.* § 9.4;

- Agreement by Plaintiffs and each of the Settlement Class Members to release and forever discharge the Released Parties of the Released Claims, exclusive of any claims for actual damages. *Id.* §§ 1.36, 1.37, 3.2; and

- Payment from the Settlement Fund of Class Counsel's attorneys' fees of up to one-third of the Settlement Value and reimbursement of expenses. *Id.* § 9.1.

## IV. ADEQUATE CLASS NOTICE WAS PROVIDED AS ORDERED BY THE COURT

As this Court held when granting Preliminary Approval, the direct Email and Postcard Notice provided to Settlement Class Members is the best practicable notice under the circumstances. After the Court granted Preliminary Approval, the

5

Settlement Administrator disseminated Notice of the Settlement to 350,848 Settlement Class Members. Admin Decl. ¶ 8. Of the total Email and Postcard Notices that were sent, only 39,870 were returned as undeliverable. *Id.* ¶¶ 9–10. This results in a successful delivery rate of approximately 89%.

Class Notice has also been effectuated via the Settlement Website. The Settlement Administrator established the Settlement Website, which included key information about the Settlement, including, but not limited to the Long Form Notice, the Claim Form, a copy of the Agreement, the Amended Order, the date of the Final Approval Hearing, and how to submit Claim Forms online. *Id.* ¶ 7.

As of November 7, 2025, the Settlement Administrator has received 8,319 claims for a Settlement Class Member Payment. *Id.* ¶ 13.

As of November 7, 2025, the Settlement Administrator has received three opt-outs and zero objections. *Id.* ¶ 16.

## V.   LEGAL STANDARD FOR FINAL APPROVAL

The Ninth Circuit recognizes the "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.,* 926 F.3d 539, 556 (9th Cir. 2019). [2] Ultimately, the standard inquiry the district court explores is whether the proposed settlement "is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998); Fed. R. Civ. P. 23(e).

After the Court preliminarily determines that the proposed Settlement is fair, adequate, and reasonable, and after notice is sent to the conditionally certified class, the Court, in "taking account of all the information learned during that process" must "decide[] whether or not to give 'final approval' to the settlement." 4 Newberg and Rubenstein on Class Actions, § 13:39 (6th ed. June 2025); *see also In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 946 (9th Cir. 2011) ("To guard against

---

[2]   Unless otherwise stated herein, all internal citations, quotation marks, and alterations are omitted, and all emphasis is added.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

[the] potential for class action abuse," final court approval "may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate").

Rule 23(e)(2) permits a district court to approve a class action settlement upon considering whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided the class is adequate. . . and (D) the proposal treats class members equitably relative to each other." *Martinez v. University of San Diego*, 2024 WL 4713891, at *10 (S.D. Cal. Nov. 7, 2024).

In addition to the Rule 23(e)(2) requirements, courts in the Ninth Circuit, generally assess a settlement's fairness in weighing a number of factors, such as those set forth in *Bluetooth,* 654 F.3d at 946 (quoting *Churchill Vill. v. Gen. Elec.,* 361 F.3d 566 (9th Cir. 2004)) (the "*Churchill* factors"). The *Churchill* factors, which largely overlap with the Rule 23(e)(2) factors, include:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*Bluetooth,* 654 F.3d at 946.

## VI.    FINAL APPROVAL OF THE SETTLEMENT IS WARRANTED

This Court previously found that each of the Rule 23(e)(2) and applicable *Churchill* factors supported preliminary approval of the Settlement. *See generally,* Amended Order. In revisiting these factors again, Plaintiffs respectfully submit that each factor still weighs in favor of final approval of the Settlement and will summarize their application herein.

### A. The Proposed Settlement is Fair, Adequate, and Reasonable

7

## 1. The Rule 23(e)(2) Requirements

A final review of each relevant factor supports granting final approval of the Settlement. First, the Settlement is inherently fair, as it was reached in the absence of fraud or collusion and is the product of informed arm's-length negotiations made in good faith between competent and experienced counsel. Class Counsel Decl. ¶ 34. Settlement negotiations were assisted by a third-party neutral mediator, Judge Diane M. Welsh (Ret.), and conducted only after the Parties had extensively investigated and litigated the claims over the course of 2.5 years, including contentious motion practice and extensive discovery. *Id.* ¶ 28. *See Greenley v. Mayflower Transit, LLC,* 2022 WL 3161908, at *6 (S.D. Cal. Aug. 8, 2022) (Hayes, J.) (finding "the participation of a mediator in reaching the settlement weighs in favor of a finding of non-collusiveness").

