UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JEFFREY STEPHENSON and
BILLY SMITH II, individually,
on behalf of themselves and all
others similarly situated,

                              Plaintiffs,

v.

NAVY FEDERAL CREDIT
UNION,

                              Defendant.

Case No.: 23-cv-1851-WQH-KSC

**ORDER**

HAYES, Judge:

The matters before the Court are the Motion for Final Approval of Class Action Settlement (ECF No. 64) and Motion for Attorneys' Fees and Reimbursement of Costs and Service Awards (ECF No. 66.)

## I.    PROCEDURAL BACKGROUND

On October 10, 2023, Plaintiff Jeffrey Stephenson ("Plaintiff") filed a Class Action Complaint ("Complaint") against Defendant Navy Federal Credit Union ("Defendant") asserting claims for violations of the Electronic Funds Transfers Act ("ETFA"), 15 U.S.C. § 1683, *et seq.*, violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code

§ 17200, *et seq.*, and a claim for breach of contract related to Defendant's consumer protection procedures. (ECF No. 1.)

On December 18, 2023, Defendant filed a Motion to Dismiss. (ECF No. 11.)

On January 22, 2024, Plaintiff filed a First Amended Complaint ("FAC"). (ECF No. 17.) On January 24, 2024, the Court denied as moot the Motion to Dismiss. (ECF No. 18.)

On February 21, 2024, Defendant filed a Motion to Dismiss FAC. (ECF No. 19.) On September 20, 2024, the Court issued an Order granting in part and denying in part the Motion to Dismiss FAC. (ECF No. 25.)

On October 4, 2024, Plaintiffs Jeffrey Stephenson and Billy Smith II (now, "Plaintiffs") filed a Second Amended Complaint ("SAC"), which is the operative pleading in this action. (ECF No. 28.) The SAC alleges that Plaintiffs—both consumers of Defendant's financial services—identified fraudulent charges in their bank account statements and filed fraud claims with proof of unauthorized charges using Defendant's procedures. *Id.* ¶¶ 2–5. Plaintiffs' fraud claims were quickly and "mechanically" denied by Defendant with little explanation other than "denial letters devoid of any factual findings or documentation from [Defendant's] alleged investigation." *Id.* ¶¶ 3–9.

On November 1, 2024, Defendant filed an Answer. (ECF No. 32.)

On February 26, 2025, the parties filed a Joint Motion to Stay Pending Mediation. (ECF No. 53.) The parties stated that they "scheduled an in-person mediation for June 4, 2025, with JAMS neutral Judge Diane M. Welsh (Ret.), a respected mediator experienced in class actions under the Electronic Fund Transfer Act." *Id.* at 3. On March 3, 2025, the Court granted the motion. (ECF No. 54.)

On June 6, 2025, the parties filed a Notice of Settlement. (ECF No. 55.)

On July 22, 2025, Plaintiffs filed a Motion for Preliminary Approval of Class Action Settlement and Provisional Class Certification. (ECF No. 59.)

On August 20, 2025, the Court issued an Order granting the Motion for Preliminary Approval of Class Action Settlement and Provisional Class Certification. (ECF No. 60.) The Court preliminarily approved the Settlement Classes, *id.* at 3; determined that the

Settlement Classes satisfied the requirements of Rule 23(a) and (b)(3), *id.* at 4; appointed Plaintiffs Jeffrey Stephenson and Billy Smith II as Class Representatives, *id.*; appointed Scott Edelsberg and Adam Schwartzbaum of Edelsberg Law, P.A.; Edwin E. Elliot of Shamis and Gentile, P.A.; and Sophia Gold and Jeffrey D. Kaliel of Kaliel Gold PLLC as Class Counsel, *id.*; approved Kroll Settlement Administration LLC as the Settlement Administrator and approved its Notice Program, *id.* at 5. The Court set a Final Approval Hearing for February 4, 2025. *Id.* at 9.

On September 10, 2025, Plaintiffs filed a Motion to Clarify requesting that the Court issue an Amended Order to correct an inconsistent deadline in its prior Order. (ECF No. 61.) On September 12, 2025, the Court issued the Amended Order. (ECF No. 62.)

On November 17, 2025, Plaintiffs filed the pending Motion for Final Approval of Class Action Settlement. (ECF No. 64.) On the same day, Plaintiffs filed a Declaration of Robert Cormio of Kroll Settlement Administration LLC ("Cormio Declaration"). (ECF No. 65.) On November 25, 2025, Plaintiffs also filed a Notice Regarding Exhibit Attachment, which includes documents that had been inadvertently omitted from the Cormio Declaration. (ECF No. 67.)

On November 17, 2025, Plaintiffs filed the pending Motion for Attorneys' Fees and Reimbursement of Costs and Service Awards. (ECF No. 66.)