Next, the Settlement relief is undoubtedly adequate, as it provides Settlement Class Members with substantial and immediate monetary recovery that would typically take several years of continued litigation and significant costs to achieve. The Settlement reasonably treats Settlement Class Members equitably relative to each other, as each Settlement Class Member may claim a *pro rata* share of the Net Settlement Fund based on the number of Approved Claims. Agreement § 2.1. Each Settlement Class Member Payment is based on objective criteria and no Settlement Class Member will be treated more favorably than any other. Further, each Settlement Class Member will be required to sign the same narrow Release, which uniformly releases Navy Federal from all Released Claims, except for those for actual damages, and which does not affect the apportionment of relief to the Settlement Class Members. *Id.* §§ 1.36; 3.2.

Finally, to compensate Class Counsel for their time, risk and expenses incurred in pursuing claims on Settlement Class Members' behalf, Class Counsel will request attorneys' fees representing up to one-third of the value of the Settlement, as well as reimbursement of litigation costs incurred since the case was filed, to be paid from

8

3:23-CV-01851-WQH-KSC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

the Settlement Fund. Class Counsel Decl. ¶ 19; Agreement § 9.1. Plaintiffs' unopposed Motion for a Fee Award is filed contemporaneously with this Motion and sets forth a full legal analysis demonstrating that Class Counsel's request "is within the range of acceptable attorneys' fees in Ninth Circuit cases." *See Kendall v. Odonate Therapeutics, Inc.,* 2022 WL 188364, at \*7 (S.D. Cal. Jan. 18, 2022).

Accordingly, all Rule 23(e)(2) factors remain in favor of granting final approval.

### 2. The *Churchill* Factors

#### i. The Strength of Plaintiffs' Case and the Risk of Further Litigation

The strength of Plaintiffs' case balanced against the risks inherent in the litigation supports granting final approval of the Settlement. In evaluating these factors together, "[t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in hand instead of a prospective flock in the bush." *Acosta v. Patenaude & Felix,* 2020 WL 5423875, at \*3 (S.D. Cal. Sept. 10, 2020).

While several decisions throughout the country involving EFTA claims for statutory damages challenging similar financial institutions' error resolution procedures like Navy Federal's alleged in this case have prevailed on liability either at summary judgment or on the pleadings,[3] these claims provide limited ground for

---

[3]    *See e.g., Garcia v. Navy Federal Credit Union,* 2025 WL 1100898, at \*19 (S.D. Cal. Apr. 14, 2025) (denying Defendant's motion for summary judgment as to whether Navy Federal complied with the EFTA's reasonable investigation provision); *Nguyen v. v. Wescom Central Credit Union,* 2023 WL 9019022, at \*4 (C.D. Cal. Nov. 15, 2023) ("Summary judgment is inappropriate on Plaintiff's EFTA claim because a reasonable jury could determine that Defendant's investigation of Plaintiff's claim was not reasonable"); *Sparkman v. Comerica Bank,* 2023 WL 5020269, at \*10 (N.D. Cal. Aug. 4, 2023) (denying motion to dismiss based on allegations of insufficient form letters denying fraud claims and facts showing transactions were unauthorized). Nevertheless, success on the merits is no guarantee

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

recovery of putative class damages. *See* 15 U.S.C. § 1693m(a)(2)(B)(ii) (capping total statutory damages for a class action to "the lesser of $500,000 or 1 per centum of [defendant's] net worth"). Additional risks exist with the prospect of class certification, as Navy Federal has challenged Plaintiffs' ability to establish class-wide causation and damages for purposes Rule 23(b)(3). *See e.g., Moriarty v. Am. Gen. Life Ins. Co.,* 2022 WL 6584150, at *5 (S.D. Cal. Sept. 27, 2022) (denying motion for class certification on claim for breach of contract in part due to "substantial concerns as to whether the issues of the individual claims such as actual damages and causation would predominate"). Certainly, the strength of Plaintiffs' claims is not without substantial risks inherent in proceeding with litigation of these novel issues, including achieving and maintaining class certification, and calculating damages with viable methodologies.