On January 21, 2026, Plaintiffs filed a Supplemental Declaration of Robert Cormio of Kroll Settlement Administration LLC ("Supplemental Cormio Declaration"). (ECF No. 70.)

On February 4, 2026, the Court held a Final Approval Hearing. (ECF No. 71.)

## II.     TERMS OF THE PROPOSED SETTLEMENT

The Class Action Settlement Agreement (the "Agreement") was filed as Exhibit 1 to the Motion for Preliminary Approval of Class Action Settlement and Provisional Class Certification. (ECF No. 59-2; *see also* ECF No. 64 at 5 (referencing the same in the pending Motion for Final Approval of Class Action Settlement).)

23-cv-1851-WQH-KSC

The Agreement defines "Accountholder" as "any person who has or had any interest, whether legal or equitable, in an Account during the Class Period and includes Current Accountholders and Former Accountholders." (ECF No. 59-2 at 16.)

The Agreement defines "Class Period" as "the period beginning from October 10, 2022, to the date the Court enters the Preliminary Approval Order of the Settlement." *Id.* at 17. The Court entered its Preliminary Approval Order on August 20, 2025. (ECF No. 60.)

The Agreement defines "Settlement Class" or "Settlement Classes" as the following:

> **Written Explanation Settlement Class**. All Accountholders whose claims of unauthorized electronic fund transfers were denied by Navy Federal Credit Union between October 10, 2022, and the date the Court grants preliminary approval of the Settlement.

> **Document Request Settlement Subclass.** All Accountholders in the Written Explanation Settlement Class who requested documents Navy Federal relied on in making its determination and who did not receive them.

(ECF No. 59-2 at 24.)

The "Settlement Relief" section of the Agreement states that "the total monetary consideration to be provided by Navy Federal shall be $1,720,000." *Id.* at 26. The total monetary compensation shall be comprised of: "$1,700,000 for settlement of the Settlement Class Member Claims, inclusive of the amount paid to Settlement Class Members, any and all attorneys' fees, costs, and expenses awarded to Class Counsel[,] $5,000 to each Plaintiff in settlement of their individual claims[,] and [] $5,000 to each Plaintiff as a Service Award approved by the Court. Except as otherwise specified in this Agreement, Navy Federal shall not be responsible for any other payments under this Agreement." *Id.*

The "Plan of Allocation" section of the Agreement states that "Settlement Class Members" with an "Approved Claim" will be "entitled to a *pro rata* portion of the Net Settlement Fund, distributed by an electronic payment method approved by the Settlement Administrator or by check." *Id.* at 27. As of January 20, 2026, the Settlement Administrator reported receipt of 20,005 Claim Forms. (Supplemental Cormio Decl. ¶ 11.)

23-cv-1851-WQH-KSC

The "Injunctive Relief" section of the Agreement states that Defendant "agrees to implement changes to its policies and procedures relating to the handling of claims concerning unauthorized electronic fund transfers. These changes will include revisions to the written explanation sent to members whose claims are denied and enhancements to the procedures for responding to member requests for documents in connection with such denials." (ECF No. 59-2 at 31.)

## III. NOTICE, OPT-OUTS, AND OBJECTIONS

On August 1, 2025, the Settlement Administrator mailed notices pursuant to the Class Action Fairness Act, 28 U.S.C § 1715(b), to the Consumer Financial Protection Bureau, the National Credit Union Association, the Attorney General of the United States, and state and territorial Attorneys General. (Cormio Decl. ¶ 4.) On August 4, 2025, the Settlement Administrator established a toll-free telephone number for Settlement Class Members to obtain information about the Agreement. *Id.* ¶ 6. On October 17, 2025, the Settlement Administrator published a website with information about the Agreement and provided users with the ability to file a Claim Form. *Id.* ¶ 7. On September 20, 2025, the Settlement Administrator received a data file from Defendant with 362,285 records "containing names, addresses and email addresses of Settlement Class Members." *Id.* ¶ 8. On October 17, 2025, the Settlement Administrator mailed 2,801 Postcard Notices and sent 348,047 Email Notices to potential Settlement Class Members. *Id.* ¶¶ 9–10.

As of November 14, 2025, the Settlement Administrator reported receipt of three exclusion requests. *Id.* ¶ 16. As of November 14, 2025, the Settlement Administrator reported that no objections to the Settlement had been registered. *Id.* The Claims Deadline passed on December 18, 2025. *Id.* ¶ 12.

On December 19, 2025, an individual identifying themselves as Tremaine Manley filed a Notice indicating their preference to be excluded from the Settlement Class. (ECF No. 68.) The Court instructed Plaintiffs to forward the Notice to the Settlement Administrator. (ECF No. 69.)