Notwithstanding these risks, the delay attendant in continuing to litigate this case also favors approval of the Settlement. Significant time and additional costs would be required for the Parties and the Court to achieve class certification, prevail at summary judgment, and complete pre-trial proceedings. After trial, the Parties could appeal the Court's class certification and summary judgment decisions, which could take years to complete. Assuming the Parties went to trial and verdict, there would remain the possibility that the verdict could be reversed by this Court on appeal. By contrast, the Settlement provides a significant and valuable recovery to the Settlement Classes now. Therefore, this factor supports final approval of the Settlement.

### ii. The Risk of Maintaining Class Action Status Throughout Trial

Because the Court had not yet certified any class when the Parties executed the Agreement, it is uncertain that this case would be certified in the absence of

---

and in any event, litigation "would likely continue for many years, especially given that EFTA law is not well settled." *Granados v. OnPoint Community Credit Union,* 2025 WL 1640204, at *7 (D. Or. June 10, 2025).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

settlement. *See Lloyd v. Navy Federal Credit Union,* 2019 WL 2269958, at *11 (S.D. Cal. May 28, 2019) (finding this factor supported final approval where "plaintiffs faced a risk that the class would not be certified"). And if the Settlement were disapproved by the Court, Navy Federal would likely oppose class certification, and would challenge class certification on appeal in the event of an adverse judgment. *See Rodriguez v. West Pub. Corp.,* 2007 WL 2827379 at *8 (C.D. Cal. Sept. 10, 2007), *rev'd on other grounds,* 563 F.3d 948 (9th Cir. 2009) (finding this factor weighed in favor of final approval where class certification would likely be challenged on appeal). Thus, this factor also supports final approval.

### iii.    The Amount Offered in the Settlement

The proposed $1,700,000 Settlement Fund is an excellent result for the Settlement Classes, as it represents *more than three times* the maximum class recovery of statutory damages permitted under the EFTA. *See* 15 U.S.C. § 1693m(a)(2)(A)-(B) (capping class wide damages at $500,000). While the Settlement does not release any Settlement Class Members' claims for actual damages, this excellent monetary recovery is within the range, if not better, than the results achieved in similar EFTA class action settlements that have received final approval. *See e.g., Shelby v. Two Jinns, Inc.,* 2017 WL 6347090, at *6 (C.D. Cal. Aug. 2, 2017) ("Considering that Class members' pro rata recovery of statutory damages exceeds the EFTA's cap, even after deducting fees and costs" from the $475,000 common fund, "favors final approval").

Further, the significant value of the injunctive relief Navy Federal provides to current and prospective members in the form of revised written explanations and enhanced procedures for responding to members whose claims are denied should also be recognized as an important benefit. *See Grant v. Capital Mgmt. Servs., L.P.,* 2014 WL 888665, at *4 (S.D. Cal. Mar. 5, 2014) (Hayes, J.) (finding this factor supported final approval although the settlement did "not include monetary relief for the Class,

it stops the allegedly unlawful practices, bars Defendant from similar practices in the future, and does not prevent class members from seeking legal recourse").

### iv. The Extent of Discovery Completed and Stage of the Proceedings

This factor does not require the Court to find the Parties have engaged in extensive discovery. "[I]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000). Here, however, the Parties engaged in both formal and informal discovery prior to settling, including documents regarding Navy Federal's internal policies and practices on handling accountholders' claims of unauthorized or fraudulent transactions and its efforts to comply with federal error resolution requirements; letters denying claims during the Class Period; each Plaintiffs' transaction history; and the approximate total number of accountholders whose claims were denied (a subset of which claim not to have received supporting documentation upon request). Class Counsel Decl. ¶ 32.

And due to Class Counsel's years of experience in litigating cases like this one, they were able to settle Plaintiffs' Action—well aware of the attendant strengths and weaknesses of their claims. To date, Class Counsel has expended approximately 638.6 hours litigating this case since it was filed, including engaging in extensive settlement negotiations between counsel and with the assistance of a mediator. *Id.* ¶¶ 42; 28. Thus, the Parties' "extensive investigation, discovery, and subsequent settlement discussions during that time weigh heavily in favor of granting final approval." *Hunter v. Nature's Way Prods., LCC,* 2020 WL 71160, at *5 (S.D. Cal. Jan. 6, 2020) (Hayes, J.).