As of January 20, 2026, the Settlement Administrator reported receipt of twelve exclusion requests. (Supplemental Cormio Decl. ¶ 11). The Settlement Administrator determined that four of these exclusion requests, including the request filed by Tremaine Manely, were untimely or invalid. *Id.* ¶ 13; *see also* Exhibits C, D, Supplemental Cormio Decl. (listing "all valid and invalid" exclusion requests). As of January 20, 2026, the Settlement Administrator reports having received no objections. *Id.* ¶ 14.

## IV. CLASS CERTIFICATION

Plaintiffs contend that certification of the Settlement Class for the purposes of settlement is appropriate pursuant to Rule 23 of the Federal Rule of Civil Procedure. (ECF No. 64 at 12.) Plaintiffs contend, in their earlier Motion for Preliminary Approval of Class Action Settlement and Provisional Class Certification, that the Settlement Class satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Federal Rules of Civil Procedure 23(a)(1) and 23(b)(3). (ECF No. 59 at 20–23.)

To approve the Agreement under Rule 23(e) of the Federal Rules of Civil Procedure, the Settlement Class must be certified for the purposes of settlement. *See* Fed. R. Civ. P. 23(e) (permitting settlement of "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement"); *see also Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003) (addressing the propriety of class certification in examining decision to approve settlement). Parties seeking class certification must satisfy each of the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequacy—and at least one of the requirements of Rule 23(b). *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 979–80 (9th Cir. 2011). In this case, Plaintiffs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

6

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although there is no absolute threshold, courts generally find numerosity satisfied when the class includes at least forty members. *See, e.g., Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 588 (S.D. Cal. 2010). Here, the Settlement Administrator reported receipt of 20,005 Claim Forms as of January 20, 2026. (Supplemental Cormio Decl. ¶ 11.) The voluminous number of Claim Forms is sufficient to establish that the numerosity requirement of Rule 23(a)(1) is satisfied.

To satisfy Rule 23(a)(2), a party seeking class certification must demonstrate that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The core concern of the inquiry is that the common contention at the heart of the claims be "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Under Rule 23(b)(3), Plaintiffs must further show that the common questions "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Though there is substantial overlap between [the Rule 23(a)(2) commonality test and the Rule 23(b)(3) predominance tests], the [Rule] 23(b)(3) test is 'far more demanding.'" *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)). The claims in this action arise from Defendant's alleged practice of denying customers' requests for reimbursement after unauthorized electronic funds transfers from their accounts and Defendant's procedures for managing those requests from its customers. These claims rely on common evidence and turn on the resolution of factual and legal issues associated with Defendant's business practices. *See Raffin v. Medicredit, Inc.*, No. CV154912GHKPJWX, 2017 WL 131745, at *9 (C.D. Cal. Jan. 3, 2017) (concluding that the predominance test had been satisfied, in part, "[b]ecause every putative class member was subject to [the defendant's] policy on a

23-cv-1851-WQH-KSC

uniform basis"). Here, Plaintiffs satisfy the commonality requirement of Rule 23(a)(2) and the predominance requirement of Rule 23(b)(3).

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) *overruled on other grounds by Dukes*, 564 U.S. at 338. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). As described above, Plaintiffs' claims arise from Defendant's alleged business practices following reports of fraudulent electronic funds transfers, and the Settlement Class is limited to individuals who made similar reports to Defendant. Plaintiffs satisfy the typicality requirement of Rule 23(a)(3).

The adequacy requirement of Rule 23(a)(4) is satisfied if the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In determining whether the adequacy requirement has been met, courts ask: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton*, 327 F.3d at 957. The record reflects no evidence of any conflict of interest between Plaintiffs and the other Settlement Class members. The record further reflects that Plaintiffs have prosecuted this action vigorously. In support of the pending Motion for Final Approval of Class Action Settlement, Plaintiffs submit the Declaration of Class Counsel ("Class Counsel Declaration"). (ECF No. 64-2.) Class Counsel states that the parties "engaged in a significant amount of informal and formal discovery in order to assist Class Counsel in vetting and assessing the claims of Settlement Class Members and Navy Federal's defenses before reaching this Agreement." *Id.* at 4. Class Counsel further states that they have "expended a substantial amount of time investigating Navy Federal's handling of unauthorized electronic fund transfers disputed

by members and researching the viability of Plaintiffs' claims. Drawing on that experience and depth of knowledge, Class Counsel were able to efficiently navigate the risks in this litigation and ultimately secure an excellent result for the Settlement Class." *Id.* at 6. Plaintiffs satisfy the adequacy requirement of Rule 23(a)(4).

All the requirements of Rule 23(a) and 23(b)(3) have been satisfied. The Court certifies the proposed Class for the purposes of settlement.

## V.     FAIRNESS OF THE SETTLEMENT

Plaintiffs contend, in their pending Motion for Final Approval of Class Action Settlement, that the Agreement is fair because it was "reached in the absence of fraud or collusion and is the product of informed arm's-length negotiations made in good faith between competent and experienced counsel." (ECF No. 64 at 12.) Plaintiffs contend that the Agreement is adequate because it provides "Settlement Class Members with substantial and immediate monetary recovery that would typically take several years of continued litigation and significant costs to achieve." *Id.*

"To guard against th[e] potential for class action abuse, Rule 23(e) of the Federal Rules of Civil Procedure requires court approval of all class action settlements, which may be granted only after a fairness hearing and a determination that the settlement taken as a whole is fair, reasonable, and adequate." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (citing Fed R. Civ. P. 23(e)(2)). Courts consider several factors in determining the fairness of a proposed settlement, including:

> (1) the strength of the [plaintiffs'] case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction [to] the class members of the proposed settlement.

*Id.* at 946 (quoting *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 5757 (9th Cir. 2004)).

"[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach

23-cv-1851-WQH-KSC

a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Just. v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982). However, a "higher level of scrutiny for evidence of collusion or other conflicts of interest" is appropriate for settlements reached prior to class certification. *In re Bluetooth*, 654 F.3d at 946.

Plaintiffs would face multiple hurdles in further litigating their claims, including class certification and the possibility of summary judgment. *See Garcia v. Navy Fed. Credit Union*, No. 23-CV-2017-MMA-BLM, 2025 WL 1100898, at *23 (S.D. Cal. Apr. 14, 2025) (granting in part and denying in part Defendant's motion for summary judgment in a case including, *inter alia*, claims under the EFTA). The Settlement Fund value of $1,700,000 exceeds the maximum recovery of statutory damages available to the class through continued litigation. 15 U.S.C. § 1693m(a)(2)(B) (limiting total recovery under the EFTA for class actions to "the lesser of $500,000 or 1 per centum of the net worth of the defendant"). Plaintiffs also report that no objections to the Agreement have been registered. (ECF No. 64-1 at 17 (citing Cormio Decl. ¶ 16).) The lack of objections from Settlement Class Members favors approval. *Greenley v. Mayflower Transit, LLC*, No. 21-CV-339-WQH-MDD, 2022 WL 3161908, at *6 (S.D. Cal. Aug. 8, 2022).

The strength of Plaintiffs' claims, the risk, expense, complexity, and likely duration of further litigation, and the risk of maintaining class action status throughout any trial also weighs in favor of approval. The Settlement is fundamentally fair, adequate, and reasonable, and no evidence of collusion or conflict of interest exists. The Court concludes that the Agreement is fair.

## VI.   ADMINISTRATIVE COSTS

The Agreement defines "Settlement Administrative Costs" as "the costs and expenses incurred by the Settlement Administrator in providing Notice, processing claims, responding to inquiries from members of the Settlement Class, mailing checks for Approved Claims, and related services, including notices required by the Class Action Fairness Act."

(ECF No. 59-2 at 23.) The Agreement states that: "Navy Federal will pay Settlement Administration Costs separate and apart from payment of the Settlement Fund and payments to the Plaintiffs." Class Counsel, in its Declaration, states that: "Defendant has [] agreed to pay the Settlement Administration Costs (estimated at $174,423) separate and apart from payment of the Settlement Fund and payments to the Plaintiffs." (Class Counsel Decl. ¶ 18.)

As of November 14, 2025, the Settlement Administrator reported having billed $43,020.38 in Administrative Costs and anticipated an additional $131,402.62 in Administrative Costs. (Cormio Decl. ¶ 17.) The Settlement Administrator reported operating a toll-free telephone number and website, mailing 2,801 Postcard Notices, and 348,047 Email Notices to potential members of the Settlement Classes. *Id.* ¶¶ 5–11.

As of January 20, 2026, the Settlement Administrator reported having billed $54,740.24 in Administrative Costs and anticipated an additional $119,682.76 in Administrative Costs. (Supplemental Cormio Decl. ¶ 15.) The sum of billed and anticipated costs remains the same as in the Settlement Administrator's earlier declaration.

Courts regularly award administrative costs associated with providing notice to the class. *See, e.g.*, *Vasquez v. Kraft Heinz Foods Co.*, 3:16-cv-2749-WQH-BLM, 2020 WL 1550234, at *8 (S.D. Cal. Apr. 1, 2020). The Court concludes that the estimated $174,423 in Administrative Costs were reasonably incurred for the benefit of the Class and approves the provisions of the Agreement related to the reimbursement of Settlement Administrator Costs.

## VII.   INCENTIVE AWARDS

Incentive awards are "fairly typical" discretionary awards "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). In assessing the reasonableness of an incentive award, several district courts in the Ninth Circuit have applied the five-factor test set forth in *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995), which weighs: (1) the risk to the

11

23-cv-1851-WQH-KSC

class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation. *See, e.g., Vasquez*, 2020 WL 1550234, at *9 (collecting cases).

The Agreement includes a $5,000 "Service Award" for each of the two Plaintiffs in this action for serving as Class Representatives. (ECF No. 59-2 at 26.) Class Counsel states: "The Class Representatives took risks by offering their services when the viability of their claims was uncertain. Their claims, which publicly disclosed their personal financial information, created notoriety regardless of their success on the claims." (ECF No. 64-2 at 24–25.) Class Counsel further states: "Plaintiffs expended hours in advancing this litigation against a large and powerful adversary. Each conferred with Class Counsel on a number of occasions." *Id.* at 25. The Service Award of $5,000 for each Plaintiff falls within an acceptable range for the Court's approval. *Hunter v. Nature's Way Prods., LCC*, No. 3:16-CV-532-WQH-AGS, 2020 WL 71160, at *9 (S.D. Cal. Jan. 6, 2020) (approving a $7,500 incentive award). The Court approves the Service Awards.

## VIII. ATTORNEYS' FEES AND COSTS

Plaintiffs move for an award of attorneys' fees and costs in the amount of $624,807.67, which represents 33.33 percent of following total sum: $1,700,000 from the Settlement Fund and approximately $174,423 in requested Settlement Administration Costs. (ECF No. 66 at 8; *see also* Class Counsel Decl. ¶ 18.) Plaintiffs contend: "Class Counsel has litigated this case since October 2023, partially surviving a motion to dismiss that allowed Plaintiffs' EFTA and contract claims to proceed, performing much of the discovery needed to prevail at class certification and trial, defending burdensome subpoenas directed to Plaintiff Stephenson's immediate family, participating in an Early Neutral Evaluation with Magistrate Judge Karen S. Crawford, and ultimately settling at mediation with the assistance of a well-respected neutral, Judge Diane M. Welsh (Ret.)." (ECF No. 66 at 8.) Plaintiffs contend that a percentage-of-the-fund calculation is the most appropriate

method to evaluate their requested award of attorneys' fees. *Id.* at 13–15 (citing *In re Bluetooth*, 654 F.3d at 942 ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the fund in lieu of the often more time-consuming task of calculating the lodestar.")). Plaintiffs contend that their requested attorneys' fees award of 33.33 percent of the total value of the settlement is appropriate in this action because the monetary value of the settlement does not include the "nonmonetary benefits provided in the Settlement by Navy Federal, including the implementation of changes to its policies and procedures relating to the handling of claims concerning unauthorized electronic fund transfers." (ECF No. 66 at 15.) Plaintiffs contend that their proposed award is also appropriate based on the risks of this litigation because, "[w]hen Class Counsel agreed to represent Stephenson as a proposed class representative, no court had ever certified claims under EFTA for a financial institution's wrongful denials of reimbursements for unauthorized transactions." *Id.* at 18. Plaintiffs contend that Class Counsel exercised a high degree of skill required based on their experience as consumer class action attorneys and worked on a contingency basis during this litigation. *Id.* at 19–20. Plaintiffs contend that the Settlement Administration Costs should be included in their percentage-of-the-fund calculation. *Id.* at 17 (citing *In re Anthem Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 WL 3960068, at *8 (N.D. Cal. Aug 17, 2018)).

Plaintiffs further contend that a lodestar approach confirms the reasonableness of their requested percentage-of-the-fund award because counsel from three firms spent 638.6 hours working on this action at hourly rates ranging from "$550 to $950 for attorneys, and $250 to $258 for paralegals." *Id.* at 21–22. Plaintiffs contend that this alternative calculation method results in a $520,334.70 lodestar, and that the resulting multiplier of approximately 1.2 to reach their requested award of $624,807.67 is reasonable. *Id.* at 23.

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable,

23-cv-1851-WQH-KSC

even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of the award. *Id.* at 942.

In the Ninth Circuit, percentage-of-the-fund awards often range from "20 percent to 30 percent of the fund created." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). "[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942 (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)). District courts may deviate from the benchmark based on factors including: the quality of results obtained by counsel, risks of the litigation, benefits to class members beyond monetary awards, the market rates for similar legal services provided by counsel, whether representation was undertaken on a contingency basis, and the complexity or length of the action. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–49 (9th Cir. 2002) (affirming a district court's award of a 28% fee award). "[I]n most common fund cases, the award exceeds th[e] benchmark." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008). Percentage-of-the-fund awards in the amount of 33.33 percent are "commonly awarded by courts in this circuit." *Amaraut v. Sprint/United Mgmt. Co.*, No. 19-CV-411-WQH-AHG, 2021 WL 3419232, at *7 (S.D. Cal. Aug 5, 2021)

As a preliminary matter, the Court considers whether to include the Settlement Administration Costs in the percentage-of-the-fund calculation for attorneys' fees in this action. The Ninth Circuit has written that "[t]he post-settlement cost of providing notice to the class can reasonably be considered a benefit to the class" and approved a district court's inclusion of administrative costs in its calculation of attorneys' fees. *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003); *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 953 (9th Cir. 2015) ("[N]otice costs allow class members to learn about a settlement and litigation expenses make the entire action possible."). Here, the parties

23-cv-1851-WQH-KSC

appointed a Settlement Administrator with experience in "more than 3,000 cases" who managed a Notice Program that distributed hundreds of thousands of Notices to potential Class Members using various. (Cormio Decl. ¶¶ 2, 9–11, 13.) The Settlement Administrator's sworn statements as to billed and expected expenditures are properly considered in a percentage-of-the-fund calculation because the Settlement Classes benefits from his operation of the Notice Program. *See id.* ¶ 17.

The Court now considers whether Plaintiffs' requested award of 33.33 percent is a reasonable upward departure from the 25 percent benchmark traditionally used in the Ninth Circuit to calculate percentage-of-the-fund awards.

**A. Results Obtained**

Plaintiffs contend that the Agreement represents a "significant" benefit to the Settlement Classes. (ECF No. 66 at 16.) Plaintiffs contend that the "$1,700,000 Settlement fund delivers more than 300% of the maximum statutory recovery available at trial" because the "EFTA caps statutory damages at $500,000." *Id.* (citing 15 U.S.C. § 1693m(a)(2)(B)). Plaintiffs also contend that the Agreement includes non-monetary benefits in the form of improvements to Defendant's process for resolving its customers' unauthorized transfer claims. *Id.* at 16–17.

Exceptional quality of the results obtained by counsel weighs in favor of an upward departure from the 25 percent benchmark. *Vizcaino*, 290 F.3d at 1048 ("Exceptional results are a relevant circumstance."); *see also Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1377 (9th Cir. 1993) (considering class counsel's "effective[] prosecut[ion]" and "expert handling" of the litigation). Class Counsel in this action have effectively pursued Plaintiffs' claims and obtained a favorable settlement, which exceeds the total amount of statutory damages available through litigation for class actions asserting claims under 15 U.S.C. § 1693m(a)(2)(B). The Agreement's "Injunctive Relief" provision requiring Defendant to "implement changes to its policies and procedures relating to the handling of claims related to unauthorized electronic fund transfers" represents an additional but uncertain benefit to class members and Defendant's future customers. (ECF No. 59-2 at 31.) The positive

results obtained by Class Counsel in this action favor an upward departure from the 25 percent benchmark.

**B. Risks of Litigation**

Plaintiffs contend that this "case was risky and handled on a contingency basis." (ECF No. 66 at 18.) Plaintiffs contend that "no court had ever certified claims under EFTA for a financial institution's wrongful denials of reimbursement for unauthorized transactions" when Class Counsel undertook representation of Plaintiff Stephenson. *Id.* Plaintiffs contend that, "absent settlement, Plaintiffs would face substantial ongoing risk," including "additional dispositive motion practice [and] certifying a class despite Navy Federal's arguments that the elements of causation and damages could not be determined on a class-wide basis." *Id.* at 19.

The risks that a plaintiff may not succeed in obtaining relief absent a settlement and, relatedly, that counsel may not receive compensation for their work due to their contingency fee arrangement both favor an upward departure from the 25 percent benchmark. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1046–47; *Vizcaino*, 290 F.3d at 1048, 1050. Here, Class Counsel represented Plaintiffs under a contingency fee arrangement and Plaintiffs risked being unable to obtain relief in the absence of a settlement. The risks involved in this litigation—on the merits and in terms of Class Counsel's potential compensation—favor an upward departure from the benchmark.

**C. Length, Complexity, and Skill Required**

Class Counsel state that they are "highly experienced" in class action litigation against financial institutions. (Class Counsel Decl. ¶ 22.) Class Counsel declare that they "adequately and vigorously represented the Settlement Classes throughout the 2.5-year litigation, which involved significant formal and informal discovery, contentious motion practice, and settlement negotiations . . . ." *Id.* ¶ 28. Plaintiffs, through Class Counsel, reached a settlement with Defendant during a "full-day in-person mediation." *Id.* ¶ 11–12. Plaintiffs contend that Class Counsel reasonably spent a total of 638.6 hours, "which does

not include the hours that they will spend to work to complete the Final Approval process or the time that will be spent post-Final Approval. . . ." (ECF No. 66 at 22.)

The complexity and duration of litigation are properly considered when analyzing an award of attorneys' fees. *Vizcaino*, 290 F.3d at 1051. Here, the length, complexity, and skill required favor an upward departure from the 25 percent benchmark. This action commenced on October 10, 2023 (ECF No. 1), and the Final Approval Hearing was held approximately two-and-a-half years later on February 4, 2026. (ECF No. 71.) In the interim, the parties actively litigated this case and engaged in motion practice. Plaintiffs filed an amended complaint (ECF No. 17) in response to Defendant's Motion to Dismiss. (ECF No. 11.) Then, Plaintiffs filed an Opposition to Defendant's Motion to Dismiss Amended Complaint. (ECF Nos. 19, 22.) Plaintiffs subsequently filed another amended complaint and engaged in discovery prior to their successful mediation session with Defendant. (ECF No. 28.)

Based on the foregoing factors, an upward departure from the 25 percent benchmark is warranted in this action. Class Counsel obtained a favorable result for the Settlement Classes by virtue of their skill, experience, and effort. The Court concludes that attorneys' fees in the amount of a 33.33 percentage-of-the-fund award is reasonable.

An alternative analysis using the lodestar method confirms the reasonableness of this award. District courts may also "appl[y] the lodestar method as a cross-check of the percentage method." *Vizcaino*, 290 F.3d at 1050. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941. After computing the lodestar figure, the district court may then adjust the figure upward or downward taking into consideration twelve "reasonableness" factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time

limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Morales v. City of San Rafael,* 96 F.3d 359, 363 n.8 (9th Cir. 1996).

Here, Class Counsel has provided the relevant data for the Court to conduct its analysis, including the hours worked by each attorney and paralegal and their hourly rate. (Class Counsel Decl. ¶¶ 41, 45–64.) Class Counsel states that the total lodestar figure in this action based on its calculations is $520,334.70. *Id.* ¶ 41. The Court's review of this data confirms the same. Based on this lodestar figure, the multiplier required to reach the requested award of $624,807.67 is approximately 1.2. This multiplier is within the typical range used in the Ninth Circuit. *See Vizcaino*, 290 F.3d at 1051 n.6 ("Multiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied.") (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998)). Accordingly, the lodestar method confirms that the requested award of attorneys' fees is reasonable.

As a separate matter, Plaintiffs request reimbursement of their litigation costs. Plaintiffs contend that they have incurred $23,113.29 in unreimbursed litigation costs. (ECF No. 66 at 23; Class Counsel Decl. ¶ 19.) The Court concludes that $23,113.29 in litigation costs is reasonable based on the sworn statements of Class Counsel and, accordingly, approves the requested award of litigation costs.

## IX. CONCLUSION

IT IS HEREBY ORDERED that the Motion for Final Approval of Class Action Settlement (ECF No. 64) and the Motion for Attorneys' Fees and Reimbursement of Costs and Service Awards (ECF No. 66) filed by Plaintiffs Jeffrey Stephenson and Billy Smith II are granted as follows:

1. This Court has jurisdiction over the subject matter of the Action and over all parties to the Action, including all Settlement Class Members.

23-cv-1851-WQH-KSC

2. This Order incorporates the definitions in the Settlement Agreement, and all capitalized terms used in this Order have the same meanings as set forth in the Settlement Agreement, unless otherwise defined herein.

3. **Class Certification for Settlement Purposes Only**. The Court reaffirms its earlier findings that class certification is appropriate for settlement purposes and hereby certifies the following Settlement Classes for purposes of judgment on the Settlement only:

**Written Explanation Settlement Class**. All Accountholders whose claims of unauthorized electronic fund transfers were denied by Navy Federal Credit Union between October 10, 2022, and the date the Court grants preliminary approval of the Settlement.

**Document Request Settlement Subclass**. All Accountholders in the Written Explanation Settlement Class who requested documents Navy Federal relied on in making its determination and who did not receive them.

4. Excluded from the Settlement Classes are (1) any judge presiding over this Action and members of their families; and (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees and any member of the Settlement Class who submitted a timely and valid request for exclusion.

5. **Final Settlement Approval**. The Settlement is in all respects fair, reasonable, and adequate, including the releases, Claims process, and Plan of Allocation. The Court makes final its preliminary findings that, for purposes of settlement only, the Settlement satisfies the requirements of Rule 23.

6. In reaching this conclusion, the Court considered the complexity, expense, and duration of the litigation, the Settlement Classes' reaction to the Settlement, and the result achieved. The Agreement was the product of informed, arms-length negotiations among competent, able counsel. The Settlement was made based upon a record that is

sufficiently developed to have enabled the Parties to adequately evaluate and consider their positions.

7. The Settlement provides sufficient benefits to Settlement Class Members in consideration of the maximum statutory damages set out in the Electronic Funds Transfer Act. In addition, there were no objections to the Settlement, and there were a small number of opt-outs, indicating an overwhelming positive reaction from the Settlement Class.

8. The Claims process and Plan of Allocation are fair, reasonable, and adequate.

9. **Class Notice**. The Settlement Administrator completed the delivery of Notice to the Settlement Class according to the Agreement terms. This Notice was the best notice practicable under the circumstances and constituted due and sufficient notice of the proceedings and matters set forth therein, to all persons entitled to notice. The Notice and the Notice Program fully satisfied the requirements of due process, Federal Rule of Civil Procedure 23, and all other applicable law and rules.

10. **Class Action Fairness Act Notice**. The Settlement Administrator satisfied all notices and requirements of the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1715. The Court has reviewed such notification and accompanying materials and finds that the notification complies fully with the applicable CAFA requirements. No written objection or response to the Settlement was filed by any federal or state official, including any recipient of the foregoing notices. No federal or state official, including any recipient of the foregoing notices, appeared or requested to appear at the Fairness Hearing.

11. **Class Representatives and Class Counsel**. The appointment of the Plaintiffs Jeffrey Stephenson and Billy Smith II as Class Representatives is affirmed.

12. The appointment of Scott Edelsberg and Adam Schwartzbaum of Edelsberg Law, P.A.; Edwin E. Elliott of Shamis & Gentile, P.A.; and Sophia Gold and Jeffrey D. Kaliel of Kaliel Gold PLLC is affirmed.

13. The Class Representatives and Class Counsel have fairly and adequately represented and will continue to adequately represent and protect the interests of Settlement Class Members in connection with the Settlement.

23-cv-1851-WQH-KSC

14. **Opt Outs**. Those individuals identified in Exhibit H to the Declaration of Robert Cormio of Kroll Settlement Administration LLC (ECF No. 67-1 at 46) will not be bound by the Settlement or the Releases contained therein.

15. **Implementation of Settlement**. Because the Court approves the Settlement set forth in the Settlement Agreement as fair, reasonable, and adequate, the Court authorizes and directs that the Parties and the Settlement Administrator implement the Settlement according to the Agreement terms.

16. If, consistent with the Plan of Allocation set forth in the Settlement Agreement, any Residual Funds remain after the first distribution, the Residual Funds will reimburse Defendant for Settlement Administration Expenses. Any remaining Residual Funds after reimbursing Defendant will go to an appropriate *cy pres* recipient, either a consumer protection or financial services charity, to be decided by the Court. All Parties to this Action, and all Settlement Class Members, are bound by the Settlement as set forth in the Settlement Agreement and this Order.

17. **Releases**. Upon the Effective Date, the Releasing Parties fully and irrevocably release and forever discharge All Released Claims against the Released Parties. The Released Claims are dismissed with prejudice and released regardless of whether these claims are known or unknown, actual or contingent, liquidated or unliquidated.

18. Upon the Effective Date, the Plaintiffs shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever agreed to Plaintiffs' General Release.

19. **No Admissions**. Neither the Settlement Agreement, nor this Order, nor the fact of the Settlement, is an admission or concession by Defendant or the Released Parties of any fault, wrongdoing or liability whatsoever, or as an admission of the appropriateness of class certification for trial or dispositive motion practice. This Order is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in the Action. Nothing relating to the Settlement shall be offered or received in evidence as an admission, concession, presumption or inference against Defendant or the Released Parties in any

23-cv-1851-WQH-KSC

proceeding, other than such proceedings as may be necessary to consummate or enforce the Settlement Agreement or to support a defense based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense.

20. **Continuing Jurisdiction**. The Court hereby retains and reserves exclusive jurisdiction over: (a) implementation of this Settlement and any distributions from the Settlement Fund; (b) the Action, until the Effective Date, and until each and every act agreed to be performed by the Parties shall have been performed pursuant to the terms and conditions of the Settlement Agreement, including the exhibits appended thereto; and (c) all Parties, for the purpose of enforcing and administering the Settlement.

21. In the event that the Effective Date of the Settlement Agreement does not occur, the Settlement shall be rendered null and void to the extent provided by and in accordance with the Settlement Agreement, and this Order shall be vacated. In such event, all orders entered and releases delivered in connection with the Settlement shall be null and void and the Action shall return to its status immediately prior to execution of the Settlement Agreement.

22. **Final Judgment**. Judgment shall be, and hereby is, entered dismissing the Action with prejudice, on the merits, and without taxation of costs in favor of or against any Party.

23. With the exception of those individuals who have opted out, the Court adjudges that the Class Representatives and all Settlement Class Members shall be bound by this Final Approval Order.

IT IS FURTHER ORDERED that the Clerk of Court shall enter final judgment forthwith.

Dated:  February 9, 2026

Hon. William Q. Hayes
United States District Court

22

23-cv-1851-WQH-KSC