### v. The Experience and Views of Counsel

Weight is also given to Class Counsel's experience and their view of the proposed Settlement. *Churchill,* 361 F.3d at 576–77. Class Counsel, having extensive

3:23-CV-01851-WQH-KSC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

experience in complex litigation and in particular, experience in prosecuting unfair business practices against financial institutions like this one, is of the opinion that the Settlement in this case is fair, reasonable, and adequate. Class Counsel Decl. ¶¶ 21–27, Exs. 1–3 (firm resumes). "Because the parties' counsel are the ones most familiar with the facts of the litigation," Class Counsel's view of the Settlement "should be given a presumption of reasonableness." *Milan v. Protective Life Ins. Co.,* 2025 WL 1167403, at *10 (S.D. Cal. Apr. 22, 2025).

### vi. The Presence of a Governmental Participant

No governmental actor is relevant to this action, rendering this factor immaterial to the settlement approval process.

### vii. The Reaction of the Class Members to the Proposed Settlement

Lastly, the reaction of the Settlement Class is overwhelmingly positive. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 528–29 (C.D. Cal. 2004). Since the Court granted preliminary approval of the Settlement on September 12, 2025, the Settlement Administrator has disseminated Notice to 310,978 Settlement Class Members. Admin Decl. ¶ 9–10. The robust Notice Program—which included direct Postcard and Email Notice, as well as the Long Form Notice published on the Settlement Website—provided adequate information regarding the nature of the Action and the claims, the structure of the Settlement and class benefits, and apprised Class Members of how to submit a valid Claim Form and how to exercise his or her rights and obligations.

After being sufficiently informed of their choices, as of November 7, 2025, not a single Settlement Class Member decided to object to, and only three excluded themselves from participating in the Settlement. *Id.* ¶ 16. As such, this positive

13

reaction to the Settlement strongly favors final approval. *See Greenley,* 2022 WL 3161908 at *6 (finding this factor "weighs in favor of approval" where "[n]o Settlement Class Member has opted out of the settlement, and no objections to the settlement have been made"); *see also Churchill,* 361 F.3d at 577 (upholding district court's approval of class settlement with 45 objections and 500 opt-outs from a class of approximately 90,000).

Accordingly, all factors still weigh in favor of finding that the proposed settlement is fair, reasonable, and adequate, and therefore, Plaintiffs request that the court grant final approval of the Settlement.

## VII.   FINAL CLASS CERTIFICATION OF THE SETTLEMENT CLASS IS PROPER

For the reasons explained in Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Provisional Class Certification, and for the reasons stated in the Court's Amended Order, the Court should finally certify the Settlement Classes for settlement purposes in this matter. *See e.g., Hunter,* 2020 WL 71160, at *4 (reaffirming the court's prior settlement class certification at final approval where "[n]o party or class member has objected to the certification of the settlement class").

## VIII.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement and enter the proposed Final Approval Order and Final Judgment, attached to the Agreement as ***Exhibit F*** and submitted hereto, and all related requests made therein.

Dated: November 17, 2025

Respectfully submitted,

/s/ *Scott Edelsberg*

Scott Edelsberg, Esq.
(CA Bar No. 330990)
Adam A. Schwartzbaum*
**EDELSBERG LAW, P.A.**
1925 Century Park E #1700
Los Angeles, CA 90067
Telephone: (305) 975-3320

3:23-CV-01851-WQH-KSC

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Scott@edelsberglaw.com
Adam@edelsberglaw.com

**KALIELGOLD PLLC**
Jeffrey D. Kaliel (SBN 238293)
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
jkaliel@kalielpllc.com

Sophia G. Gold (SBN 307971)
490 43rd Street, No. 122
Oakland, CA 94609
Telephone: (202) 350-4783
sgold@kalielgold.com

**SHAMIS & GENTILE, P.A.**
Edwin E. Elliott*
14 NE 1st Ave., Suite 705
Miami, FL 33132
Telephone: (305) 479-2299
Edwin@shamisgentile.com

*Admitted Pro Hac Vice*

*Counsel for Plaintiffs and the Settlement Classes*

3:23-CV-01851-WQH-KSC

15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT